Ryan Gile, Esq.
rg@gilelawgroup.com
Nevada Bar No. 8807
**GILE LAW GROUP LTD.**
1180 N. Town Center Drive, Suite 100
Las Vegas, NV 89144
Tel. (702) 703-7288

*Attorney for Plaintiff Aim High Investment Group, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| AIM HIGH INVESTMENT GROUP, LLC, <br><br> Plaintiff, <br><br> v. <br><br> SPECTRUM LABORATORIES, LLC, <br><br> Defendant. | Case No. 2:22-cv-158 <br><br> **COMPLAINT** <br><br> **JURY DEMAND** |

Plaintiff AIM HIGH INVESTMENT GROUP, LLC (hereinafter "Aim High" or "Plaintiff"), by and through its attorney of record, hereby alleges against Defendant SPECTRUM LABORATORIES, LLC (hereinafter "Spectrum" or "Defendant") as follows:

**NATURE OF THE ACITON**

1. This is an action for a declaratory judgment that Plaintiff does not infringe any valid claim of Spectrum's U.S. Patent No. 7,192,776 entitled "Synthetic Urine and Method of Manufacturing Same" (the "'776 Patent") and U.S. Patent No. 9,128,105 entitled "Urea-Based Synthetic Urine and Method of Manufacturing Same" (the "'105 Patent" and together with the '776 Patent, the "Patents-in-Suit") and for a declaratory judgment that the claims of the Patents-in-Suit are invalid. Copies of the Patents-in-Suit are attached hereto as <u>Exhibit A</u>.

2. The Patents-in-Suit center around a synthetic urine mixture where specific biocides are added in order to remove or control the presence of bacteria and prevent sepsis in the mixture in order to preserve the shelf life of such synthetic urine mixture.

3. This action arises out of Spectrum's assertions that Aim High is infringing on the

Patents-in-Suit through Aim High's manufacture and sale of a laboratory-made urine product named *XStream*.

4. Aim High's *XStream* product does not infringe upon the Patents-in-Suit because a limitation of each independent claim of the Patents-in-Suit involves the introduction of a specific "biocide" and none of the ingredients in the *XStream* product contain any of the biocides claimed in the Patents-in-Suit nor has Plaintiff ever added any of the claimed biocides to the *XStream* product.

## PARTIES

5. Plaintiff is, and at all times relevant hereto was, a Nevada limited liability company with its principal place of business located at 4980 Statz Street, Unit #120, North Las Vegas, Nevada, 89031, and conducting business in Clark County, Nevada.

6. Upon information and belief, Defendant is, and at all times relevant hereto was, an Ohio limited liability company with its principal place of business located at 400 S. 4th Street, Suite 500 Las Vegas, Nevada, 89101. Upon information and belief, Defendant is engaged in the business of manufacturing and selling synthetic urine in the detoxification industry under the brand name QuickFix.

## JURISDICTION AND VENUE

7. This action arises under the patent laws of the United States, 35 U.S.C. § 101 et seq., and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

8. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 (federal question) and 1338(a) (patent infringement).

9. The Court has personal jurisdiction over Defendant because, among other things, Defendant has purposely availed itself of the rights and benefits of the laws of Nevada by engaging in systematic and continuous contacts with the state such that it should reasonably anticipate being hauled into court here. For example, Defendant is registered to conduct business in the State of Nevada as Entity Number E3021322019-3 under Nevada Business ID NV20191646447, and has a regular and established place of business in this jurisdiction at 400 S. 4th Street, Suite 500 Las Vegas, Nevada, 89101.

Gile Law Group
1180 N. Town Center Dr. Suite 100
Las Vegas, NV 89144

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**DEFENDANT'S ALLEGATIONS OF PATENT INFRINGEMENT**

11. On August 7, 2020, Defendant, through its attorney, sent a letter to Plaintiff alleging that Plaintiff's *XStream* product (the "Accused Product") infringes on Defendant's patent rights with respect to the Patents-in-Suit. A copy of Defendant's letter is attached as Exhibit B.

12. By letter dated August 28, 2020, Plaintiff, through its attorney, responded to the Defendant's correspondence by denying that its Accused Product infringes any valid claim of the Patents-in-Suit, most notably because the Accused Product does not contain any of the specific biocides claimed in the Patents-in-Suit. A copy of Plaintiff's response letter is attached as Exhibit C.

13. In subsequent correspondence between attorneys for the parties, the biocide that Defendant allegedly found present in the Accused Product was the isothiazoline biocide methylisothiazolinone ("MIT") in an amount less than one part per billion (1 ppb).

14. Plaintiff had a lab analysis of the Accused Product conducted and such analysis detected no presence of MIT.

15. Defendant nevertheless has continued to maintain that the Accused Product infringes the Patents-in-Suit.

**FIRST CAUSE OF ACTION**

**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF PATENT**

16. Plaintiff repeats, realleges and incorporates herein each of the foregoing allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

17. This is a claim for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

18. Based on the allegations above, an actual controversy exists between Plaintiff and Defendant as to whether Plaintiff has infringed, or is infringing, the Patents-in-Suit.

