# EXHIBIT C

# EXHIBIT C



1180 N. Town Center Drive, Ste. 100
Las Vegas, NV 89144

**Ryan Gile, Esq.**
Direct: (702) 703-7288
E-mail: rg@gilelawgroup.com

**INTELLECTUAL PROPERTY • BUSINESS LITIGATION**
*Licensed in Nevada, California, and the District of Columbia*

August 28, 2020
**VIA E-MAIL ONLY (mcavanagh@mcdonaldhopkins.com)**

Matthew Cavanagh, Esq.
McDonald Hopkins LLC
600 Superior Avenue East, Suite 2100
Cleveland, OH  44114

      Re:    **Spectrum Laboratories LLC v. Aim High Investment Group, LLC**
              *Our Reference No.:   AIMHIGH.0022L*

Dear Mr. Cavanaugh,

      As you are already aware, our law firm represents Aim High Investment Group, LLC ("Aim High") in connection with responding to your firm's letter dated August 7, 2020, written on behalf of your client, Spectrum Laboratories, LLC ("Spectrum"), alleging that Aim High is infringing on Spectrum's patent rights with respect to two of its U.S. patents through Aim High's sale of a laboratory-made urine product named *XStream*, and demanding that Aim High cease and desist from making and selling the *XStream* product.

      We have had a chance to fully review your letter and the claims set forth therein as well as discuss with our client the allegations by Spectrum and the relevant facts related thereto.  As a preliminary matter, we wish to state that our client respects the intellectual property rights of others and treats allegations of intellectual property infringement very seriously.  Thus, we have carefully considered the matters raised in your correspondence.

      Based on our careful review and analysis and for the reasons more fully described herein, we conclude that Spectrum's allegations of patent infringement against Aim High are baseless and entirely without merit.

      As a preliminary matter, we note that in your client's original letter to Aim High dated July 31, 2020, Spectrum stated that it "recently became aware that your XStream product **may infringe** both the '776 Patent and the '105 Patent" and requesting that Aim High review the patents and the *XStream* product to determine if the *XStream* product infringes such patents.  That correspondence invited Aim High to provide a letter of explanation if Aim High believed there was no infringement, requested the formula and method of manufacture so that Spectrum could verify such contentions, and gave Aim High a deadline of August 21st to provide such response.

      However, a mere seven days letter, on August 7th, your law firm sent out its own letter on behalf of Spectrum stating that "Since that letter, Spectrum **has obtained evidence** that your company's *XStream* synthetic urine product does, in fact, infringe Spectrum's" patents.  Something clearly

Matthew Cavanagh, Esq.
McDonald Hopkins LLC
August 28, 2020

occurred during that seven-day time period to have your client's position go from one of simply inquiring about possible patent infringement to one which outright asserts patent infringement. And since any such claims of patent infringement must have evidentiary support and a good faith basis and because the nature of the patents is one which naturally demands a laboratory analysis of the alleged infringing product to demonstrate infringement, then if Spectrum has conducted its own lab analysis of the *XStream* product and made its determination of infringement based on such analysis, then our client demands that Spectrum immediately provide such analysis for our client's review. Your client will be obligated to disclose such evidence in discovery eventually, so there is no good faith basis for withholding it at this time, especially if your client is so confident that such evidence proves that the *XStream* product infringes upon Spectrum's patent.

Indeed, both in my initial August 13th email to you and my follow-up e-mail on August 14th, I <u>expressly requested</u> that such purported evidence referenced in your letter be produced as part of our firm's evaluation of the merits of Spectrum's claims. Notably, however, no evidence has been produced to date (beyond unsupported conclusory statements) to demonstrate the evidentiary support and good faith basis upon which Spectrum has purportedly (and apparently conclusively) determined to its satisfaction that the *XStream* product infringes upon Spectrum's patents. Based on certain information that our client has regarding Spectrum, our client frankly suspects that your client has not provided this evidence because it simply does not exist, and yet your client (and presumably your firm as part of its obligations to ensure evidentiary support for Spectrum's asserted claims) clearly must have reviewed something between July 31st and August 7th which provided your client with the necessary evidentiary basis to assert claims of patent infringement against the *XStream* product. Barring Spectrum's disclosure of such evidence, and for the reasons outlined in this letter, any further claims by Spectrum of patent infringement are objectively baseless and clearly being made in bad faith.

Of course, as you are certainly well aware, it is Spectrum (and not Aim High) that has the burden to show that the *XStream* product infringes Spectrum's patents. The widely recognized standards requiring such a showing typically begin with a detailed claim chart explaining how the claims of the patents read on the accused product. To date, Spectrum has not provided any such claim chart nor any other evidence whatsoever in support of its burden of proof that the *XStream* product infringes Spectrum's patents. Spectrum has clearly not met its burden and therefore, Spectrum would lose its claims for patent infringement <u>regardless</u> of whether Aim High comes forward with evidence to the contrary. *See, e.g., SRI International v. Matsushita Electric Corp.*, 775 F.2d 1107 (Fed. Cir. 1985) (*en banc*); *Technology Licensing Corp. v. Videotek Inc.*, 545 F.3d 1316 (Fed. Cir. 2008). Spectrum has the initial burden to make a case that its patents are infringed – Rule 11 of the Federal Rules of Civil Procedure requires it as do decades of patent infringement case law and the patent litigation procedural requirements of practically every federal court in the country. For Spectrum to suggest by its demands that Aim High has the obligation to proactively disprove infringement of Spectrum's patents – in the face of no evidence whatsoever from Spectrum that Aim High's products infringe – is nonsensical.

