NICHOLAS J. SANTORO, ESQ.
Nevada Bar No. 0532
JASON D. SMITH, ESQ.
Nevada Bar No. 9691
**SANTORO WHITMIRE**
10100 W. Charleston Blvd., Suite 250
Las Vegas, Nevada 89135
Tel.: (702) 948-8771 / Fax: (702) 948-8773
Email: nsantoro@santoronevada.com
        jsmith@santoronevada.com

DAVID B. CUPAR, ESQ.
(*Pro Hac Vice* application forthcoming)
MATTHEW J. CAVANAGH, ESQ.
(*Pro Hac Vice* application forthcoming)
**MCDONALD HOPKINS**
600 Superior Avenue East, Suite 2100
Cleveland, OH 44114
Tel.: (216) 348-5730; Fax: (216) 348-5474
Email: dcupar@mcdonaldhopkins.com
        mcavanagh@mcdonaldhopkins.com

*Attorneys for Defendant/Counterclaimant*
*Spectrum Laboratories, LLC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| AIM HIGH INVESTMENT GROUP, LLC, | Case No.  2:22-cv-00158-GMN-DJA |
| Plaintiff, | **SPECTRUM LABORATORIES, LLC'S ANSWER AND COUNTERCLAIM** |
| v. | JURY TRIAL DEMANDED |
| SPECTRUM LABORATORIES, LLC | |
| Defendant. | |

        For its answer to plaintiff Aim High Investment Group, LLC's ("*Aim High*") complaint,

defendant Spectrum Laboratories, LLC ("*Spectrum*") responds as follows:

### As to "Nature of the Action"

        1.    Insofar as Aim High construes its complaint and Spectrum's patents, those

documents speak for themselves. Otherwise, Spectrum denies that Aim High does not infringe

U.S. Patent Nos. 7,192,776 ("*the '776 Patent*") and 9,128,105 ("*the '105 Patent*") and denies all

other allegations in paragraph 1 of the complaint.

{10198610: }                                      1

2.      Insofar as Aim High construes Spectrum's patents, the documents speak for themselves. To the extent any response is required, Spectrum admits that the patents relate to synthetic urine, biocides, extending shelf life, removal or control of bacteria and preventing sepsis, and otherwise denies paragraph 2 of the complaint.

3.      Insofar as Aim High construes the letters that Spectrum wrote to Aim High, those documents speak for themselves. Otherwise, Spectrum admits that Aim High infringes Spectrum's patents by at least making, selling, offering to sell, and using XStream synthetic urine, and Spectrum denies all other allegations in paragraph 3 of the complaint because it lacks knowledge or information sufficient to form a belief as to the truth of those allegations.

4.      Spectrum denies the allegations in paragraph 4 of the complaint.

### As to "Parties"

5.      Spectrum denies the allegations in paragraph 5 of the complaint because it lacks knowledge or information sufficient to form a belief as to the truth of those allegations.

6.      Spectrum admits that it is an Ohio limited liability company, admits that it manufactures and sells synthetic urine under the *Quick Fix* brand name, and denies all other allegations in paragraph 6 of the complaint.

### As to "Jurisdiction and Venue"

7.      Insofar as Aim High construes its complaint, the document speaks for itself. Otherwise, Spectrum admits that Aim High purports to sue under the Patent Act and Declaratory Judgment Act and denies all other allegations in paragraph 7 of the complaint.

8.      Whether subject matter jurisdiction exists is a legal conclusion and not a factual allegation requiring a pleaded response. To the extent any response is required, Spectrum states that it does not, at this time, challenge subject matter jurisdiction and otherwise denies the allegations in paragraph 8 of the complaint.

9.      Whether personal jurisdiction exists is a legal conclusion and not a factual allegation requiring a pleaded response. To the extent any response is required, Spectrum admits that it is registered to do business in Nevada, admits the Entity Number and Nevada Business

SPECTRUM LABORATORIES, LLC'S ANSWER AND COUNTERCLAIM

ID's appear correct, and otherwise denies the allegations in paragraph 9 of the complaint.

10. Whether venue is proper is a legal conclusion and not a factual allegation requiring a pleaded response. To the extent any response is required, Spectrum states that it does not, at this time, challenge venue and otherwise denies the allegations in paragraph 10 of the complaint.

