NICHOLAS J. SANTORO (NBN 532)
JASON D. SMITH (NBN 9691)
SANTORO WHITMIRE, LTD.
10100 W. Charleston Blvd., Suite 250
Las Vegas, Nevada 89135
Telephone: (702) 948-8771
Facsimile: (702) 948-8773
E-mail: nsantoro@santoronevada.com; jsmith@santoronevada.com

DAVID B. CUPAR (Admitted *Pro Hac Vice*)
MATTHEW J. CAVANAGH (Admitted *Pro Hac Vice*)
MCDONALD HOPKINS LLC
600 Superior Avenue East, Suite 2100
Cleveland, OH 44114
Telephone: (216)348-5730
Facsimile: (216)348-5474
E-Mail: dcupar@mcdonaldhopkins.com, mcavanagh@mcdonaldhopkins.com

Attorneys for Defendant and Counterclaimant
SPECTRUM LABORATORIES, LLC and
Non-Party ELEMENT SANTA FE SPRINGS[1]

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

AIM HIGH INVESTMENT GROUP, LLC,

Plaintiff/Counter-Defendant,

v.

SPECTRUM LABORATORIES, LLC

Defendant/Counterclaimant.

Case No. 2:22-cv-00158-GMN-DJA

**NON-PARTY ELEMENT SANTA FE SPRINGS' OPPOSITION TO AIM HIGH'S MOTION TO COMPEL [ECF #20]**

## I. Introduction

Non-party Element Santa Fe Springs ("Element") is a testing lab that performed pre-suit chemical testing of Plaintiff/Counter-Defendant Aim High Investment Group, LLC's ("Aim High's") *XStream* synthetic urine product. Element did so at the request of Defendant/ Counterclaimant and patent owner Spectrum Laboratories, LLC in anticipation of this patent infringement litigation. Element has not been designated as a testifying expert in this case, and thus is a non-testifying expert at this time. Aim High issued a subpoena to Element for its testing

[1] Element Santa Fe Springs and its counsel make this special appearance to contest jurisdiction over plaintiff Aim High's motion and argue the merits only if the Court rejects their jurisdictional challenge.

records, Element objected on work-product and other grounds, and Aim High moved to compel.

The Court should deny Aim High's motion to compel for several reasons.

***First***, Aim High filed in the wrong court. Rule 45 mandates that any motion to compel a subpoena response must be filed in "the court for the district where compliance is required." Fed. Civ. R. 45(d)(2)(B)(i). Because the subpoena to Element required compliance in the Central District of California, Aim High must file its motion with that court. This Court should deny this motion entirely on that basis.

***Second***, Element is a non-testifying expert. Spectrum has *not* identified Element as its testifying expert—and need not designate testifying experts until March 2023. Rule 26(b)(4)(D) expressly exempts non-testifying expert's work-product from discovery, absent exceptional circumstances. Here, Element's testing of the *XStream* product for Spectrum was in anticipation of this very litigation, and Aim High does not dispute that fact. Because Aim High does not argue any exceptional circumstances exist, Element's testing records are work-product that are exempted from discovery by Rule 26(b)(4)(D).

***Third***, Aim High's subpoena is too broad and seeks irrelevant or protected information. For example, by seeking "all" documents "related to" testing, it seeks draft reports and *all* communications with counsel. Yet, even if Element were designated as a *testifying* expert (which is not the case), Rule 26(b)(4)(C) protects draft reports and it protects communications with counsel (except those communications identified in subparts (i), (ii), and (iii)). Thus, under no circumstances should the Court compel Element to produce those absolutely privileged materials, which are protected by rule no matter what.

## II. Background

### A. The Parties.

Spectrum invented a variety of unique synthetic urine products that are covered by U.S. Patent Nos. 7,192,776 (the "'776 patent") and 9,128,105 (the "'105 patent"). Synthetic urine has a variety of uses, including medical research, corrosion testing of materials (*e.g.*, floors of airplane bathrooms), animal repellent, novelty uses, and product testing, such as diapers. Spectrum sells its patented product under the *Quick Fix* brand name.

