# Exhibit 6



1180 N. Town Center Drive, Ste. 100
Las Vegas, NV 89144

**INTELLECTUAL PROPERTY • BUSINESS LITIGATION**
*Licensed in Nevada, California, and the District of Columbia*

**Ryan Gile, Esq.**
Direct: (702) 703-7288
E-mail: rg@gilelawgroup.com

January 22, 2021
**VIA E-MAIL ONLY (mcavanagh@mcdonaldhopkins.com)**

Matthew Cavanagh, Esq.
McDonald Hopkins LLC
600 Superior Avenue East, Suite 2100
Cleveland, OH  44114

     Re:    Spectrum Laboratories LLC – Synthetic Urine Patents
            *Our Reference No.:*   AIMHIGH.0022L

Dear Mr. Cavanaugh,

     This letter is in response to your correspondence dated January 8, 2021, written on behalf of your client, Spectrum Laboratories, LLC ("Spectrum"), and which purports to provide evidence of a laboratory test of the laboratory-made urine product named *XStream* marketed and sold by Aim High Investment Group, LLC ("Aim High") and purportedly showing the presence of biocides in the *XStream* product.

     While our client appreciates the disclosure of this information (and will treat it both confidentially and under FRE 408 as provided for in your letter), our client has serious questions about the validity and accuracy of the tests results reflected therein.

     According to your letter and the attached report, you claim that the *XStream* product purportedly tested positive for methylisothiazolinone and chloromethylisothiazolinone, which you represent as biocides falling within the scope of Spectrum's patents (a representation we do not necessarily accept as true but defer on that issue for another day).

     However, based on our client's knowledge of its proprietary product formula and the chemicals/ingredients that go into the *XStream* product, it is frankly <u>not possible</u> that such compounds would be present and therefore, Aim High strongly questions both the authenticity and the chain of custody for the samples tested and believes that the samples tested by the laboratory were either not authentic product samples (the report provides no indication of the product lot numbers tested to verify their authenticity) or, even if they were authentic samples of the *XStream* product, then such samples were contaminated (and quite possibly intentionally so) before testing (the report provides no indication regarding the condition of the samples received and tested and whether they were still in their original sealed container).

     Aim High's supplier has expressly confirmed that no biocides are present in the chemicals/ingredients used in the *XStream* product.  Moreover, Aim High has reviewed the MSDS sheets for those chemicals/ingredients used in the *XStream* product which have such sheets and none show the presence of the compounds that your lab test supposedly identified as present.

Matthew Cavanagh, Esq.
McDonald Hopkins LLC
January 22, 2021

      We strongly suggest that your client conduct additional testing on the *XStream* product under circumstance where authenticity and chain of custody are rigidly documented and controlled (product lot number, confirmation of seal prior to testing) in order to ensure that no contamination occurs and so that the test results can be trusted as accurate. Aim High is quite confident that when such measures are taken, your client's lab testing will show no biocides present, and certain not the ones noted on the lab report you provided.

      Indeed, as a show of good faith and confidence in our client's position, Aim High is even willing to send, on an ongoing and continuous basis, samples of its *XStream* product from each batch ordered directly to a mutually agreeable, neutral third-party lab so that your client can have such samples tested on a regular basis to verify that no biocides are present (naturally, your client would be responsible for all lab testing fees along with all costs for Aim High to ship the product to directly to the agreed-upon neutral lab testing facility).

      And while we appreciate your willingness to "agree" to maintain our client's highly sensitive trade secret information as "Attorneys' Eyes Only," our client is understandably unwilling to disclose its trade secret formula absent a formal Protective Order or some other formal express Non-Disclosure Agreement with your firm and specifically you (along with any other individual attorneys who may be privy to such information).

      *Nothing contained in or omitted from this letter is or shall be deemed to be either a full statement of the facts or applicable law, an admission of any fact, or a waiver or limitation of any of our client's rights or remedies, equitable or otherwise, all of which are specifically retained and reserved.*

      If you have any questions or wish to discuss any of the above in greater detail, please feel free to contact us.

      Very truly yours,

      *Ryan Gile*

      Ryan Gile