NICHOLAS J. SANTORO (NBN. 532)
JASON D. SMITH (NBN 9691)
SANTORO WHITMIRE, LTD.
10100 W. Charleston Blvd., Suite 250
Las Vegas, Nevada 89135
Telephone:  (702) 948-8771
Facsimile:   (702) 948-8773
E-mail: nsantoro@santoronevada.com; jsmith@santoronevada.com

DAVID B. CUPAR (Admitted *Pro Hac Vice*)
MATTHEW J. CAVANAGH (Admitted *Pro Hac Vice*)
MCDONALD HOPKINS LLC
600 Superior Avenue East, Suite 2100
Cleveland, OH 44114
Telephone:   (216)348-5730
Facsimile:    (216)348-5474
E-Mail: dcupar@mcdonaldhopkins.com, mcavanagh@mcdonaldhopkins.com

Attorneys for Defendant and Counterclaimant
SPECTRUM LABORATORIES, LLC

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| AIM HIGH INVESTMENT GROUP, LLC,<br><br>  Plaintiff/Counter-Defendant,<br><br>v.<br><br>SPECTRUM LABORATORIES, LLC<br><br>  Defendant/Counterclaimant. | Case No.   2:22-cv-00158-GMN-DJA<br><br>**SPECTRUM'S OPPOSITION TO AIM HIGH'S MOTION TO COMPEL (ECF #45)** |

## I.     Introduction

Aim High's motion to compel pre-litigation non-testifying expert evidence is an improper second bite at the apple. Aim High already lost this fight in the Central District of California when that Court denied its motion to compel Spectrum's non-testifying experts to produce documents on the same basis. Aim High now improperly brings this motion before this Court on the same legally meritless argument for which it already lost in California.

The Court should reject Aim High's improper motion for at least three reasons: (1) judicial economy under Rule 1 dictates that this Court should allow Aim High's first chosen forum, the Central District of California, to decide this issue once and for all; (2) if this Court considers the same legal issue as did the Central District of California in this motion, then this Court should reach

{10928070:5 }

the same result, *i.e.*, Spectrum did not fully waive work product privilege by its specific pre-litigation disclosure of infringement test results during settlement discussions; and (3) discovery related to testing of non-Aim High third-party products, as Aim High itself conceded, is irrelevant to this case.

The Court should reject Aim High's forum shopping exercise and deny its motion to compel.

## II. Background

### A. The Parties.

Spectrum invented unique synthetic urine products covered by U.S. Patent Nos. 7,192,776 ("'776 patent") and 9,128,105 ("'105 patent"). Aim High sells a competing synthetic urine product called *XStream*.

### B. Pre-Suit Discussions.

On August 7, 2020, Spectrum advised Aim High that *XStream* infringed and asked that it cease infringing to resolve this issue amicably without litigation. (ECF #1-2.)

Aim High responded demanding Spectrum produce lab testing that showed *XStream* infringed. (Exs. A-C, att'd.) Aim High did not provide any of its own testing to show non-infringement. (*See* Exs. A-C.) Despite its lack of proof, Aim High accused Spectrum of making "objectively baseless" and "bad faith" infringement allegations. (8/28/20 letter, Ex. C.) Aim High threatened to sue Spectrum "for unfair competition, deceptive trade practices, and/or tortious inference." (*Id*.)

To settle this matter, Spectrum responded under "CONFIDENTIAL AND SUBJECT TO FRE 408," a redacted test report by S&N Labs that showed *XStream* contained both methylisothiazolinone ("MIT") and chloromethylisothiazolinone ("CMIT")—two of the patented biocides identified as "isothiazolines." (Ex. D.) The letter stated explicitly that the test report was disclosed "***without any waiver of privilege or work-product***." (*Id*. (emphasis added).) The letter requested that Aim High provide formulations for *XStream*, which Spectrum's counsel agreed to maintain as "'Attorneys' Eyes Only' and not share with Spectrum." (*Id*.)

