NICHOLAS J. SANTORO (NBN. 532)
JASON D. SMITH (NBN 9691)
HOLLEY DRIGGS
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: (702) 791-0308
Facsimile: (702) 791-1912
E-mail: nsantoro@nevadafirm.com; jsmith@nevadafirm.com

DAVID B. CUPAR (Admitted *Pro Hac Vice*)
MATTHEW J. CAVANAGH (Admitted *Pro Hac Vice*)
ANDREW D. GORDON-SEIFERT (Admitted *Pro Hac Vice*)
MCDONALD HOPKINS LLC
600 Superior Avenue East, Suite 2100
Cleveland, OH 44114
Telephone: (216)348-5730
Facsimile: (216)348-5474
E-Mail: dcupar@mcdonaldhopkins.com, mcavanagh@mcdonaldhopkins.com

Attorneys for Defendant and Counterclaimant
SPECTRUM LABORATORIES, LLC

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| AIM HIGH INVESTMENT GROUP, LLC,<br><br>　　　　Plaintiff/Counter-Defendant,<br><br>v.<br><br>SPECTRUM LABORATORIES, LLC<br><br>　　　　Defendant/Counterclaimant. | Case No.　2:22-cv-00158-GMN-DJA<br><br>**SPECTRUM'S OPPOSITION TO AIM HIGH'S MOTION TO SUPPLEMENT (ECF #58)** |

## I.  Introduction

Aim High asks the Court for relief barred by LPR 1-12. That rule bars any amendment to Aim High's invalidity contentions absent good cause. LPR 1-12, for example, identifies an example of good cause: a representation by Aim High that it previously conducted a "diligent" patent search and despite that search it did not find a new prior art reference. Much like Westlaw search results missing one important case, this example might serve as good cause for one new prior art reference Aim High may accidentally not found initially but then later found.

Instead of a "supplemental" contention tweaking an existing theory or supplementing new evidence it didn't find despite a diligent search, Aim High's requested relief violates both the letter and the spirit of LPR 1-12. A simple review of ECF #58-4, the redline version of the original versus

{11058392:4 }

proposed contention shows that Aim High: (1) completely rewrites it invalidity contentions; (2) adds 13 new prior art references; (3) seven new invalidity theories; and (4) over 400 pages of new material. Aim High did not previously disclose any of these four things by the LPR 1-11 deadline. That is not a "supplement" under anyone's definition of that term.

Worse yet, those 13 new prior art references, seven new invalidity grounds and 400 pages of new evidence should have been found before Aim High filed this lawsuit. Those references include simple keyword search terms such as "synthetic," "urine," and "biocide." Those 13 new references (and the new invalidity grounds that come with them in the rewrite shown in ECF #58-4) should have been uncovered by Aim High either prior Aim High affirmatively filing this lawsuit with the DJ of invalidity claim or certainly by the invalidity contention deadline in LPR 1-11.

Aim High's attempt to completely revise its invalidity theories is especially improper because Aim High filed this lawsuit and assert a declaratory judgment claim of invalidity and then identified its bases for invalidity in its invalidity contentions. Now Aim High wants the Court and Spectrum to completely ignore its invalidity grounds that served as the basis for this suit.

Aim High's sandbagging at this stage is horribly prejudicial to Spectrum. Spectrum prepared an entire litigation strategy already around to Aim High's invalidity theories set forth in its invalidity contentions. Spectrum served its responsive contentions and discovery months ago based on those theories. Spectrum also prepared its claim construction positions and finished briefing months ago based on Aim High's invalidity theories. Aim High's complete revision of its invalidity grounds will cost Spectrum six figures in legal fees and expert costs, would add months of discovery, and will require the Court to throw out all of the claim construction briefing and have the parties start all over again. That is improper.

Aim High has had plenty of time and two bites at the apple to get its invalidity contentions straight before it chose to file the deadlines for which it had to abide by. Indeed, Aim High filed this suit knowing it had to lay out its invalidity grounds in its contentions 14 days after an initial case management conference. The law does not afford a third bite at the apple in such a situation.

