UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Aim High Investment Group, LLC, | Case No. 2:22-cv-00158-GMN-DJA |
| Plaintiff, | |
| v. | **Order** |
| Spectrum Laboratories, LLC, | |
| Defendant. | |
| And related counterclaims. | |

This is a trademark infringement case arising out of two companies that both make synthetic urine.  Aim High Investment Group, LLC sues Spectrum Laboratories, LLC for a declaratory judgment that its *XStream* product does not infringe on Spectrum's patented formulas containing certain biocides to prevent the urine solutions from experiencing sepsis (*i.e.*, bacterial growth).  Spectrum counterclaims for injunctive relief and damages, alleging that Aim High's *XStream* product does infringe on its patents.

Aim High moves to strike Spectrum's infringement contentions, arguing that the contentions are bare-bones and hide the facts and evidence on which Spectrum relies to support its contentions that *XStream* infringes on Spectrum's patents. (ECF No. 42).  Because the Court finds that most of Spectrum's infringement contentions are sufficient, but that one is not, it grants the motion to strike in part and denies it in part.  The Court will require Spectrum to amend the one infringement contention that is insufficient.

I.  **Background.**

The parties' dispute began in 2020, when Spectrum sent a letter to Aim High asserting that Aim High's *XStream* product infringed on Spectrum's patents: U.S. Patent Nos. 7,192,776 (the '776 Patent) and 9,128,105 (the '105 patent).  Aim High responded, asking Spectrum to produce lab testing demonstrating that *XStream* infringed.  Spectrum obliged and provided Aim

High with a redacted report from S&N Laboratories.  When Aim High challenged the authenticity of the report, Spectrum provided Aim High with test results from a second lab: Element Laboratories.  The parties were ultimately unable to resolve their dispute through pre-litigation communications.

As part of this litigation, Spectrum served its infringement contentions, including that:

1. For both the '776 and '105 patents, *XStream* contains a biocide in the form of methylisothiazolinone (MIT).

2. *XStream* contains sufficient concentrations of biocide to minimize sepsis as required by multiple claims of the '776 and '105 patents.

3. *XStream* has at least one disassociated ionic compound in the form of chloride and a specific gravity between 1.005 g/cm3 and 1.025 g/cm3 as required by multiple claims of the '776 and '105 patents.

4. *XStream* has a urea compound in the form of carbamide peroxide as required by claim 8 of the '105 patent.

Aim High moves to strike these contentions, asserting that they are vague and unsupported.  (ECF No. 42).  Aim High asserts that Spectrum could not have created these contentions without detailed chemical testing of the *XStream* product, which testing data Spectrum has not produced and which data the S&N and Element reports apparently do not contain.[1]  Aim High asserts that Spectrum has violated Local Patent Rule 1-7(b) by failing to provide the testing data supporting these contentions and has violated Local Patent Rule 1-7(e) by failing to provide testing data showing that Spectrum's products—named *QuickFix*—embody the patents.  Aim High also asserts that the infringement contentions are too vague under Local Patent Rule 1-6(b) and (c) because, without testing data, Spectrum's assertions that *XStream* contains specific chemicals and specific concentrations of those chemicals is merely speculative.

---

[1] Aim High only explicitly states that the S&N and Element reports that Spectrum produced in pre-litigation discussions do not contain sufficient data to establish one of the infringement contentions at issue: that *XStream* contains MIT.  However, given Aim High's remaining arguments, it appears that Aim High's position is that the S&N and Element reports do not contain information to support Spectrum' other contentions either.

Spectrum responds that its infringement contentions are sufficient because they put Aim High on notice of its infringement theories. (ECF No. 48). Spectrum argues that it is not required to produce evidence to support its infringement contentions at this stage.[2] Spectrum adds that it has supplemented its infringement contentions to cite to documents in compliance with Local Patent Rule 1-7(b) and (e), mooting Aim High's arguments under those provisions.

Aim High replies and reiterates that Spectrum's infringement contentions are insufficient because they are unsupported. (ECF No. 52). Aim High asserts that Spectrum's amendments are also insufficient because they only point to the publicly available file for the asserted patents and not additional testing data. Aim High adds that Spectrum did not seek to amend its contentions as required by Local Patent Rule 1-12.

**II.  Discussion.**

"The District of Nevada's Local Patent Rules, like the local patent rules for the Northern District of California, are designed to require the parties to provide 'early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery.'"[3] *Linksmart Wireless Technology, LLC v. Caesars Entertainment Corporation*, No. 2:18-cv-00862-MMD-NJK, 2021 WL 201775, at *2 (D. Nev. Jan. 20, 2021) (quoting *Silver State Intellectual Techs., Inc. v. Garmin Int'l, Inc.*, 32 F. Supp. 3d 1155, 1161-62 (D. Nev. 2014)). Like similar patent

---

[2] Spectrum raises other arguments in response to Aim High's motion relating to the parties' dispute over a third-party subpoena Aim High issued to S&N and Element in the Central District of California, whether Aim High waived its arguments by not raising them during claim construction, that Aim High has not cooperated in discovery, and that Aim High's motion is an improper summary judgment motion. However, because the Court reaches its conclusion on other grounds, it does not reach these arguments.