19. By lacking any of the claimed biocide, the Accused Product does not infringe any valid claim of the Patents-in-Suit.

20. Specifically, Independent Claims 1, 5 and 10 of the '776 patent require that a

1  biocide be present in the solution – with Claim 5 requiring that a biocide be dissolved in water
2  during the manufacture of the product and Claim 10 requiring that a biocide be added during the
3  manufacture of the product.
4  21.   Similarly, Independent Claims 1, 4 and 8 of the '105 patent require that a biocide
5  be present in the solution – with Claim 4 requiring that a biocide be dissolved in water during the
6  manufacture of the product and Claim 8 requiring that a biocide be added during the manufacture
7  of the product.
8  22.   In addition, Claims 1 and 5 of the '776 patent and 1 and 4 of the '105 patent require
9  the presence of or dissolving of a biocide in "relative concentrations to minimize sepsis."
10 23.   Plaintiff does not dissolve or add any biocide during the manufacturing of the
11 Accused Product and any trace amount of a biocide that Spectrum may allege is present in the
12 Accused Product is not in a relative concentration to minimize sepsis and orders of magnitude less
13 than the example concentration level set forth the specification of the Patents-in-Suit.
14 24.   The controversy between the parties is sufficient to entitle Plaintiff to a declaratory
15 judgment pursuant to 28 U.S.C. § 2201 et seq. and Fed. R. Civ. P. 57 that Plaintiff has not infringed
16 and does not infringe any valid claim of the Patents-in-Suit.

## COUNT II – DECLARATORY JUDGMENT OF PATENT INVALIDITY

18 25.   Plaintiff repeats and incorporates by reference each of the foregoing allegations in
19 the preceding paragraphs of this Complaint as if fully set forth herein.
20 26.   One or more claims of the Patents-in-Suit are invalid for failure to meet the written
21 description, enablement and definiteness requirements of 35 U.S.C. § 112.
22 27.   The specification in the Patents-in-Suit provides only one example identifying the
23 level of concentration of a biocide to be effective to minimize sepsis:

> In particular, use as a biocide requires smaller concentrations and little to no regard for when the biocide is added during the manufacturing process. To illustrate, an oxidizing biocide such as sodium hypochlorite can be added in **amounts as small as 1 mL per 3.8 L of water**. Similar concentrations of other

Gile Law Group
1180 N. Town Center Dr. Suite 100
Las Vegas, NV 89144

oxidizing biocides will have equal efficacy, as recognized by those skilled in the art.

28. The example above indicates that the biocide concentration in the synthetic urine product can be "as small as" 263.1 ppm (which is equivalent to 263100 ppb).

29. However, in alleging infringement against the Accused Product, Defendant has pointed to the allege presence of MIT in a trace amount (less than 1ppb) that is several orders of magnitude lower than the sole example given in the specification of the Patents-in-Suit.

30. The Patents-in-Suit provide no indication that the inventor conceived of an invention that would encompass such a trace amount of a biocide to control or prevent sepsis.

31. In light of Spectrum's apparent broad construction of its patent claims, a person of ordinary skill in the art would lack any reasonable certainty as to whether the claims were infringed by even the most minute amount of biocide detected, and as such, the claims in the Patents-in-Suit are invalid for indefiniteness under 35 U.S.C. § 112.

32. In addition, the specifications of the Patents-in-Suit fail to teach a person of ordinary skill in the art how to select a biocide concentration that practices the full extent of the claims given Spectrum's allegations that the claims of the Patents-in-Suit are infringed by the Accused Product, and as such, the claims in the Patents-in-Suit are invalid for failure to satisfy the enablement requirement of 35 U.S.C. § 112.

33. In addition, one or more claims of the Patents-in-Suit are invalid for anticipation under 35 U.S.C. § 102 and/or obviousness under 35 U.S.C. § 103 in view of the applicable prior art, including those prior art references cited in the prosecution history of the Patents-in-Suit which teach of synthetic urine compositions containing preservatives and certain biocides, given Spectrum's apparent broad construction of its patent claims to include even barely detectable amounts of a biocide which are the chemical equivalent of no biocide being present at all where the purpose of the claimed biocide is to control the presence of bacteria and prevent sepsis.

34. The controversy between the parties is sufficient to entitle Plaintiff to a declaratory judgment pursuant to 28 U.S.C. § 2201 et seq. and Fed. R. Civ. P. 57 that the Patents-in-Suit are invalid.

## PRAYER FOR RELIEF

WHEREFORE, in consideration of the foregoing, Plaintiff respectfully requests that this Court enter an Order granting it the following relief:

A. A declaratory judgment that Plaintiff has not infringed the Patents-in-Suit;

B. A declaratory judgment that the Patents-in-Suit are invalid;

C. Costs and attorneys' fees relating to this action pursuant to 35 U.S.C. § 285; and

D. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury of all issues so triable.

Dated: January 28, 2022

Respectfully Submitted,

**GILE LAW GROUP, LTD.**

*/s/ Ryan Gile*
Ryan Gile, Esq.
Nevada Bar No. 8807
*rg@gilelawgroup.com*
1180 N. Town Center Drive, Suite 100
Las Vegas, Nevada 89144
Tel. (702) 703-7288

*Attorney for Plaintiff*
*Aim High Investment Group, LLC*