Nonetheless, Aim High is quite confident in its position that its product does not infringe upon Spectrum's patent because of the lack of a critical component in the *XStream* product necessary to infringe upon Spectrum's patents. As you are no doubt well aware, all of the claims in Spectrum's two patents – U.S. Patent No. 7,192,776 and U.S. Patent No. 9,128,105 – claim a synthetic urine solution containing a "biocide." In short, **the *XStream* product does not contain a biocide**, and therefore, it

Matthew Cavanagh, Esq.
McDonald Hopkins LLC
August 28, 2020

cannot possibly infringe upon Spectrum's patents.

  We are aware that you have informed certain third parties that, based on a purported "lab test," the *XStream* product contains isothiazolines (which you then identify as a biocide). We know, however, that those same third parties were not provided with any evidence to back up such claim – once again, nothing more than Spectrums unsupported, conclusory statements in support of what amounts to objectively baseless claims clearly made in bad faith. Moreover, Aim High strongly questions the veracity of any such lab test since our client knows very well the full list of ingredients for the *XStream* product and it does not contain isothiazolines nor any other biocides. If indeed your client has conducted a genuine, unbiased lab test of the *XStream* product, then it should have no qualms whatsoever in producing such test results, especially given the utter lack of any evidence proffered by Spectrum in support of its claims of patent infringement.

  Based on what our client knows is in the *XStream* product and the indisputable fact that it does not contain any biocides as an ingredient, we suspect that either your client does not possess any such lab test showing isothiazolines (or any other biocides) in the *XStream* product (as Spectrum is falsely representing to third parties) or the lab test was done on a contaminated sample of the *XStream* product (possibly even deliberately infused with a biocide to justify Spectrum's present allegations of patent infringement) making any such findings unreliable. We welcome receipt of the lab test analysis Spectrum purports to have in its possession along with the credentials of the lab performing the analysis. However, short of Spectrum providing such lab test or providing other reliable, verifiable evidence that the *XStream* product contains a biocide or Spectrum otherwise meeting its legal burden to demonstrate how the *XStream* product infringes Spectrum's patents, the only other reasonable conclusion is that Spectrum's allegations of patent infringement are, at best, mere conjecture on Spectrum's part or, at worst, objectively baseless claims asserted by Spectrum in bad faith.

  The above facts (combined with the lack of supporting evidence from Spectrum) refute Spectrum's allegations of patent infringement and show that Spectrum's claims that the *XStream* product infringes Spectrum's patents are objectively baseless. Moreover, Aim High is aware that Spectrum is asserting such objectively baseless claims of patent infringement to multiple third-party sellers of the *XStream* product – again without providing any actual evidence or proof of infringement (beyond unsupported conclusory statements).

  In light of the objectively baseless nature of such claims, any further baseless representations by Spectrum that the *XStream* product infringes upon Spectrum's patents will clearly be undertaken in bad faith by your client. Aim High demands that Spectrum immediately **cease and desist** from any further claims that the *XStream* product infringes upon Spectrum's patents or that Aim High is committing patent infringement. If Spectrum continues making bad faith assertions of objectively baseless claims of patent infringement to sellers of the *XStream* product, then Aim High fully intends to pursue its own claims against Spectrum for unfair competition, deceptive trade practices, and/or tortious interference with contractual relationships for any damages caused by Spectrum's actions as well as all attorney's fees and costs incurred in connection with bringing such claims. Moreover, Aim High is also aware that Spectrum's objectively baseless claims appear to be at the express direction of one or more principals or officers of Spectrum who are specifically directing Spectrum's assertions of patent infringement with the direct knowledge that they are baseless and being asserted for ulterior motives unrelated to the legitimate enforcement of any patent rights. Should Spectrum and those

Matthew Cavanagh, Esq.
McDonald Hopkins LLC
August 28, 2020

individuals directly involved continue in their campaign of making baseless, unsupported and bad faith claims of patent infringement relating to the *XStream* product, then Aim High also intends to pursue claims against those individuals personally in order to hold them personally accountable and liable for the damages, costs, and attorneys fees Aim High incurs in connection with or as a result of Spectrum's baseless, bad faith claims.

      Finally Aim High hereby puts Spectrum on notice that any such legal action which Spectrum chooses to pursue against Aim High would constitute an "exceptional" case pursuant to 35 U.S.C. §285 and Aim High fully intends to seek all attorney's fees and costs incurred in connection with fighting Spectrum's bad faith objectively baseless patent infringement claims, including holding those of Spectrum's principals or officers who are directly involved in these baseless, bad faith claims of patent infringement.

      Given that the *XStream* product could not possibly infringe upon Spectrum's patents, we choose not to delve into the highly questionable validity of Spectrum's patents at this time.  Naturally, Aim High reserves the rights to attack the validity of Spectrum's patents should this matter end up in court.

      For all of the reasons outlined above, our client considers this matter closed.

      *Nothing contained in or omitted from this letter is or shall be deemed to be either a full statement of the facts or applicable law, an admission of any fact, or a waiver or limitation of any of our client's rights or remedies, equitable or otherwise, all of which are specifically retained and reserved.*

      Very truly yours,

      *Ryan Gile*

      Ryan Gile