### As to "Defendant's Allegations of Patent Infringement"

11. Insofar as Aim High construes Exhibit B, the document speaks for itself. Otherwise, Spectrum admits that Exhibit B appears to be a letter sent by Spectrum's attorney, admits the letter states that Spectrum had "obtained evidence that your company's XStream synthetic urine product does, in fact, infringe Spectrum's [patents]," and denies all other allegations in paragraph 11 of the complaint.

12. Insofar as Aim High construes Exhibit C, the document speaks for itself. Otherwise, Spectrum admits that the letter states that it was sent by Aim High's attorney, admits the letter denied infringement and alleges that "the XStream product does not contain a biocide," and denies all other allegations in paragraph 12 of the complaint.

13. Insofar as Aim High construes written correspondence between the parties, the documents speak for themselves. Otherwise, Spectrum admits that it provided lab testing to Aim High that proved, among other things, the presence of the claimed biocide isothiazoline, and denies all other allegations in paragraph 13 of the complaint.

14. Spectrum denies the allegations in paragraph 14 of the complaint because it lacks knowledge or information sufficient to form a belief as to the truth of those allegations, and avers that, before the lawsuit, Spectrum asked Aim High to provide its lab test results, other test-related information and documents, and the remaining sample that Aim High had tested, so Spectrum could also test that sample, but Aim High did not provide what Spectrum requested.

15. Spectrum admits that it avers that Aim High infringes the Spectrum patents, and otherwise denies the allegations in paragraph 15 of the complaint.

## As to "First Cause of Action"

16.     Spectrum repeats, re-alleges and incorporates herein each of the foregoing allegations in the preceding paragraphs of this answer as if fully set forth herein.

17.     Spectrum admits that Aim High purports to sue under the Declaratory Judgment Act, specifically denies that Aim High is entitled to the judgment that it seeks, and otherwise denies the allegations in paragraph 17 of the complaint.

18.     Whether there is an actual controversy sufficient to trigger subject matter jurisdiction is a legal conclusion and not a factual allegation requiring a pleaded response. To the extent any response is required, Spectrum specifically denies that Aim High's lawsuit is justified, and otherwise denies the allegations in paragraph 18 of the complaint.

19.     Spectrum denies the allegations in paragraph 19 of the complaint.

20.     Insofar as Aim High construes the patents or claims, they speak for themselves. Moreover, the meaning of claim terms is a conclusion of law that will be decided by the Court during claim construction, and not factual allegations requiring a pleaded response, and Aim High's claim constructions are too vague and ambiguous to reasonably permit a response. To the extent any response is required, Spectrum denies the allegations in paragraph 20 of the complaint.

21.     Insofar as Aim High construes the patents or claims, they speak for themselves. Moreover, the meaning of claim terms is a conclusion of law that will be decided by the Court during claim construction, and not factual allegations requiring a pleaded response, and Aim High's claim constructions are too vague and ambiguous to reasonably permit a response. To the extent any response is required, Spectrum denies the allegations in paragraph 21 of the complaint.

22.     Insofar as Aim High construes the patents or claims, they speak for themselves. Moreover, the meaning of claim terms is a conclusion of law that will be decided by the Court during claim construction, and not factual allegations requiring a pleaded response, and Aim High's claim constructions are too vague and ambiguous to reasonably permit a response. To the

SPECTRUM LABORATORIES, LLC'S ANSWER AND COUNTERCLAIM

extent any response is required, Spectrum denies the allegations in paragraph 22 of the complaint.

23.    Spectrum denies the allegations in paragraph 23 of the complaint.

24.    Spectrum denies the allegations in paragraph 24 of the complaint.

### As to "Second Cause of Action"

25.    Spectrum repeats, re-alleges and incorporates herein each of the foregoing allegations in the preceding paragraphs of this answer as if fully set forth herein.

26.    Spectrum denies the allegations in paragraph 26 of the complaint.

27.    Insofar as Aim High construes Spectrum's patents, those documents speak for themselves. Moreover, the meaning of claim terms is a conclusion of law that will be decided by the Court during claim construction, and not factual allegations requiring a pleaded response, and Aim High's claim constructions are too vague and ambiguous to reasonably permit a response. To the extent any response is required, Spectrum denies the allegations in paragraph 27 of the complaint.