Aim High sells a competing synthetic urine product called *XStream*.

**B. Pre-Suit Discussions.**

On August 7, 2020, Spectrum's counsel wrote to Aim High, advised that it had evidence that *XStream* infringed, and asked that it cease infringing to resolve this issue amicably. (Ex. 1, att'd.)

Aim High responded three different times, demanding that Spectrum produce lab testing that showed *XStream* infringed, on Aug. 13, 2020 (email), Aug. 14 (email), and Aug. 28 (letter). (Exs. 2-4, att'd.) Aim High argued then and argues now that *XStream* does not have sufficient "biocide" to infringe the patent claims.[2] Aim High's responses, however, did not provide any of its own testing evidence to show that it lacks a biocide, it did it provide formula information for its product, and it failed to provide any exonerating non-infringement evidence.

Aim High accused Spectrum of making "objectively baseless" and "bad faith" infringement allegations. Aim High threatened to sue Spectrum "for unfair competition, deceptive trade practices, and/or tortious inference" if Spectrum continued to assert infringement without producing testing proof of infringement. (8/28/20 letter, Ex. 4.)

On January 8, 2021, in a letter marked "CONFIDENTIAL AND SUBJECT TO FRE 408," Spectrum produced a single-page, redacted test report by S&N Labs that showed *XStream* contained both methylisothiazolinone ("MIT") and chloromethylisothiazolinone ("CMIT")—two biocides that are claimed by the patents as "isothiazolines." (Ex. 5.) The letter stated explicitly that the test report was disclosed "***without any waiver of privilege or work-product***." (*Id.* (emphasis added).) The letter asked that Aim High provide formulations for *XStream*, which Spectrum's counsel agreed to maintain as "'Attorneys' Eyes Only' and not share with Spectrum." (*Id.*)

In response, Aim High summarily dismissed the S&N test results as not "authentic," urged Spectrum to do additional testing, and refused to provide its formulations. (1/22/21 letter, Ex. 6.)

On October 11, 2021, as Aim High requested, Spectrum provided test results from a

---

[2] To prove direct patent infringement, Spectrum must prove that *XStream* has every limitation of at least one claim. While Aim High disputes it has a "biocide," Aim High has not meaningfully disputed that *XStream* has the other claim limitations, such as "water," "urea," and "creatinine." Thus, the parties' dispute has focused on the biocide limitation.

second lab, Element, which further confirmed that *XStream* contained the same methylisothiazolinone biocide that S&N Labs also had detected. (10/11/21 letter, Ex. 7.)

In response, on October 25, 2021, Aim High provided its own test results from Micro Quality Labs, Inc., which showed whatever sample Aim High provided to Micro Quality Labs tested negative for CMIT/MIT. (Ex. 8.) Spectrum requested that Aim High provide the underlying testing documents and the remaining sample for independent testing, but Aim High refused. (11/4/21 letter, Ex. 9.)

To resolve this dispute, Spectrum asked Aim High's principal to sign declaration language that Spectrum needed as assurance that Aim High did not knowingly infringe. Aim High refused. (Cavanagh Decl. ¶ 18.) Instead, without warning, Aim High filed this action against Spectrum on January 28, 2022. (ECF #1.)

**C. This Lawsuit.**

Aim High seeks a declaration of non-infringement and patent invalidity. (ECF #1.) Spectrum responded with compulsory counterclaims of patent infringement. (ECF #7.)

The case is very early in discovery. Fact discovery is not over until February 1, 2023. (ECF #18.) Expert disclosures are not due until March 20, 2023. (*Id.*)

At this stage, because neither party has designated testifying experts, S&N and Element are both non-testifying experts and thus their undisclosed records relating to this case remain protected by work-product and Fed. Civ. R. 26(b)(4)(D). (*See* Cavanagh Decl. ¶ 21 (no expert designations or expert reports disclosed yet).)