In response, Aim High again did not provide any testing or its formulas. (1/22/21 letter, Ex. E.) Instead, Aim High argued the S&N test results as not "authentic," urging Spectrum to do additional testing, and refused to provide its formulations. (1/22/21 letter, Ex. E.)

On October 11, 2021, as Aim High requested, Spectrum provided test results from a second lab, Element, which further confirmed that *XStream* contained the same methylisothiazolinone biocide S&N Labs also had detected. (10/11/21 letter, Ex. F.)

In response, on October 25, 2021, Aim High provided its own test results from Micro Quality Labs, Inc., which showed whatever sample Aim High provided to Micro Quality Labs tested negative for CMIT/MIT. (Ex. G.)

In turn, Spectrum requested Aim High provide the sample for independent testing, but Aim High refused. (11/4/21 letter, Ex. H.)

To resolve this dispute, Spectrum did not ask for any financial compensation, but instead asked Aim High to sign an affidavit that it has never knowingly made or sold any synthetic urine with any patented biocide. (ECF #48-1.) Aim High never responded to this request.

**C.    The Patent Lawsuit.**

Instead of signing an affidavit assuring that it did not knowingly infringe to resolve this dispute without litigation, Aim High sued Spectrum without warning and, ironically, seeks attorneys' fees for a litigation it solely commenced. (ECF #1.) Spectrum responded with compulsory counterclaims of patent infringement. (ECF #7.) Discovery is still in its early stages. No fact depositions have occurred and fact discovery is not over until May 3, 2023. (ECF 508.)

Expert disclosures are not due until June 19, 2023. (*Id.*) Because neither party has designated testifying experts, S&N and Element are both non-testifying experts and thus their undisclosed records relating to this lawsuit remain protected by work product and Fed. Civ. R. 26(b)(4)(D).

**D.    Aim High subpoenas Spectrum's non-testifying experts.**

On May 16, 2022, Aim High issued subpoenas to Spectrum's non-testifying experts, S&N and Element. (Exs. I and J.) The subpoenas are virtually identical. They are extremely broad and seek more than what *testifying* experts must produce, for example: "[a]ll Documents,

Communications, and Information related to ... *any* testing You conducted on the XStream Product," despite Rule 26 protecting testifying experts' communications with counsel, subject to limited exceptions. (*Id.* (emphasis added).) The subpoenas also sought all documents relating to any testing of third-party products that are not part of this suit, despite such testing having no relevance to this case. (*Id.*)

S&N and Element timely served objections, including objections based on work product, attorney-client privilege, undue burden and expense (because Aim High refused to compensate Element for its $3,000 costs to search for and gather responsive documents), overbreadth and lack of proportionality (because the subpoenas sought "all" documents "related to" Spectrum testing), and relevance (because they sought records of testing of third-party products not at issue in this case). (Exs. K and L.)

After a meet-and-confer, S&N and Element's counsel offered to produce certain subpoenaed documents as to Element if Spectrum ultimately designates Element as a testifying expert:

> ... Spectrum has not yet decided whether it will rely on the Element lab testing to prove infringement at summary judgment or trial. ...
>
> Spectrum may prove infringement by different testing, by a different expert, or by other means, depending (at least in part) on what infringement evidence is produced in discovery by Aim High and its supplier(s). ...
>
> To resolve this dispute, therefore, I propose that Spectrum expressly state that it has not, at this stage selected the Element testing to prove infringement at summary judgment or trial...
>
> If Spectrum selects Element testing [on or before the expert deadline], it will produce the subpoenaed information and documents for Aim High's product ..., but it will not produce [testifying expert] documents protected against disclosure under Fed. Civ. R. 26(b)(4) or documents relating to testing of third-party products (if any exist). And Aim High agrees to pay Element's [$3,000] costs for responding to the subpoena.