Because the necessary good cause does not exist for Aim High to completely change its invalidity grounds, and because doing so prejudices Spectrum, the Court should deny the motion.

## II.    Background

### A.    Aim High chose to file this suit and assert a DJ of invalidity.

In August, 2020, Spectrum wrote to Aim High stating that its *XStream* product infringes its patents. (ECF #1-2.) During the correspondence between the parties, Spectrum presented Aim High with testing showing the presence of a biocide, CMIT/MIT, and therefore infringement of its patents. (ECF #51-6.) Spectrum did not seek money damages to resolve the dispute, but instead asked Aim High to sign declaration that it did not infringe. (ECF #48-1.)

Instead of signing that declaration that it did not infringe, Aim High brought this federal declaratory judgment action of invalidity on January 21, 2022. (ECF #1.)

For its invalidity claim, Aim High's complaint alleges that the Spectrum patents are invalid for two reasons. First, Aim High claims that the patents allegedly "fail to meet the written description, enablement and definiteness requirements of 35 U.S.C. § 112." (ECF #1 at 4.) In support of this, Aim High repeatedly references "Spectrum's apparent *broad construction*" related to the amount biocide claimed in the patent as the reason for invalidity on this basis. (*Id*. at 4-5 (emphasis added).)

Second, Aim High claims that "one or more claims of the Patents-in-Suit are invalid" as either anticipated under 35 U.S.C. § 102 "and/or" obvious under 35 U.S.C. § 103 "in view of the applicable prior art, including those prior art references cited in the prosecution history of the Patents-in-Suit…." (*Id*. At 5.)

### B.    Aim High knew that by filing this DJ action, it was subject to the Court's Local Patent Rules, including compliance with preparing invalidity contentions.

Because Aim High filed this lawsuit as a DJ action for invalidity, the Local Patent Pules required Aim High to serve its LPR 1-8 and 1-9 invalidity contentions and disclosures within 14 days of the Initial Scheduling Conference. Aim High was required to provide: "[a] *detailed* description of the factual and legal grounds for contentions of invalidity, if any, including *an identification of the prior art relied upon and where in the prior art each element of each asserted claim is found.*" LPR

1-8 (emphasis added). Under Fed. R. Civ. P. 11, this means that Aim High presumptively was diligent in its prior art searching and putting together its invalidity grounds by the time it filed its complaint and served its contentions and disclosures. That is, to meet its burden under the local patent rules, Aim High was required to list all "the prior art relied upon" for its theory. That Rule for DJ plaintiffs is in place to avoid sandbagging, and to provide the Court and the patent owner a clear understanding of Aim High's invalidity grounds since Aim High chose to sue on this ground.

Aim High served its invalidity contentions on May 20, 2022, four months after it filed its complaint. Mirroring its invalidity claim in the complaint, Aim High alleged the same two positions for invalidity. Aim High also stated three times in its contentions that "if the claims of [Spectrum's patents] are *construed so broadly that the* XStream *product is held to infringe*, then" Spectrum's patent claims are invalid under those two positions. (Aim High's Invalidity Contentions, Ex. A, at 8-9, 10, 11.) Aim High also claimed that the Haddad Application, US Patent App. No. 2004/0077106, "anticipates the claims of the '776 patent" if the Court adopts Spectrum's "broad" construction. (*Id.*)

Despite bringing this suit on its terms at the time of its own choosing and having four months to search for new prior art, Aim High did not assert any other prior art in its invalidity contentions other than the prior art before the USPTO during the prosecution of both of Spectrum's patents.

**C.   Claim construction briefing.**

Relying on Aim High's contentions relying on prior art the USPTO already considered, Spectrum took the position that none of the claimed terms needed construction. By contrast, Aim High identified six terms for construction based on its invalidity position.