[3] The Local Patent Rules for the District of Nevada at issue are similar to the local patent rules adopted by the Northern District of California and the Eastern District of Texas. Accordingly, the Court considers opinions by courts of these districts concerning its local patent rules as persuasive. *See Silver State Intellectual Technologies, Inc. v. Garmin Intern., Inc.*, 32 F. Supp. 3d 1155, 1161-62 (D. Nev. 2014) (recognizing the similar designs of the District of Nevada's and Northern District of California's local patent rules); *Finisar Corp. v. DirecTV Group, Inc.*, 424 F. Supp. 2d 896, 897 n.1 (E.D. Tex. 2006) ("The local patent rules for the Eastern District of Texas were modeled after the local patent rules adopted by the Northern District of California.").

rules throughout the country, the Local Patent Rules "require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Power Probe Group, Inc. v. Innova Electronics Corporation*, No. 2:21-cv-00332-GMN-EJY, 2021 WL 5280651, at *1 (D. Nev. Nov. 12, 2021) (quoting *Fresnius Med. Care Holdings, Inc. v. Baxter Int'l*, No. C-03-1431 SBA, 2006 WL 1329997, at *4 (N.D. Cal. May 15, 2006)); *see O2 Micro Int'l, Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006) ("[t]he rules…seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories.").[4] The rules "provide structure to discovery and enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute." *Creagri, Inc. v. Pinnaclife Inc., LLC*, No. 11-cv-6635-LHK-PSG, 2012 WL 5389775, at *2 (N.D. Cal. Nov. 2, 2012).

"Striking a patentee's infringement contentions is a severe sanction that should be used sparingly and only for good cause." *Avago Technologies, Inc. v. IPtronics Inc.*, No. 5:10-cv-02863-EJD, 2015 WL 4647923, at *2 (N.D. Cal. Aug. 5, 2015). In the Northern District of California, motions to strike initial infringement contentions are frequently treated as motions to compel the amendment of infringement contentions. *Droplets, Inc. v. Yahoo! Inc.*, No. 4:12-cv-03733-JST-KAW, 2020 WL 4045211, at *3 (N.D. Cal. May 6, 2020). "While some courts have required a party asserting infringement to show good cause before granting leave to amend initial contentions, many have simply compelled the asserting party to serve compliant infringement contentions." *Id.*

The requirements for disclosure of a patentee's infringement theories are set forth in Local Patent Rules 1-6 and 1-7. Local Patent Rule 1-6(b) provides that a party must identify each accused product as specifically as possible. Local Patent Rule 1-7(b) requires a party to produce all documents "evidencing the conception, reduction to practice, design, and development of each" accused product. And Local Patent Rule 1-7(e) requires that a party produce documents

---

[4] The Federal Circuit governs interpretation and applicability of local patent rules. *O2 Micro Int'l Ltd.*, 467 F.3d at 1364.

demonstrating "the operation of any aspects or elements" of the party's own products that the party claims practices its patents.

But the "rules do not, as is sometimes misunderstood, 'require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case.'" *Creagri*, 2012 WL 5389775 at *2 (internal citations omitted).  However, "to the extent appropriate information is readily available to it, a patentee must nevertheless disclose the elements in each accused instrumentality that it contends practices each and every limitation of each asserted claim. *Id.*  In its infringement contentions, a party need not prove through evidence that the accused product in fact infringes its patent. *See id.* at *4.  Instead, it only has to prove enough information for the other side to understand its theory of infringement. *See id.*

*Creagri, Inc. v. Pinnaclife Inc., LLC*, stands for the proposition that a party need not prove through evidence its infringement contentions regarding the specific formulation of a product, but can rely on the other party's advertising to reach its conclusions. *Creagri*, 2012 WL 5389775 at *1-3.  In *Creagri*, the creator of an olive-derived health supplement—Creagri—sued Pinnaclife, alleging that Pinnaclife's products infringed on Creagri's patents. *Id.* at *1.  Creagri's at-issue infringement contention asserted that the infringing products "contain a weight ratio of hydroxytyrosol to oleuropein of between 5:1 and about 200:1…Publicly accessible documentation indicates that [the infringing products] are 'Hydroxytyrosol 7% standardized…" *Id.* at *3.  Pinnaclife argued that the infringement contention insufficiently specified how the amounts of the compounds violated the patent and that Creagri's reliance on advertising materials—which did not provide the weight ratios of chemicals in the products—failed to provide enough factual support for the contentions. *Id.*  Pinnaclife asserted that Creagri needed to provide testing data or other facts to support its contention and moved to compel Creagri to supplement its infringement contentions. *Id.* at *1, 3.  The Court, however, disagreed and explained:

> Pinnaclife's argument overstates the requirements of Patent L.R. 3-1.  Creagri must identify how Pinnaclife's products infringe with as much specificity as possible with the information currently available to it.  But it is not obligated at this point to supply evidence to support its infringement theory.  Creagri asserts, and Pinnaclife does

> not dispute, that it relies exclusively on Pinnaclife's publicly available advertisements and marketing materials for its allegations. Disclosure of the factual bases of its allegations is all that is required at this stage.