28.    Insofar as Aim High construes Spectrum's patents, those documents speak for themselves. Moreover, the meaning of claim terms is a conclusion of law that will be decided by the Court during claim construction, and not factual allegations requiring a pleaded response, and Aim High's claim constructions are too vague and ambiguous to reasonably permit a response. To the extent any response is required, Spectrum denies the allegations in paragraph 28 of the complaint.

29.    Insofar as Aim High construes Spectrum's patents, those documents speak for themselves. Moreover, the meaning of claim terms is a conclusion of law that will be decided by the Court during claim construction, and not factual allegations requiring a pleaded response, and Aim High's claim constructions are too vague and ambiguous to reasonably permit a response. To the extent any response is required, Spectrum admits that at least one of the claimed biocides, isothiazoline, was detected in *XStream*, admits that it alleges that Aim High infringes both patents, and denies the other allegations in paragraph 29 of the complaint.

30.     Spectrum denies the allegations in paragraph 30 of the complaint.

31.     Spectrum denies the allegations in paragraph 31 of the complaint.

32.     Spectrum denies the allegations in paragraph 32 of the complaint.

33.     Spectrum denies the allegations in paragraph 33 of the complaint.

34.     Spectrum denies the allegations in paragraph 34 of the complaint.

### As to "Prayer For Relief"

35.     Spectrum denies that Aim High is entitled to any relief requested.

### Spectrum's Affirmative Defenses

1.     Aim High fails to state a claim upon which relief can be granted.

2.     Aim High's claims are barred by the doctrine of unclean hands.

3.     Spectrum reserves the right to assert all other defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the patent laws of the United States, and any other defenses, at law or in equity, that may now or in the future be available based on discovery, any other factual investigation, or any other development relating to this case or any other action.

Dated: March 14, 2022.                    Respectfully submitted,

*/s/ Jason D. Smith*
Nicholas J. Santoro, Esq. (NBN 532)
Jason D. Smith, Esq. (NBN 9691)
**SANTORO WHITMIRE**
10100 W. Charleston Blvd., Suite 250
Las Vegas, Nevada 89135
Tel: (702) 948-8771 / Fax: (702) 948-8773
Email: nsantoro@santoronevada.com
            jsmith@santoronevada.com

David B. Cupar, Esq. (PHV forthcoming)
Matthew J. Cavanagh, Esq. (PHV forthcoming)
**MCDONALD HOPKINS, LLC**
600 Superior Avenue East, Suite 2100
Cleveland, OH 44114
Tel.: (216)348-5730 / Fax: (216)348-5474
Email: dcupar@mcdonaldhopkins.com,
            mcavanagh@mcdonaldhopkins.com

*Attorneys for Defendant/Counterclaim Spectrum Laboratories, LLC*

## Spectrum's Counterclaim

In accordance with Rule 13 of the Federal Rules of Civil Procedure, Spectrum hereby asserts its counterclaim against Aim High as follows:

## Parties

1.      Spectrum is an Ohio limited liability company with a principal place of business in Ohio.

2.      According to its complaint, Aim High is a Nevada limited liability company with a principal place of business in Nevada.

## Jurisdiction and Venue

3.      To the extent the claims asserted in Aim High's complaint are within this Court's subject matter jurisdiction and in a proper venue, this counterclaim also is within that subject matter jurisdiction and in a proper venue. Additionally, this Court has subject matter jurisdiction over this counterclaim under 28 U.S.C. §§ 1331 and 1338(a) because they arise under federal law and, more specifically, the U.S. Patent Act, 35 U.S.C. § 1 *et seq.*

4.      This Court has personal jurisdiction over Aim High because it is a Nevada company and has a principal place of business in Nevada.

## Facts

5.      Spectrum owns the '776 and '105 patents, which are attached as Exhibit A to Aim High's complaint.

6.      Spectrum manufactures and sells a synthetic urine product called *Quick Fix*, which is covered by the claims of Spectrum's patents.

7.      Aim High sells synthetic urine products, including a product called *XStream*.

8.      *XStream* contains water.

9.      *XStream* contains creatinine.

10.     *XStream* contains urea.

11.     *XStream* contains chloride.

12.     *XStream* contains methylisothiazolinone.

SPECTRUM LABORATORIES, LLC'S ANSWER AND COUNTERCLAIM

13. *XStream* is covered by one or more claims of the '776 and '105 patents. As illustrative examples, and without limiting Spectrum's infringement allegations to these exemplar claims, the claim charts below show how *XStream* meets the limitations of at least one claim in each patent.

| Claim 1 of the '653 Patent | |
|---|---|
| 1. A synthetic urine solution comprising:[1] | *XStream*'s box and website marketing confirms the product is a synthetic urine solution, *see xurine.com and xstreamurine.com.* |
| water having a pH between 3 and 10; | Lab testing provided by Spectrum to Aim High on October 11, 2021, proves *XStream* has water having a pH between 3 and 10, namely 9.09. |
| creatinine and a biocide, said creatinine and biocide dissolved within said water to form a solution exhibiting a specific gravity and said creatinine and biocide selected in relative concentrations to minimize sepsis; | *XStream's* website marketing confirms the product has creatinine, and Aim High did not deny that its product contains creatinine during pre-litigation communications; lab testing provided by Spectrum to Aim High on Oct. 11, 2021, proves *XStream* has at least one biocide, namely methylisothiazolinone; and the concentrations of biocide relative to creatinine minimize sepsis as demonstrated at least by the product not spoiling on store shelves or elsewhere. |
| at least one dissociated ionic compound also dissolved within said solution to adjust the specific gravity of the solution to between 1.005 g/cm and 1.025 g/cm; and | Lab testing provided by Spectrum to Aim High on October 11, 2021, proves *XStream* has at least one dissociated ionic compound, namely chloride; the same testing proves that *XStream* has a specific gravity between 1.005 g/cm3 and 1.025 g/cm3, namely 1.010 g/cm3. |
| wherein said biocide is selected from the group consisting of 2-bromo-4-hydroxyacetophenone, bronopols, carbamates, chlorothioethers, 2-2-Dibromo-3-nitrilopropionamide, 2-(Decylthio)ethanamine, glutaraldehydes, isothiazolines, Methylene bis(thiocyanate), polyguat, Alkyldimethylbenzylammonium chloride, sulfones, Bis(tributyltin) oxide, tertbuthylazines, Tetrachloro-2, 4,6-cyano-3-benzonitrile, 2(thiocyanomethylthio) benzothiazole, thiones, Tetrakish(hydroxymethyl)phosphonium sulfate, Tributyltetradecylphosphonium chloride, peroxides, hypochlorites, and Super oxides. | Lab testing provided by Spectrum to Aim High on Oct. 11, 2021, proves *XStream* has at least one of the claimed biocides, namely methylisothiazolinone, which is an isothiazolinone. |

---

[1] At this stage, Spectrum takes no position as to whether the preamble is limiting. Instead, Spectrum merely shows that, if the Court determines that it is limiting, then the limitation is found in the accused products.

| *Claim 1 of the '105 Patent* | |
|---|---|
| 1. A synthetic urine solution comprising:[2] | *XStream*'s box and website marketing confirms the product is a synthetic urine solution, *see xurine.com* and *xstreamurine.com*. |
| water having a pH between 3 and 10; | Lab testing provided by Spectrum to Aim High on October 11, 2021, proves *XStream* has water having a pH between 3 and 10, namely 9.09. |
| creatinine and a biocide, said creatinine and biocide dissolved within said water to form a solution exhibiting a specific gravity and said creatinine and biocide selected in relative concentrations to minimize sepsis; | *XStream's* website marketing confirms the product has creatinine, and Aim High did not deny that its product contains creatinine during pre-litigation communications; lab testing provided by Spectrum to Aim High on Oct. 11, 2021, proves *XStream* has at least one biocide, namely methylisothiazolinone; and the concentrations of biocide relative to creatinine minimize sepsis as demonstrated at least by the product not spoiling on store shelves or elsewhere. |
| at least one dissociated ionic compound also dissolved within said solution to adjust the specific gravity of the solution to between 1.005 g/cm and 1.025 g/cm; and | Lab testing provided by Spectrum to Aim High on October 11, 2021, proves *XStream* has at least one dissociated ionic compound, namely chloride; the same testing proves that *XStream* has a specific gravity between 1.005 g/cm3 and 1.025 g/cm3, namely 1.010 g/cm3. |
| wherein said biocide is selected from the group consisting of 2-bromo-4-hydroxyacetophenone, bronopols, carbamates, chlorothioethers, 2-2-Dibromo-3-nitrilopropionamide, 2-(Decylthio)ethanamine, glutaraldehydes, isothiazolines, Methylene bis(thiocyanate), polyguat, Alkyldimethylbenzylammonium chloride, sulfones, Bis(tributyltin) oxide, tertbuthylazines, Tetrachloro-2, 4,6-cyano-3-benzonitrile, 2(thiocyanomethylthio) benzothiazole, thiones, Tetrakish(hydroxymethyl)phosphonium sulfate, Tributyltetradecylphosphonium chloride, peroxides, hypochlorites, and Super oxides. | Lab testing provided by Spectrum to Aim High on Oct. 11, 2021, proves *XStream* has at least one of the claimed biocides, namely methylisothiazolinone, which is an isothiazolinone. |
| at least one urea compound provided in conjunction with the synthetic urine solution, wherein the at least one urea compound is carbamide peroxide, and optionally allantoin and optionally hydantoin. | *XStream's* website marketing confirms the product has urea, *see xstreamurine.com*, and Aim High did not deny that its product contains urea during pre-litigation communications. |

---

[2] At this stage, Spectrum takes no position as to whether the preamble is limiting. Instead, Spectrum merely shows that, if the Court determines that it is limiting, then the limitation is found in the accused products.

14.    Aim High had knowledge of Spectrum's '776 and '105 Patents and had evidence that its *XStream* product infringes those patents at least by the time of Spectrum's January 8, 2021 letter, and likely before that.

15.    Aim High has willfully infringed each of the Spectrum's patents because it knew of the patents, knew of the objectively high likelihood that its continued actions would infringe those patents, and yet continued to sell *XStream* after receiving Spectrum's notice and infringement evidence.

## Count I – Infringement of the '776 Patent

16.    Spectrum incorporates by reference all allegations in the all preceding paragraphs of this counterclaim and answer.

17.    Aim High has directly infringed the '776 Patent by making, using, selling, importing, and/or offering to sell synthetic urine products covered by one or more claims of the '776 Patent, including (without limitation) *XStream*.

18.    The only intended and feasible use for *XStream* is as a synthetic urine.

19.    Because the only intended and feasible use of *XStream* is an infringing use, Aim High's synthetic urine products have no substantial non-infringing uses.

20.    Aim High has induced infringement of the '776 Patent at least because, with knowledge of the '776 patent, it intentionally and actively induced end users of the products to use the product in a manner that infringes the '776 Patent with specific intent that they do so.

21.    Aim High has further induced infringement of the '776 Patent at least by selling *XStream* to distributors, e-commerce sellers, retailers, and others with specific intent that they infringe the '776 Patent by reselling *XStream* to others.

22.    Aim High has further induced infringement of the '776 Patent at least by, upon information and belief, ordering synthetic urine solution from upstream suppliers and/or manufacturers, whereby those suppliers' sales and/or manufacturing work infringes the '776 Patent and Aim High intentionally and actively induced them to do so.

23.    Aim High has contributed to infringement of the '776 Patent at least by selling

*XStream*, which has no substantial use other than an infringing use as a synthetic urine.

24.    Aim High's direct and indirect infringement of the '776 Patent was, and continues to be, willful and deliberate.

25.    Spectrum has been and will continue to be damaged by Aim High's infringing activities.

26.    Spectrum has suffered irreparable harm due to Aim High's infringement and will continue to be irreparably harmed unless the Court enjoins Aim High's infringing activities.

## Count II – Infringement of the '105 Patent

27.    Spectrum incorporates by reference all allegations in the all preceding paragraphs of this counterclaim and answer.

28.    Aim High has directly infringed the '105 Patent by making, using, selling, importing, and/or offering to sell synthetic urine products covered by one or more claims of the '105 Patent, including (without limitation) *XStream*.

29.    The only intended and feasible use for *XStream* is as a synthetic urine.

30.    Because the only intended and feasible use of *XStream* is an infringing use, Aim High's synthetic urine products have no substantial non-infringing uses.

31.    Aim High has induced infringement of the '105 Patent at least because, with knowledge of the '105 Patent, it intentionally and actively induced end users of the products to use the product in a manner that infringes the '105 Patent with specific intent that they do so.

32.    Aim High has further induced infringement of the '105 Patent at least by selling *XStream* to distributors, e-commerce sellers, retailers, and others with specific intent that they infringe the '105 Patent by reselling *XStream* to others.

33.    Aim High has further induced infringement of the '105 Patent at least by, upon information and belief, ordering synthetic urine solution from upstream suppliers and/or manufacturers, whereby those suppliers' sales and/or manufacturing work infringes the '105 Patent and Aim High intentionally and actively induced them to do so.

34.    Aim High has contributed to infringement of the '105 Patent at least by selling

SPECTRUM LABORATORIES, LLC'S ANSWER AND COUNTERCLAIM

*XStream*, which has no substantial use other than an infringing use as a synthetic urine.

35.    Aim High's direct and indirect infringement of the '105 Patent was, and continues to be, willful and deliberate.

36.    Spectrum has been and will continue to be damaged by Aim High's infringing activities.

37.    Spectrum has suffered irreparable harm due to Aim High's infringement and will continue to be irreparably harmed unless the Court enjoins Aim High's infringing activities.

## **Prayer for Relief**

**WHEREFORE**, Spectrum prays for judgment against Aim High as follows:

(A)    Finding that Aim High has directly infringed one or more claims of the '776 and '105 Patents under 35 U.S.C. § 271(a);

(B)    Finding that Aim High has induced infringement of one or more claims of the '776 and '105 Patents under 35 U.S.C. § 271(b);

(C)    Finding that Aim High has contributed to the infringement of one or more claims of the '776 and '105 Patents under 35 U.S.C. § 271(c);

(D)    Preliminary and permanent injunctive relief enjoining Aim High, its officers, directors, managers, employees, affiliates, agents, representatives, parents, subsidiaries, successors, assigns, those in privity with them, and all others aiding, abetting, or acting in concert or active participation therewith, from: (1) making, using, selling, offering to sell, or importing any product covered by any of the claims of the '776 and '105 Patents, including *XStream*, or (2) otherwise directly or indirectly infringing any of the claims of the '776 and '105 Patents;

(E)    Awarding Spectrum compensatory damages under 35 U.S.C. § 284, including reasonable royalty or lost profit damages, whichever is higher;

(F)    Awarding Spectrum treble damages under 35 U.S.C. § 284;

(G)    Awarding Spectrum its costs, attorneys' fees, and litigation expenses to the full extent allowed by 35 U.S.C. § 285;

1    (H)    Awarding Spectrum pre-judgment and post-judgment interest; and

2    (I)    Such other and further relief as allowed at law or in equity that the Court deems to

3    be appropriate, just, and proper.

4    Dated: March 14, 2022

                                        Respectfully submitted,

5

6                                        */s/ Jason D. Smith*
                                        Nicholas J. Santoro, Esq. (NBN 532)

7                                        Jason D. Smith, Esq. (NBN 9691)
                                        **SANTORO WHITMIRE**

8                                        10100 W. Charleston Blvd., Suite 250
                                        Las Vegas, Nevada 89135

9                                        Tel.: (702) 948-8771 / Fax: (702) 948-8773
                                        Email: nsantoro@santoronevada.com

10                                              jsmith@santoronevada.com

11
                                        David B. Cupar, Esq. (PHV forthcoming)

12                                        Matthew J. Cavanagh, Esq. (PHV forthcoming)
                                        **MCDONALD HOPKINS, LLC**

13                                        600 Superior Avenue East, Suite 2100
                                        Cleveland, OH 44114

14                                        Tel.: (216)348-5730 / Fax:  (216)348-5474
                                        Email: dcupar@mcdonaldhopkins.com,

15                                              mcavanagh@mcdonaldhopkins.com

16
                                        *Attorneys for Defendant and Counterclaim*

17                                        *Spectrum Laboratories, LLC*

18

19

20

21

22

23

24

25

26

27

28

{10198610: }                          13

1

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 14th day of March 2022, I electronically filed **SPECTRUM LABORATORIES, LLC'S ANSWER AND COUNTERCLAIM** with the Clerk of the Court using the CM/ECF system which sent notification to the counsel of record in this matter:

*/s/ Rachel Jenkins*
An employee of Santoro Whitmire

SPECTRUM LABORATORIES, LLC'S ANSWER AND COUNTERCLAIM