**D. Aim High's Subpoenas.**

On May 16, 2022, Aim High issued subpoenas to S&N and Element. (ECF #20-2, 20-6.) The subpoenas are virtually identical. They are extremely broad and seek more than what *testifying* experts must produce. For example, they seek "All Documents, Communications, and Information related to ... any testing You conducted on the XStream Product," despite Rule 26 protecting testifying experts' communications with counsel, subject to limited exceptions. (*Id.*) The subpoenas also sought all documents relating to any testing of third-party products, despite such testing having no relevance to this case. (*Id.*)

S&N and Element served objections, including objections based on work-product, attorney-client privilege, undue burden and expense (because Aim High refused to compensate Element for its $3,000 costs to search for and gather responsive documents), overbreadth and lack of proportionality (because the subpoenas sought "all" documents "related to" Spectrum testing), and irrelevance (because they sought records of testing of third-party products not at issue in this case). (ECF #20-3, 20-3.)

After a meet-and-confer call, S&N and Element's counsel wrote to Aim High's counsel, summarized their call, confirmed S&N and Element's positions, and offered to produce certain subpoenaed documents as to Element if Element is ultimately designated as a testifying expert. (6/13/22 email, Ex. 10.) The email stated:

> ... Spectrum has not yet decided whether it will rely on the Element lab testing to prove infringement at summary judgment or trial. ...
>
> Spectrum may prove infringement by different testing, by a different expert, or by other means, depending (at least in part) on what infringement evidence is produced in discovery by Aim High and its supplier(s). ...
>
> To resolve this dispute, therefore, I propose that Spectrum expressly state that it has not, at this stage selected the Element testing to prove infringement at summary judgment or trial ...
>
> If Spectrum selects Element testing [on or before the expert deadline], it will produce the subpoenaed information and documents for Aim High's product ..., but it will not produce [testifying expert] documents protected against disclosure under Fed. Civ. R. 26(b)(4) or documents relating to testing of third-party products (if any exist). And Aim High agrees to pay Element's [$3,000] costs for responding to the subpoena.

(*Id.*) Aim High ignored this proposal and filed the present motion to compel.

## III. Law and Argument

### A. The Court should deny the motion because Aim High filed in the wrong court.

Fed. Civ. R. 45(d)(2)(B)(i) mandates that Aim High move to compel in the "district where compliance is required." It states: "if an objection was made, the following rules apply: ... the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. Civ. R. 45(d)(2)(B)(i). This Court, and other district courts, rely on this mandatory language to deny motions to compel filed with the issuing court when, as here, the subpoena required compliance in a different district. *See Apple v. Csaa Gen. Ins.*

*Co.*, No. 2:19-CV-01093-RFB-DJA, 2021 WL 3216465, at *1–2 (D. Nev. July 29, 2021) (denying motion to compel); *Williams v. Camden USA Inc.*, No. 3:19-cv-691, 2021 WL 5417516, at *1 (S.D. Cal. Nov. 19, 2021) (same).

Here, because the commanded persons both objected (ECF #20-3, 20-7), and both subpoenas required compliance in the United States District Court for the Central District of California ("CDCA") (ECF #20-2, 20-6), Rule 45 required Aim High to move to compel in the CDCA. Thus, this Court should deny Aim High's motion as filed in the wrong court.

**B. If the Court reaches the merits, it should deny the motion on several grounds.**

**1. Element is a non-testifying expert and thus protected from discovery.**

By law, a non-testifying (or consulting) expert's work on litigation is work-product and privileged against discovery. *See U.S. Inspection Services, Inc. v. NL Engineered Solutions, LLC*, 268 F.R.D. 614, 617 (N.D. Cal. 2010) ("Rule 26(b)(4)(B)[3] 'creates a safe harbor whereby facts and opinions of non[-]testifying, consulting experts are shielded from discovery, except upon a showing of exceptional circumstances'"); *see also Comm'r of Dept. of Planning & Nat'l Resources v. Century Aluminum Co.*, 279 F.R.D. 317 (D.C.V.I. 2012) (denying motion to compel discovery of expert testing records because they "are not currently designated as testifying experts and exceptional circumstances do not exist within the meaning of Rule 26(b)(4)(D)). Indeed, Fed. Civ. R. 26(b)(4)(D) makes that protection explicit:

> Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial who is not expected to be called as a witness at trial.

Courts have held that, although the 26(b)(4)(D) discovery prohibition refers to "interrogatories or deposition," it applies to *any* mechanism that seeks discovery from non-testifying experts, including document subpoenas or Rule 34 document requests. *See, e.g., Century Aluminum*, 279 F.R.D. at 318-19 (denying motion to compel document production under 26(b)(4)(D)); *U.S. Inspection Services*, 268 F.R.D. at 626 (quashing document subpoena under

---

[3] The numbering for the safe harbor provision has since changed from 26(b)(4)(B) to 26(b)(4)(D).

26(b)(4)(D)).

An expert is a non-testifying expert, and not subject to discovery, unless and until a party discloses his name *and* provides the required expert report. *See Davis v. Carmel Clay* Schools, No. 1:11-cv-00771, 2013 WL 2159476, at *7 (S.D. Ind. May 17, 2013) (quashing subpoena issued to expert that was identified as testifying expert, but switched to non-testifying expert prior to serving expert report). "[B]oth the disclosure of the name of the expert as well as the expert's required report is necessary ..." *Id.* Before both requisite disclosures are made, an expert's work remains work-product. *See id.*

Technical testing work, like the information sought here, is work-product. *See Reckitt Benckiser LLC v. Amneal Pharmas., LLC*, No. 11-6609, 2012 WL 2871061, at *6 (D.N.J. July 12, 2012) ("Courts have recognized that studies or tests conducted after a party is aware of potential litigation are within the scope of the work product immunity doctrine.") (quoting *U.S. ex rel. Dye v. ATK Launch Sys. Inc.*, 2011 WL 996975, at *5 (D. Utah 2011)).

Here, Aim High admits that Spectrum has not designated Element as its testifying expert and not provided an expert report from Element. And every category of documents sought by the subpoena are work-product because they all relate to chemical testing of Aim High's *XStream* product in anticipation of this litigation. Specifically, categories 1-5 seek all documents and communications related to Element's testing of *XStream* at the request of Spectrum. (ECF #20-2.) All of that work, by its very nature, was in anticipation of this litigation. Indeed, Aim High does not dispute that such work was done in anticipation of litigation between Spectrum and Aim High.

Categories 6 and 7 seek documents and communication related to Element's testing of third-party products at the request of Spectrum. To the best of its knowledge, Element has never conducted testing of products other than *XStream* for Spectrum. So these categories are not relevant to Element.[4] Nonetheless, if Element had conducted such testing, it would not be relevant to this case because those third-party products are not at issue—only Aim High's *XStream* product is accused of infringement. Indeed, Aim High does not set forth any theory of relevance for third-

[4] These categories are, however, relevant to S&N Labs, which has similarly objected to these categories as seeking irrelevant information.

party products in its motion to compel. Element's relevance objections were not "boilerplate," but rather were simple and to the point: "Testing done by S&N/Element of other companies' products at Spectrum's request, if any, is not relevant to this case." (ECF #20-3 at p. 4, 20-7 at p. 4.) Moreover, any third-party patent infringement testing (if conducted), would be work-product as to those other unrelated patent disputes between Spectrum and third-parties.

Because Element is a non-testifying expert at this time, its litigation-related testing documents are protected by work-product and Fed. Civ. R. 26(b)(4)(D). Because those protected documents are what Aim High seeks by subpoena, the Court should deny the motion to compel accordingly.

**2. Neither Spectrum nor Element waived work-product for undisclosed documents.**

Aim High does not dispute that the Element's test-related records sought are work-product. Nor does it dispute that Spectrum has not designated Element as a testifying expert. Instead, Aim High insists that Spectrum waived work-product protection when it disclosed the Element test results during pre-litigation settlement discussions and when Spectrum identified the test results in its initial disclosures. (Mot. 6-8, ECF #20.)

There are two dispositive problems with Aim High's argument.

First, although Aim High never uses the phrase "subject matter" waiver; this is the type of waiver for which it argues. Because Aim High already has the test results that Spectrum provided on October 11, 2021, Aim High is not moving to compel Element to re-disclose those. Aim High already has them. Instead, Aim High is moving to compel Element to disclose work product that was <u>*not*</u> disclosed. Aim High, therefore, must prove a broad subject-matter waiver to have any chance of obtaining undisclosed work-product. *U.S. Inspection Services*, 268 F.R.D. at 626 (proof of subject-matter waiver required to obtain undisclosed documents). The majority rule, however, is no subject-matter waiver exists for non-testifying expert work-product: "'courts have generally held that partial disclosure of a non-testifying expert's work product does not waive a party's right to withhold production of the expert's undisclosed work product.'" *Walnut Creek Manor, LLC v. Mayhew Center, LLC*, No. 08-6877-AHM(CTx), 2008 WL 11338242, at *4 (C.D. Cal. Nov. 14,

2008) (quoting *Hollinger Int'l Inc. v. Hollinger Inc.*, 230 F.R.D. 508, 522 (N.D. Ill. 2005)); *see also ExxonMobil Oil Corp. v. S. California Edison Co.*, No. CV 12-10001, 2013 WL 12166215, at *5 (C.D. Cal. Nov. 19, 2013) (holding there can be no subject-matter waiver as to non-testifying expert materials protected by 26(b)(4)).

Indeed, some courts—including the CACD where Aim High should have moved—view waiver as not applying to 26(b)(4)(D) protection because the latter is rooted in the fairness doctrine and "not based on the work product protection or attorney-client privilege." *Walnut Creek*, 2008 WL 11338242, at *4.

A district court explains that the unavailability of a subject-matter waiver is especially strong with disclosures of work product created by non-testifying experts. It states:

> ... courts have held that due to the sensitive nature of work product materials and the policy behind maintaining their secrecy, generally speaking, when work product protection has been waived, it is limited to the information actually disclosed ...
>
> This limitation is particularly adhered to where the disclosure at issue pertains to work product held or created by a nontestifying expert, as in this case.

*B.M.I. Interior Yacht Refinishing, Inc. v. M/Y Claire*, No. 13-62676, 2015 WL 4316929, at *5-6 (S.D. Fla. July 15, 2015) (holding undisclosed portion of report by non-testifying expert was work-product). Thus, when there is a waiver, it is only a waiver of what was previously disclosed. It is not a waiver of undisclosed work-product records, whether or not they are related to what was disclosed. The absence of a subject-matter waiver possibility dictates a denial of Aim High's motion because it already has what was previously disclosed, and only seeks to compel what was never disclosed.

The 1994 *Atari* case cited by Aim High is distinguishable because it predates by a decade the more recent caselaw holding no subject-matter waiver exists for non-testifying expert disclosures. *See Atari Corp. v. Sega of Am.*, 161 F.R.D. 417 (N.D. Ca. 1994). And in *Atari*, the expert was also a fact witness because he was the inventor on the patents at issue. *See Atari*, 161 F.R.D. at 421 ("as a fact witness, [the expert] may be deposed with regard to knowledge he obtained and opinions he held as an actor" prior to his expert engagement); *see also ExxonMobil*, 2013 WL 12166215, at *5 ("another distinction is that the expert in [*Atari*] was a fact witness,

which is not the case here”). Neither Element nor Aim High are fact witnesses.

And even the *Atari* ruling, at best for Aim High, only required disclosure of the previously disclosed interview recording and the documents underlying it. *Id.* at 420 (limiting subpoena to “documents relied upon in forming the opinions stated in [the disclosed] videotaped statement”). The court narrowed the subpoena at issue there, and it did not find the type of broad subject-matter waiver that Aim High seeks here. *See id.* Aim High seeks not just the documents underlying the disclosed Element test results, but seeks other documents as well, including “All Documents, Communications, and Information relating to ***any*** testing You conducted on the XStream Product,” “test results for any other testing [of synthetic urine for Spectrum],” and “Communications with Defendant regarding th[ose] lab tests.” (ECF #20-2 at p. 9 (emphasis added).) Aim High never explains how *Atari* justifies compelling disclosure of documents that were not relied upon for the disclosed test results. Nor does Aim High explain why this Court should order a broad subject-matter waiver when (a) the majority rule holds there is no subject-matter waiver for non-testifying expert work-product, and (b) Aim High never provides a subject-matter waiver analysis to carry its burden to prove such a waiver, if it were recognized in these circumstances (which it is not).

Second, there was no waiver by Spectrum because it disclosed the report during settlement talks—not to prove infringement in this case. When Spectrum first disclosed test results, which were the S&N lab test results first, Spectrum stated explicitly that it was providing test results “confidentially and under FRE 408 ... without any waiver of privilege or work-product.” (1/8/21 letter, Ex. 5.) That no-waiver qualification was provided in the January 8, 2021 letter with the S&N test results, and it carried through to future FRE 408 correspondence on the same issues when Spectrum provided the Element test results with the October 11, 2021 letter that was marked “CONFIDENTIAL AND SUBJECT TO FRE 408.” (Ex. 7.) Aim High never objected to or questioned that qualification, and thus accepted it. The parties continued their dialogue and exchange of lab reports subject to the no-waiver qualification set forth in Spectrum’s January 8, 2021 letter.

Thus, there was no waiver of work-product or Rule 26(b)(4)(D) protection, let alone a broad subject-matter waiver.

**3. Fairness favors Element's and Spectrum's position, not Aim High's position.**

By highlighting that Spectrum identified the Element test results in its initial disclosures, Aim High suggests that fairness dictates that Element should provide *literally* everything in its files related to Spectrum testing because of that fact. (Mot. at 4, 6.) Aim High's fairness argument is not well taken. Identifying the Element test in initial disclosures merely means that Spectrum "may" rely upon that test to prove infringement. *See* Fed. Civ. R. 26(a)(1)(A)(ii) ("a party must ... provide ... all documents ... that the disclosing party ... ***may*** use to support is claims") (emphasis added). It means nothing more than that. According to this Court's schedule, Spectrum has until March 20, 2023, to select its testifying expert. (ECF #17.) By erring on the side of over-disclosure and identifying Element's test results in initial disclosures, Spectrum is merely reserving its right to select Element as its testifying expert later by the March 2023 deadline. Stating that a party "may" use a test is not the same as the firm commitment that occurs when a party designates an expert as its testifying expert and provides a report by the expert deadline. Indeed, Aim High provides no caselaw to support its theory. Again, by law, an expert does not lose his non-testifying protection until he is designated and provides his report. *See Davis*, 2013 WL 2159476, at *7.

Spectrum has the right to maintain its experts as non-testifying until the March 20, 2023 decision day, just as Aim High has that right, despite disclosing its expert's lab results during settlement discussions and despite identifying "lab results" generally in its initial disclosures. (10/25/11 letter, Ex. 8; Aim High Initial Disclosures, Ex. 11.) Until the expert is designated as a testifying expert, his opinions are not "at issue" for a waiver to occur. This timeline makes sense because Spectrum needs to review Aim High's documents, take depositions, and obtain other fact discovery before deciding whether it even needs chemical testing by an expert, what that chemical testing needs to show, and who that expert witness will be. For example, if Aim High's supplier produces formula evidence that shows the presence of a biocide (or an ingredient known to contain biocides), then Spectrum may not need *any* expert testing to prove the presence of that limitation. To the extent there was any confusion on this point, Spectrum and Element clarified it with their counsel's June 13, 2022 email to Aim High. (6/13/22 email, Ex. 10.) There, he stated that (a)

Spectrum has not yet selected the Element testing to prove infringement at summary judgment or trial, and (b) if Spectrum does select Element to prove infringement, on or before that deadline, it will produce what Aim High is entitled to from testifying experts under Rule 26. (*Id.*) Thus, Element should not be treated as a testifying expert based on the initial disclosure identifying its testing as evidence that Spectrum "may" use.

Moreover, the schedule provides Element with plenty of time to obtain by subpoena all of the documents to which it is entitled under Fed. Civ. R. 26 for testifying experts *after* Spectrum identifies its testifying experts. There is no good cause to fast-forward that timeline for Spectrum only and to require it to choose with finality now who its testifying expert will be. Once Spectrum chooses what expert testing it will rely upon to prove infringement, which may or may not be Element, then Aim High will have a full opportunity to get discovery from that testifying expert on his or her opinions in accordance with Rule 26.

Lastly, Aim High does not even attempt to show "exceptional circumstances" as required to obtain discovery from a non-testifying expert under Fed. Civ. R. 26(b)(4)(D)(ii). Indeed, it could not make that showing because Aim High has limitless access to its own *XStream* product for testing. Moreover, Aim High will have a full and fair opportunity to obtain discovery from Spectrum's testifying experts, if any, after they provide their expert disclosures.

**4. The subpoena is overbroad by seeking absolutely privileged and irrelevant records.**

The subpoena is objectionable on other grounds as well, and thus the motion should be denied regardless of how the Court resolves the preceding work-product issues.

First, Aim High's requests are so broad that they seek records that, if they existed, would be exempt from discovery even if Element were later selected as Spectrum's testifying expert. For example, for testifying experts, Fed. Civ. R. 26(b)(4)(B) exempts "drafts of any report or disclosure," and 26(b)(4)(C) exempts all communications with counsel, "except to the extent that the communications" relate to three specific categories identified by the rule at Fed. Civ. R. 26(b)(4)(C)(i) – (iii). Thus, the Court should not permit Aim High to obtain draft reports or communications with counsel from Element, except those allowed by 26(b)(4)(C)(i) – (iii),

regardless of how it resolves the other issues.

Second, Aim High's categories 6-7 seek documents and communications regarding "other testing [Element] conducted on behalf of [Spectrum] regarding any synthetic or laboratory made urine product other than the XStream Product." Again, Element does not believe it performed such other testing. But if it did, that testing would not be relevant because it involves different products sold by different companies that are not at issue in this case.

**5. Aim High failed to protect Element from undue burden or expense**

Fed. Civ. R. 45 states that Aim High "must take reasonable steps to avoid imposing undue burden or expense" on Element. Fed. Civ. R. 45(d)(1). Rule 45 further states that the "court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." This rule—in addition to emphasizing that Aim High's motion must move in the "district where compliance is required"—makes clear that Aim High must pay Element's expenses to comply with the subpoena. *See Shockner v. Soltanian*, No. 2:18-cv-1948, 2022 WL 829373, at *2 (E.D. Cal. Mar. 18, 2022) (party issuing subpoena "is responsible for paying all fees and costs associated with the subpoenas") (citing Fed. Civ. R. 45(d)(1)).

As Element's attorney explained during the meet-and-confer call, requiring Element to devote its time and resources to searching for and gathering documents will necessarily cause Element to lose earnings. (Cavanagh Decl. ¶ 22; Ex. 10.) That is because its employees' time would otherwise go toward revenue-generating work. Indeed, Element has taken a very reasonable position as it is not asking for Aim High to pay Element's significant legal fees incurred in objecting to the subpoena and now briefing a motion to compel filed in the wrong court.

Thus, if the Court requires Element to comply with the subpoena, then it should order Aim High to compensate Element for its lost earnings, which it estimates at $3,000.[5]

## IV. Conclusion

For any or all of these reasons, the Court should deny Aim High's motion to compel.

---

[5] Counsel for Element advised Aim High's counsel in writing that Element estimated the cost to comply with the subpoena to be $3,000 plus tax. (Ex. 10; *see also* Cavanagh Decl. ¶ 22.)

<u>Dated</u>: July 15, 2022

MCDONALD HOPKINS LLC

/s/ Matthew J. Cavanagh
Matthew J. Cavanagh
Admitted *Pro Hac Vice*
600 Superior Ave., East, Ste. 2100
Cleveland, Ohio 44114

*Attorneys for Non-Party Element Santa Fe Springs*