(6/13/22 email, Ex. M.) Aim High did not respond to this proposal, but instead filed a motion to compel.

Aim High first incorrectly filed its motion in this Court, but withdrew it because this Court does not have jurisdiction over the S&N and Element testing labs because they are located in California. (ECF #20.) Aim High then re-filed its motion in the Central District of California. (Ex. N.)

### E. The Central District of California denies Aim High's motion to compel.

The Central District of California denied Aim High's motion to compel and agreed with Spectrum on all points. (Ex. O.) First, the Central District ruled that testing related to third-party products was not relevant to the claims or defenses in this case. (Ex. O at 4.) It determined that Aim High conceded that point, and denied Aim High's motion for those records. (*Id*. at 4 ("Aim High conceded these documents are not relevant to the parties' claims and defenses…").)

Second, with regard to Aim High's product and citing to several similar cases, the Central District concluded that Spectrum had not waived work product protection under Rule 26(b)(4)(D) by partially disclosing the non-testifying expert results during confidential settlement talks. (*Id.* at 6 ("It would belie fairness to allow Aim High to benefit from obtaining all records pertaining to [the testing] after Aim High induced Spectrum Labs into producing evidence to support its claim of infringement…").)

Aim High partially objected to the Central District's report and recommendation. (Ex. P.) It *only* objected to the ruling that Spectrum had not waived Rule 26(b)(4)(D) protection. (Ex P at 2, fn.1 ("Aim High is only objecting to that portion of the Magistrate's Order that denies compelled responses… relating to Element's testing of *XStream*.").) Because Aim High did not object to the Central District's ruling denying discovery of any other third party testing, that ruling stands as final and binding. Fed. R. Civ. P. 72. Otherwise, the partial objection on the *Xtream* testing remains pending before the district court.

### F. Aim High seeks the same discovery in Nevada denied by the Central District.

Despite already losing before the Central District and not objecting to the third-party product testing ruling, Aim High wrongly asks this Court to address those same issues all over again. (ECF #45.) Spectrum objected on the same bases as did its non-testifying expert witnesses in California: (1) relevance; and (2) work product protection. (ECF #45-6, 45-7.)

On November 29, the parties held a meet-and-confer conference. At the conference, Spectrum raised the fact that Aim High's objection was still pending before the Central District and the parties should wait for that ruling to avoid needless motion practice. (Ex. Q at 1.) Spectrum

further pointed out that Aim High did not object to the magistrate's ruling on the relevance of third party products. (*Id*.) Aim High ignored Spectrum's proposal and instead filed this motion on both of those issues.

**III.    Law and Argument**

    **A.    The Court should wait until the Central District of California rules on Aim High's objection.**

Despite initiating—and losing—in the Central District of California on the very issues in its motion, Aim High contends this Court should ignore that ruling and enter one that completely contradicts it. The Court should reject Aim High's improper request.

For this Court to initiate duplicative proceedings on an issue that the Central District of California is currently considering would violate the core tenet of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 1 (the rules should be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.") To ignore the proceeding in California—potentially creating conflicting rulings—would do the exact opposite of what Rule 1 requires. *See, e.g.*, *Blue Spike, LLC v. Vizio, Inc.*, No. 817CV01172DOCKESX, 2018 WL 8646476, at *9 (C.D. Cal. July 3, 2018) (rejecting argument that discovery should be ordered where third-party discovery pending as "inefficient" and staying decision until that discovery completed). In the interest of judicial economy, Spectrum will abide by the Central District of California's decision in this case. The Court should let that process finish, as Spectrum recommended to Aim High during the meet-and-confer process.

Aim High disagrees, arguing that this Court should consider its motion now because Spectrum purportedly "completely misrepresented" its position to the Central District when Spectrum allegedly failed to disclose that it referenced the testing in the counterclaim and in the initial disclosures. (ECF #45 at 17.) Aim High's argument is easily defeatable. As the movant, Aim High had to, but did not, make that point in its motion to compel before the Central District. (Ex. N at 3-5 (Aim High raising this argument for first time in its objections).) In opposition and as the non-movant, Spectrum's responsibility was to respond only to arguments that Aim High *did* raise to the Central District in its motion. It was Aim High's choice not to raise this point in its motion to compel

to the Central District; Aim High's argument that Spectrum engaged in bad faith in not opposing something Aim High did not raise is disingenuous.

The fact that Aim High failed to raise this point in its motion to compel but then attempts to raise it for the first time in its objections of course constitutes waiver. *See Stoyas v. Toshiba Corp.*, No. 2:15-cv-04194, 2022 WL 3030523, at *2 (C.D. Cal. July 29, 2022 ("Because Plaintiffs raise their waiver argument for the first time on their motion for review, the court cannot grant the motion on this basis."); *Hightower v. JP Morgan Chase*, No. 11-1802, 2012 WL 12878312, at *2-3 (C.D. Cal. Sept. 28, 2012) ("Motions for reconsideration and objections to a Magistrate Judge's order are not the place for a party to make a new argument and raise facts not addressed in his original brief.") (*quoting Jones v. Sweeney*, No. 04-cv-6214, 2008 WL 38921111, at *2 (E.D. Cal. Aug. 21, 2008)).

The Court should reject Aim High's request to raise an argument it waived before the Central District as a basis to hear its current motion, and allow Aim High's chosen process to be completed.

**B.     Spectrum did not waive work product immunity.**

The Court should also deny Aim High's motion to compel for the same reason as the Central District: Spectrum did not waive work-product immunity.

By law, a non-testifying (or consulting) expert's work on litigation is work-product and privileged against discovery. Fed. R. Civ. P. 26(b)(4)(B)(3); *see also Downs v. River City Grp., LLC*, 288 F.R.D. 507, 513 (D. Nev. 2013) (non-testifying expert discovery not discoverable absent plaintiff meeting "heavy burden" to show "exception circumstances"); *U.S. Inspection Services, Inc. v. NL Engineered Solutions, LLC*, 268 F.R.D. 614, 617 (N.D. Cal. 2010) ("Rule 26(b)(4)(B)(3) 'creates a safe harbor whereby facts and opinions of non[-]testifying, consulting experts are shielded from discovery, except upon a showing of exceptional circumstances'"); *Comm'r of Dept. of Planning & Nat'l Resources v. Century Aluminum Co.*, 279 F.R.D. 317 (D.C.V.I. 2012) (denying motion to compel discovery of expert testing records because they "are not currently designated as testifying experts and exceptional circumstances do not exist within the meaning of Rule 26(b)(4)(D)").

Indeed, Fed. Civ. R. 26(b)(4)(D) makes that protection explicit:

> Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or

> specially employed by another party in anticipation of litigation or to prepare for trial who is not expected to be called as a witness at trial.

Courts have held that, although the Rule 26(b)(4)(D) discovery prohibition refers to "interrogatories or deposition," it applies to any mechanism that seeks discovery from non-testifying experts, including document subpoenas or Rule 34 document requests. *See, e.g., Century Aluminum*, 279 F.R.D. at 318-19 (denying motion to compel document production under 26(b)(4)(D)).

An expert is a non-testifying expert, and not subject to discovery, unless and until a party discloses his name and provides the required expert report. *See Davis v. Carmel Clay Schools*, No. 1:11-cv-00771, 2013 WL 2159476, at *7 (S.D. Ind. May 17, 2013) (quashing subpoena issued to expert that was identified as testifying expert, but switched to non-testifying expert prior to serving expert report). "[B]oth the disclosure of the name of the expert as well as the expert's required report is necessary ..." *Id*. Before both requisite disclosures are made, an expert's work remains work-product. *See id*.

Technical testing work, like the information sought here, is work product. *See Reckitt Benckiser LLC v. Amneal Pharmas.*, LLC, No. 11-6609, 2012 WL 2871061, at *6 (D.N.J. July 12, 2012) "Courts have recognized that studies or tests conducted after a party is aware of potential litigation are within the scope of the work product immunity doctrine." *Id.* (quoting U.*S. ex rel. Dye v. ATK Launch Sys. Inc*., 2011 WL 996975, at *5 (D. Utah 2011)).

Aim High admits that Spectrum has *not* designated the labs as testifying experts and has not provided an expert report from either lab. (Ex. P. *passim* (acknowledging that the labs Spectrum used are, at this stage, non-testifying experts).) In fact, the deadline for such disclosures is not until June 19, 2023. (ECF #50.)

Every category of documents and information sought by Aim High are work-product because they all relate to chemical testing of Aim High's *XStream* product in anticipation of this suit: the identity of all third parties that have tested *XStream*, the materials third parties reviewed in testing *XStream*, and the results of that testing. (ECF #45 at 8-9.) These materials are work product and will remain so unless Spectrum decides that it will rely on them to prove infringement.

Aim High's arguments to the contrary do not hold water. First, Aim High claims that Spectrum waived work product protections for <u>all</u> records related to <u>all</u> testing (*i.e.*, full subject matter waiver) because it disclosed a specific test result in pre-litigation settlement discussions and made reference to testing in initial disclosures and its counterclaim complaint. (ECF #45 at 10-17.) Aim High does not dispute that it has the testing results, as those were disclosed in October, 2021, but, rather, it claims that it is entitled to <u>all</u> records because broad "subject matter waiver" is present. (ECF #45 at 13.)

The majority rule applying the Federal Rules of Civil Procedure, however, is no subject-matter waiver exists for non-testifying expert work-product: "'courts have generally held that partial disclosure of a non-testifying expert's work product does not waive a party's right to withhold production of the expert's undisclosed work product.'" *Walnut Creek Manor, LLC v. Mayhew Center, LLC*, No. 08-6877-AHM(CTx), 2008 WL 11338242, at *4 (C.D. Cal. Nov. 14, 2008) (quoting *Hollinger Int'l Inc. v. Hollinger Inc.*, 230 F.R.D. 508, 522 (N.D. Ill. 2005)); *see also ExxonMobil Oil Corp. v. S. California Edison Co.*, No. CV 12-10001, 2013 WL 12166215, at *5 (C.D. Cal. Nov. 19, 2013) (holding there can be no subject-matter waiver as to non-testifying expert materials protected by 26(b)(4)).

Indeed, courts view waiver as not applying to 26(b)(4)(D) protection because the latter is rooted in the fairness doctrine and "not based on the work product protection or attorney-client privilege." *Walnut Creek*, 2008 WL 11338242, at *4. That makes sense here: Spectrum's purpose for its FRE 408 testing correspondence was to resolve this dispute *without* litigation; not to have Aim High exploit the situation by filing suit and claim a full waiver happened in circumvention of the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the fairness doctrine.

The unavailability of a subject-matter waiver is especially strong with disclosures of work product created by non-testifying experts:

> courts have held that due to the sensitive nature of work product materials and the policy behind maintaining their secrecy, generally speaking, when work product protection has been waived, it is limited to the information actually disclosed ...

> This limitation is particularly adhered to where the disclosure at issue pertains to work product held or created by a non-testifying expert, as in this case.

*B.M.I. Interior Yacht Refinishing, Inc. v. M/Y Claire*, No. 13-62676, 2015 WL 4316929, at *5-6 (S.D. Fla. July 15, 2015) (undisclosed portion of report by non-testifying expert was work-product). Thus, when there is a waiver, it is only a waiver of what was previously disclosed. It is not a waiver of undisclosed work-product records, whether or not they are related to what was disclosed. The absence of a subject-matter waiver possibility dictates a denial of Aim High's motion because it already has what was previously disclosed, and only seeks to compel what was never disclosed.

Despite Spectrum citing to all of this authority in motion practice since July 2022, Aim High's motion does *not* address any of it. Rather, Aim High cites to distinguishable authority.

In *In re iPhone/iPad*, the plaintiff attached a copy of the report to the complaint and expressly relied on the findings for their infringement theory to *initiate* suit against the defendant. *In re iPhone/iPad Application Consumer Priv. Litig.*, 2012 U.S. Dist. LEXIS 166711, 2012 WL 5897351, at *8 (N.D. Cal. Nov. 21, 2012). In contrast, Spectrum provided the test results as part of pre-suit settlement discussions, and explicitly *does not* rely on that testing as part of its infringement theory. Further, it was Aim High who chose to bring this suit, not Spectrum. Aim High, like all civil litigants, must live with it litigation decision and comply with the Federal Rules of Civil Procedure.

In *Zeiger* and *In re Morning Song Bird Food Litig.*, the plaintiffs relied on expert testing to overcome motions to dismiss and withheld the reports containing testing results. *Zeiger v. Wellpet LLC*, 2018 U.S. Dist. LEXIS 63019, 2018 WL 1011156 at *2 (N.D. Cal. April 10, 2018); *In re Morning Song Bird Food Litig*, 2015 U.S. Dist. LEXIS 11333, 2015 WL 12791470 at *6-7 (S.D. Cal Jan. 23, 2015). Here, Aim High never filed a motion to dismiss (and in fact refused to sign a pre-litigation affidavit stating that it does not infringe). Further, Spectrum disclosed the reports under FRE 408 to resolve this matter without litigation per Aim High's request at that time. After Spectrum during settlement talks gave Aim High exactly what it requested, Aim High unilaterally sued without warning and now demands *all* materials related to those reports in circumvention of the expert disclosure rules and deadline in this case. That's not right.

Further, even in the cases Aim High cites, the scope of discovery was limited. The *Zeiger* court *expressly* limited the scope of the waiver "to those results specifically mentioned in the [complaint]" but *did not* include "other testing or communications with or opinions by consulting experts beyond that specifically mentioned [in the complaint]." *Zeiger*, 2018 WL 1011156 at *3. In *Worley*, the court similarly limited disclosure, limiting the defendant to deposing the expert to "opinions put at issue" but stating that "discovery is not allowed into information or material not put in issue or regarding the contents of any privileged communications." *Worley v. Avanquest N. Am. Inc.*, No. C 12-04391 WHO (LB), 2013 WL 6576732, at *5 (N.D. Cal. Dec. 13, 2013). Similarly, *Lexington Luminance* the court agreed, stating that discovery would be limited to "SEM images and EDX measurements" disclosed in the complaint, but <u>not</u> "any other communications, analyses, methodology, or documents pertaining to the non-testifying expert's pre-litigation testing or any other aspect of his/her engagement." *Lexington Luminance LLC v. Feit Elec. Co., Inc.*, No. CV1810513PSGKSX, 2020 WL 10052401, at *11 (C.D. Cal. June 12, 2020).

None of Aim High's cases support a "subject matter" waiver. In *City of Capitola*, the party selectively produced portions of a file regarding an investigation. *City of Capitola v. Lexington Ins. Co.*, No. 12-3428 LHK PSG, 2013 WL 1087491, at *2 (N.D. Cal. Mar. 13, 2013). Unlike here, however, the party did not assert that those files were work product because the consultants were non-testifying experts under Rule 26. *Id*. That case is irrelevant.

The 1994 Atari case cited by Aim High is distinguishable because it predates by a decade the current state of case law holding no subject-matter waiver exists for non-testifying expert disclosures. *See Atari Corp. v. Sega of Am.*, 161 F.R.D. 417 (N.D. Ca. 1994). And in *Atari*, the expert was also a fact witness because he was the named inventor on the patents at issue. *See Atari*, 161 F.R.D. at 421 ("as a fact witness, [the expert] may be deposed with regard to knowledge he obtained and opinions he held as an actor" prior to his expert engagement); *see also ExxonMobil*, 2013 WL 12166215, at *5 ("another distinction is that the expert in [Atari] was a fact witness, which is not the case here"). Neither laboratories are fact witnesses as was the case in *Atari*.

Aim High also argues that "exceptional circumstances" exist to compel disclosure. (ECF #45 at 17 fn. 4.) But Aim High never once argued this in its motion to compel in California so that is waived. Thus, Court should reject Aim High's waiver of work product immunity argument.

### C. Aim High has already twice conceded that third party products are not relevant.

Aim High seeks all information and records related to any testing of non-Aim High, third party products. Aim High's argument fails on three grounds: (1) Aim High waived this argument by not objecting to the Central District's ruling on this point; (2) the analysis and records are work product for the same reasons as for the *Xtream* testing above; and (2) third-party products are not relevant to this case.

Aim High raised this same argument to the Central District and lost. (*Compare* ECF #45 at 10-16 (arguing waiver based on counterclaim and initial disclosure) *with* Ex. P (same).) Dispositively, Aim High admitted it was only appealing the portion of the magistrate's ruling dealing with *XStream*, not third party products. (*Id.* at 2, fn. 1.) Therefore, Aim High has waived this argument. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir.1998) (party waives objections when it does not to object to magistrate's report and recommendation within time required).

For the same reason as in Section III.B. above, testing of third-party products by non-testifying experts is work product and not subject to disclosure. Because it is subject to work product protections, the Court should deny Aim High's motion.

That testing of other products not at issue is also not relevant. The Central District, in ruling a lack of relevance, expressly noted that Aim High itself conceded that such records and information was not relevant to either parties' claims or defenses. (Ex. O at 4.) Further bolstering the lack of relevance is the fact that Aim High **did not object to that ruling** so that it is now final. Aim High's concessions on lack of relevance in California should bind it here as well.

Aim High's previous concession that third-party products are not relevant is well-founded. The issue for the Court to decide is whether Aim High's *XStream* product—not any other product—infringes either of the Spectrum patents. Whether or not other products met the limitations of

Spectrum's patents is not relevant because it does not make the determination of whether *XStream* infringes "more or less probable." Fed. R. Evid. 401.

Citing to pre-2015 case law when the scope of discovery was changed to the "proportionality" requirement, Aim High contends that this evidence is relevant because the concentrations in those biocides could be compared to the amount of biocide in *XStream* to show that *XStream* could not meet the limitations of the patent claims. But the question relevant question of the patent claim is whether or not Aim High's biocide is sufficient to "minimize sepsis", not whether it is less or more than another product not at issue in this case. In any event, the deadline for identifying terms for claim construction has passed, and Aim High did not raise that term for dispute in the manner that it does now in its motion. (ECF #18 at 2. (deadline to identify and exchange terms for construction passed July 6, 2022).) Once again, those products are irrelevant to that analysis.

## IV.   Conclusion

For the foregoing reasons, the Court should deny Aim High's motion to compel.

Dated: January 27, 2023               Respectfully submitted,

/s/ David B. Cupar
David B. Cupar (admitted *pro hac vice*)
Matthew J. Cavanagh (admitted *pro hac vice*)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216-348-5400 | f 216-348-5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

NICHOLAS J. SANTORO
Nev. Bar No. 532
JASON D. SMITH, ESQ.
Nev. Bar No. 9691
SANTORO WHITMIRE, LTD.
10100 W. Charleston Blvd., Suite 250
Las Vegas, Nevada 89135
Telephone:   (702) 948-8771
Facsimile:    (702) 948-8773
E-mail: nsantoro@santoronevada.com
E-mail: jsmith@santoronevada.com

*Attorneys for Spectrum Laboratories, LLC*