The parties briefed claim construction based on the contentions raised by the parties. Spectrum filed its opening brief on August 24, 2022. (ECF #32.) Aim High filed its response brief on September 14, 2022. (ECF #33.) Aim High's responsive brief yet again identified Spectrum's position regarding the presence of a biocide and repeated the same arguments it had made since pre-litigation correspondence regarding the "breadth" of Spectrum's position, and that Spectrum's patents are purportedly invalid based on the grounds Aim High identified in its invalidity contentions. (*Id.* at 12 (complaining that Spectrum's construction position has "no boundary on how minute a

quantity could be detected and still qualify as a biocide.").) Briefing closed on September 21, 2022. (ECF #34.)

### D. Aim High runs another November 2022 keyword search on basic keywords it searched before filing this DJ action and before serving its invalidity contentions.

Two months after claim construction briefing finished, Aim High retained new counsel, Dickinson Wright. (ECF #35, notice of appearance.) Shortly after being hired, on November 9, 2022, Dickinson Wright represented to the Court and admitted that it "commissioned" a keyword patent search to formulate entirely new invalidity theories. (ECF #58 at 5.)

Neither Dickinson Wright nor lead counsel Ryan Gile explained why it ran a new keyword search 10 months after filing this DJ action and six months after serving invalidity contentions (*Id.*) They also did not provide any explanation of the keyword searching performed prior to the invalidity contention deadline to develop its invalidity grounds, or how the November 9 keyword search was different than earlier searches that occurred (or should have occurred) prior to filing this DJ action or prior to serving the invalidity contentions. (*Id.*)

### E. Despite running the same keyword search on basic terms it previously ran, Aim High's November 2022 search magically finds 13 new prior art references.

The 13 new prior art references Aim High "found" in November 2022 but not earlier are surprising because those basic search terms are found throughout those 13 newly cited references. Those basic key word search terms from Spectrum's patents include "synthetic," "urine/urinary," "biocide," "creatinine," "microbial," "urea," and "fluid."

Presuming Aim High followed the law in performing key word searches for prior art to formulate invalidity grounds prior to filing the complaint and serving its invalidity contentions, the fact that Aim High now found 13 more references is surprising, to say the least.

Running the same keyword searches Aim High had to in compliance with the law to assert a DJ claim of invalidity based on prior art, and to meet the Local Patent Rules on its invalidity contentions, Aim High would have found those 13 references by the time it served its invalidity contentions. Table 1 below identifies: (a) the 13 new proposed references Aim High claims it now

found for the first time, (b) their titles, and (c) the keywords found dozens (if not hundreds) of times in those references running the same, simple keyword searches Aim High previously performed prior to filing this DJ Action or serving its invalidity contentions:

| Table 1: New proposed references identifying same basic search terms by Aim High in keyword searching prior to filing its DJ action and serving its invalidity Contention | | |
|---|---|---|
| **Proposed New Reference** | **Title** | **Keywords Present in Reference (# of appearances)** |
| EP0173450A2 | Assembly for Inhibiting Microbial Growth in Collected Fluid | "microbial" (22 times) "fluid" (119 times) "urine" (61 times) "urea" (5 times) "creatinine" (1 time) |
| U.S. 2004/0077106 | Synthetic Urine and Method of Making Same | "synthetic" (95) "urine" (223) |
| U.S. 5,104,390 | Fluid receiving receptacle comprising biocide delivery system contacting outside of receptacle | "synthetic" (5) "urine" (31) "biocide" (94) "microbial" (4) "urea" (4) "fluid" (22) |
| WO92/12692 | Antimicrobial device for urine drainage container | "synthetic" (14) "urine" (97) "biocide" (42) "microbial" (109) "urea" (4) |
| U.S. 8,377,695 | Synthetic Urine and Method for Manufacturing Synthetic Urine | "synthetic" (38) "urine" (58) "urea" (13) |
| WO2007/113513 | Malodour compositions | "synthetic" (29) "urine" (83) "urea" (14) |
| JP2001258934A | Water absorbent, its manufacturing method, and absorptive article | "synthetic" (1) "urine" (63) "urea" (7) |
| U.S. 5,100,807 | Phenylacetylglutamine (pag) analytical test | "synthetic" (5) "urine" (15) "urea" (3) "fluid" (9) |
| U.S. 4,024,256 | Method and composition for treating urinary tract infections | "synthetic" (26) "urine" (128) "urinary" (83) "urea" (78) |

{11058392:4}                                     6

|  |  | "fluid" (3) |
|---|---|---|
| WO2006/099359 | *Methods of reducing microbial contamination* | "synthetic" (12) <br> "urine" (13) <br> "urinary" (29) <br> "urea" (6) <br> "fluid" (12) |
| Article | *Artificial urine for laboratory testing* | "urine" (70) <br> "urinary" (2) <br> "urea" (2) <br> "microbial" (1) <br> "fluid" (3) |
| Article | *The influence of citrate and phosphate on the Mancini single radial immunodiffusion technique and suggested improvements for the determination of urinary albumin* | "synthetic" (2) <br> "urine" (9) <br> "urinary" (6) |
| Article | *On the estimation of allantoin by the Rimini-Schryver reaction* | "urine" (31) <br> "urinary" (2) <br> "urea" (6) <br> "fluid" (1) |

This November 2022 keyword search turned up *13* new prior art references that Aim High contends render the Spectrum patents invalid. (*Id*.)

  **F.**  **Aim High claims to find "new" prior art reference despite having run the same keyword searches as in the past.**

On December 22, 2022 Aim High emailed Spectrum asking to "supplement" Aim High's invalidity contentions. (ECF #58-8.) Spectrum responded that it could not evaluate Aim High's request without reviewing what the proposed supplementation was. (ECF #58-9.)

Aim High did not reply to Spectrum's request for more than a month. On January 24, 2023, Aim High provided new claim charts, but *not* new proposed "supplemental" contentions themselves. (ECF #58-12 (attachments only include claim charts).) Again, based on that incomplete information, Spectrum again rejected Aim High's avoidance to show and explain what Aim was proposing as a "supplement."

The first time Aim High provided Spectrum with a copy of its proposed "supplemental" contentions was with the filing of its motion on February 17, 2024. As Aim High describes in its motion, the new charts are "detailed and extensive" totaling "377 pages" of charts that never existed as part of its earlier invalidity contentions. (ECF #58 at 6.) As to redlines to the contentions themselves, here is an example of three pages of redlines in comparing the original invalidity contentions to the "supplemental" contentions Aim High wants the Court to enter:

(ECF #58-4 (new text in blue, deleted text in red, and original text in black).)

Aim High's "supplemental" contentions are completely rewritten. (*See generally* ECF #58-4.) Aim High's original contentions were 4,938 words. (*Id.*) Its new contentions are 13,784 words, a difference of 8,846 words or *36 new, double-spaced pages of material*. (*Id.*) Most of the document, including the entirety of pages 15 to 37, are completely new content or use mere sentences from the original.

Aim High's new "supplement" asserts <u>seven</u> new invalidity theories *and 13* new prior art references that Aim High found (or should have found) in earlier keyword searches required in the Local Patent Rule by the invalidity contention deadline. (*Id.*)

The "supplement" also deletes prior theories of indefiniteness and anticipation, apparently abandoning the theories it originally asserted in the complaint in favor of those new theories. (*Id.* at 42-44.)

Aim High's motion states that these new theories are required because of Spectrum's claim construction position, but Aim High's proposed "supplemental" contentions do not make any mention of how Spectrum's claim construction position that none of the terms needed construction necessitated a complete rewrite of Aim High's invalidity contentions.

### III.   Law

LPR 1-12 states that parties seeking to amend contentions may only do so upon a showing of good cause and absent undue prejudice to the non-moving party. LPR 1-12. Among listed examples of good cause listed in the LPR are "(a) material changes to the other party's contentions; (b) recent discovery of material prior art despite diligent search; and (c) recent discovery of nonpublic information about the Accused Instrumentality despite earlier diligent search." *Id*. The local rules align with the purpose of Rule 26(e), which requires diligence in supplementing discovery responses. *Luke v. Family Care and Urgent Medical Clinics*, 323 Fed. Appx. 496, 500 (9th Cir.2009) (supplementation under Rule 26(e) is a duty, not a right, and holding district court did not abuse its discretion in excluding untimely expert declarations).

The case law interpreting both the presence of good cause and absence of undue prejudice illustrate the impropriety of Aim High's motion.

### A.   Good cause

The cases Aim High cites illustrate and support a finding of no good cause under LPR 1-12. In *O2 Micro*, the Federal Circuit affirmed a *denial* of a motion to amend contentions because the party seeking the amendments was not diligent in seeking them. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc*., 467 F.3d 1355, 1364 (Fed. Cir. 2006). That party was in possession of the information behind the theory for at least one year before it sought to amend and delayed three months between a deposition highlighting the new theory and its movement for an amendment. *Id*. at 1360-61. The purpose of serving timely contentions under the local rules is to "require parties to crystallize their theories of the case *early* in the litigation" so as to "prevent the 'shifting sands' approach to claim construction." *Id*. at 1364 (emphasis added).

{11058392:4}                                                    9

In *Silver State*, this Court similarly *denied* a motion to amend contentions, finding that the party seeking the amendment wasn't diligent, the amendments would prejudice the opposing party, and there was gamesmanship at play. *Silver State Intell. Techs., Inc. v. Garmin Int'l, Inc.*, 32 F. Supp. 3d 1155 (D. Nev. 2014) ("Local Patent Rules do not contemplate allowing a party to postpone disclosures in the hope that the Court will adopt its proposed claim constructions…."). Aim High was aware of Spectrum's theory since before it even decided to file suit and provided no explanation for its failure to cite to the prior art until a year had passed since filing and four months since claim construction was completed. These cases support Spectrum over Aim High.

The Court in *Yodlee* allowed the amendment of invalidity contentions to add only one reference (not the 13 proposed by Aim High). Also, the technology at issue was "internet-based technology" so that the Court indicated that it "is more sympathetic towards difficulties in identifying prior art than it would be in cases dealing with more traditional technology." *Yodlee, Inc. v. CashEdge, Inc.*, No. C05-01550 SI, 2007 WL 1454259, at *2 (N.D. Cal. May 17, 2007). Here, on the other hand, Aim High is adding 13 new references with seven new invalidity theories, the motion would alter the nature of this case and Spectrum's response. Also, the technology, a chemical, is "more traditional" so that the prior art should have been located sooner. This case similarly supports Spectrum and a denial of the motion to "supplement."

In *Zadro* the party seeking amendment "made narrowing amendments"—the opposite of what Aim High seeks to do here, by completely overhauling its contentions to add over 400 pages of material. *Zadro Prod., Inc. v. Feit Elec. Co., Inc.*, No. SACV200101JVSDFMX, 2020 WL 7380465, at *2 (C.D. Cal. Sept. 30, 2020).

In *Linksmart*, this Court granted a *motion to strike* amended contentions where the party seeking amendment waited three months to amend after it received the information that it claimed triggered the amendment. *Linksmart Wireless Tech., LLC v. Caesars Ent. Corp.*, No. 218CV00862MMDNJK, 2021 WL 201775, at *3 (D. Nev. Jan. 20, 2021). Here, Aim High had knowledge of Spectrum's theory before it even filed the complaint, over a year and a half before it filed the present motion.

Finally, in *Industrial Print*, the court again *denied* an attempt to amend to assert "completely new defenses unrelated to Plaintiff's amendments." *Indus. Print Techs., LLC v. O'Neil Data Sys., Inc.*, No. 3:15-CV-01101-M, 2018 WL 398745, at *5 (N.D. Tex. Jan. 11, 2018). Instead, the court held that there must be a "nexus" between the proposed amendments and what they are responding to. *Id*. The same is true here—Aim High's proposed revisions completely re-haul its entire non-infringement and invalidity positions and the "changes" it alleges forced this overhaul, Spectrum's claim construction position, are mere pretext because it knew of Spectrum's position from the beginning. This case also supports Spectrum over Aim High.

### B. Prejudice

"Prejudice is typically found when amending contentions stand to disrupt the case schedule or other court orders." *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.,* 236 F. Supp. 3d 1110, 1113 (N.D. Cal. 2017) (denying motion to amend). Where parties have laid out their claim construction positions, amendments are typically prejudicial.[1] *INAG, Inc. v. Richar, LLC,* No. 216CV00722RFBEJY, 2021 WL 1582766, at *8 (D. Nev. Apr. 22, 2021), *aff'd sub nom*. *INAG, Inc. v. Richar, Inc.*, No. 216CV00722RFBEJY, 2021 WL 4509165 (D. Nev. Sept. 30, 2021) (citing cases); *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co. Ltd.*, No. 14-cv-371, 2016 WL 3854700, at *2 (E.D. Tex. Mar. 28, 2016) ("It is clear that amendments to invalidity contentions after parties have disclosed and argued for their claim construction positions is prejudicial."); *see also Allure Energy, Inc. v. Nest Labs, Inc.,* 84 F. Supp. 3d 538, 542 (E.D. Tex. 2015) ("no experienced practitioner would argue that the sudden introduction of a new prior art reference is not prejudicial").

## IV. Argument

### A. Aim High fails to establish good cause

Aim High's motion falls well short of establishing the good cause requirement for which Aim High has the burden. The truth why Aim High seeks to amend is as obvious as an elephant in a room:

---

[1] Aim High references LPR 1-18a in support of its position. (ECF #58 at 12.) Instead of supporting Aim High's argument, that rule illustrates why the "supplement" is inappropriate. LPR 1-18a allows parties to amend disclosures following the claim construction order for the purpose of "reasonably limit[ing] the number of clams and prior art references asserted." LPR 1-18a. That is, the purpose is to *limit* rather than *expand* the case as Aim High improperly seeks to do here.

its new lawyers didn't like Aim High's existing invalidity grounds, and want the Court to allow it to start this case (ironically that Aim High brought) all over again. A do over. That, however, is not good cause.

Indeed, LPR 1-12 provides the quintessential example of good cause: despite performing a diligent prior art search previously, a party did not find a prior art reference. LPR 1-12. Dispositively, Aim High points out but does not apply any of the LPR 1-12 examples of good cause. (ECF #58 at 9.) In fact, the new prior art proves that Aim High was <u>not</u> diligent in searching for or asserting the prior art it now seeks to add.[2] There are two reasons why Aim High did not rely on the very good cause examples in LPR 1-12. First, Aim High found those 13 prior art references previously running the same keyword searches on the same basic key word terms such as "urine," and "biocide." Second, Aim High did not comply with the law and run those key word searches before filing this DJ action or serving its invalidity contentions. Neither of those two reason constitute good cause. The fact that Aim High could not even apply the relevant and applicable examples of good cause out of LPR 1-12 here is dispositive of the lack of good cause.

Aim High's blame shifting claim that Spectrum raised "broad" new claim construction briefing arguments is untrue. (ECF #58 at 10.) Aim High knew Spectrum's infringement position since prior to this lawsuit when Spectrum tried to resolve this issue without litigation. Aim High in its complaint stated that it believe Spectrum's patents were invalid and even used the term "broad" to characterize Spectrum's position. (ECF #1 (supporting its invalidity position by stating that "Spectrum's apparent *broad construction*" supports a finding of invalidity).) The same goes for Aim High's original contentions, which repeatedly identify Spectrum's construction position for infringement as "broad." (Ex. A, *passim*.) Aim High's argument that completely new invalidity

---

[2] Indeed, one reference is a Spectrum patent already directly at issue in this case, the '776 patent, which Aim High seeks to use against Spectrum's other patent in this case, the '105 patent. That means that Aim High knew about that reference since prior to filing this suit. There is literally no excuse for Aim High to now cite that reference it knew about for more than a year for the first time as an invalidity ground now.

{11058392:4}                                    12

contents are warranted based on its knowledge of Spectrum's position since prior to this suit is not good cause.³

Aim High again tries to blame Spectrum as its basis for good cause, this time alleging that Spectrum's alleged "material change in its position regarding its own testing reports that it relies on as its sole 'proof' of and basis for alleging infringement." (ECF #58 at 10.) This argument is both irrelevant and nonsensical. Much like an apple is different than an orange, Aim High itself chose to bring an invalidity case, which has factually nothing to do with whether its accused product infringes. And as detailed in other briefing, this argument is false because there is no "material change" to how the testing is treated—Spectrum, from the beginning, has asserted that the testing materials are subject to work product protections. (*See, e.g.*, Spectrum's Opp. to Aim High's Motion to Compel, ECF #51, at 2 (noting that from the beginning the testing was disclosed "without any waiver of privilege or work product").) The Court should reject Aim High's argument of completely revising its invalidity contentions because Spectrum properly asserts work product on pre-litigation settlement talks.

The Court should deny the motion to amend for lack of good cause.

**B.      Spectrum would be unduly prejudiced based on Aim High's complete revision of its invalidity theories based on work it should have completed either prior to filing its DJ complaint or its invalidity contentions.**

Even if Aim High had good cause, Spectrum would be unduly prejudiced by the amendment. The Court should deny its motion for this second, independent, reason.

The prejudice against Spectrum with Aim High's invalidity overhaul is strong. Ironically, while Aim High argues that "Spectrum effectively transformed what started out as a simple case of non-infringement … into a much more complicated case disconnected from the actual facts…" (ECF #58 at 5), it is *Aim High* not Spectrum that seeks to add over 400 pages of new contentions and

---

³ Aim High presents the red herring that Spectrum provided a "surprise" amendment to its contentions as support for its amendment. (ECF #58 at 11.) Nothing could be further from the truth. Aim High *requested* the amendment, which was the simple addition of bates numbers identifying supporting documents in the supplemental contentions. Not one change was substantive.

{11058392:4}                              13

theories into this case. Aim High's proposal will make this case explode from a moderately sized infringement case to an invalidity super storm. If Aim High is allowed to completely re-write its contentions and adopt its new 377-page tables, Spectrum will be required to spend a considerable amount of time and money reviewing the new theories, hiring experts to address them, and completely overhauling its validity contentions under LPR 1-10. Spectrum further anticipates that claim construction briefing will need to be re-opened in order to address the baker's dozen of new prior art references Aim High seeks to introduce and invalidate its patents. This interruption of the case schedule is textbook prejudice. *Verinata*, 236 F. Supp. 3d at 1113.

Because the amendment would unduly prejudice Spectrum, the Court should deny the motion to amend.

### IV. Conclusion

For the foregoing reasons, the Court should deny Aim High's motion to amend its invalidity contentions.

Dated: March 13, 2023               Respectfully submitted,

/s/ David B. Cupar
David B. Cupar (admitted *pro hac vice*)
Matthew J. Cavanagh (admitted *pro hac vice*)
Andrew D. Gordon-Seifert (admitted *pro hac vice*)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216-348-5400 │ f 216-348-5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com
agordon-seifert@mcdonaldhopkins.com

NICHOLAS J. SANTORO
Nev. Bar No. 532
JASON D. SMITH, ESQ.
Nev. Bar. No. 9691
HOLLEY DRIGGS
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Telephone:   (702) 791-0308
Facsimile:   (702) 791-1912
nsantoro@nevadafirm.com
jsmith@nevadafirm.com

*Attorneys for Spectrum Laboratories, LLC*