*Id.*

The Court finds that Spectrum's infringement contentions provide sufficient notice of Spectrum's infringement theories and declines to grant the harsh sanction of striking them. Spectrum has described Aim High's *XStream* product specifically, as required by Local Patent Rule 1-6(b). Indeed, it is not the specificity with which Spectrum describes *XStream* that Aim High takes issue with. Instead, it is the lack of evidence supporting that specificity. But the Court finds that Spectrum has complied with Local Patent Rule 1-7(b) because it has already produced the S&N and Element reports on which it relies.[5] While Aim High asserts that Spectrum could only have derived its conclusions from testing data beyond the S&N and Element reports, Aim High's assertion and request that Spectrum produce these purported additional tests reads the Local Patent Rules too broadly. Spectrum is not required, at least at this stage, to produce specific evidence or prove its infringement case. And Spectrum has provided the information it has and on which it relies for its assertions in the form of the Element and S&N reports and Aim High's advertising and that of Aim High's distributor. This is sufficient to provide enough information for Aim High to understand Spectrum's theory of infringement.

The Court finds that Spectrum's infringement contention are similar to those in *Creagri* which asserted that the infringing product contained specific ratios of compounds while relying on advertising material that did not include those ratios. But the first, second, and fourth

---

[5] The Court also notes that Spectrum has amended its infringement contentions to include information purportedly falling under Local Patent Rule 1-7(e). However, the Court declines to decide the propriety of Spectrum's amendment and whether the amendment is sufficient to satisfy Local Patent Rule 1-7(e) because those issues are not fully briefed. The crux of Aim High's motion to strike is that Spectrum had not produced evidence demonstrating its testing of *XStream*, and focused little on Spectrum's production of documents demonstrating that its own *QuickFix* products practice Spectrum's patents. Aim High also did not move to strike on the basis of Spectrum's improper amendment because Spectrum did not amend its infringement contentions until after Aim High filed its motion to strike. (ECF No. 48-9 at 15). In any event, the Court will require Spectrum to amend its contentions—albeit in a different manner—in this order.

contentions about which Aim High complains have even more support than those in *Creagri*, as outlined below:

1. Spectrum's contention that *XStream* contains MIT is supported by the Element report. And while Aim High refutes the reliability of that report, its argument does not mean that Spectrum's reliance on the report is misplaced for the purposes of making its infringement contention.

2. Spectrum's contention that *XStream* contains sufficient biocide in relation to creatinine to minimize sepsis is supported by Spectrum's observation that *XStream* does not spoil on shelves and the Element report demonstrating that *XStream* contains a biocide. While Aim High asserts that there are other methods than biocides to prevent a product from spoiling, again, Spectrum is not required to prove its case at this stage.

4. Spectrum cites to the website of *XStream*'s distributor for the contention that *XStream* contains at least one of the urea compounds listed in the patent. While Aim High asserts that Spectrum cannot support its contention because its distributor's website and its packaging only generally identify urea—and not carbamide peroxide more broadly—Spectrum's contentions only assert that *XStream* contains urea. Spectrum's contentions do not assert that *XStream* specifically contains carbamide peroxide. (ECF No. 42-6).

On the other hand, Spectrum does not explain where it derived its third contention that XStream has at least one disassociated ionic compound in the form of chloride and a specific gravity between 1.005 g/cm3 and 1.025 g/cm3. While Spectrum is not obligated to prove its claim at this stage, it must at least provide the factual basis for this claim, whether it be advertising, testing, or some other source. Because Spectrum did not provide this basis, the Court will require Spectrum to amend this contention. The Court thus finds that Spectrum's first, second, and fourth infringement contentions are sufficient under the Local Patent Rules and denies Aim High's motion to strike these contentions. However, because the Court finds that Spectrum's third contention fails to provide the factual basis for its claims, the Court will grant Aim High's motion to strike this contention and require Spectrum to amend it.

**IT IS THEREFORE ORDERED** that Aim High's motion to strike (ECF No. 42) is **granted in part and denied in part.** It is granted in part regarding Spectrum's contention asserting that *XStream* has at least one disassociated ionic compound in the form of chloride and a specific gravity between 1.005 g/cm3 and 1.025 g/cm3. It is denied in part regarding the remainder of Spectrum's contentions at issue in the motion.

**IT IS FURTHER ORDERED** that Spectrum shall amend its infringement contention asserting that *XStream* has at least one disassociated ionic compound in the form of chloride and a specific gravity between 1.005 g/cm3 and 1.025 g/cm3 to include the factual basis for this contention. Spectrum shall serve this amendment on or before **July 20, 2023.**

DATED: June 30, 2023

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE