**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

Aim High Investment Group, LLC,

Plaintiff,

v.

Spectrum Laboratories, LLC,

Defendants.

And related counterclaims.

Case No. 2:22-cv-00158-GMN-DJA

**Order**

This is a trademark infringement case arising out of two companies that both make synthetic urine. Aim High Investment Group, LLC sues Spectrum Laboratories, LLC for a declaratory judgment that its *XStream* product does not infringe on Spectrum's patented formulas containing certain biocides to prevent the urine solutions from experiencing sepsis (*i.e.*, bacterial growth). Spectrum counterclaims for injunctive relief and damages, alleging that Aim High's *XStream* product does infringe on its patents.

Aim High moves to compel Spectrum to respond to discovery requests regarding testing that Spectrum conducted on *XStream* when the parties were engaged in pre-litigation discussions. (ECF No. 45). Spectrum moves to compel Aim High to supplement its responses to multiple of Spectrum's discovery requests. (ECF Nos. 53 and 65).[1] Spectrum also moves to compel Aim High to respond to a request for production by producing samples of the ingredients that make up *XStream* so that Spectrum can test the individual ingredients. (ECF No. 80).

[1] Spectrum filed its motion to compel twice, first under seal (ECF No. 53) and a second, redacted version after the Court granted Spectrum's motion to seal and ordered Spectrum to file a public version of the motion (ECF No. 65). Because both motions are active on the Court's docket and thus require a decision, the Court rules identically on both.

Because Aim High's requests to Spectrum regarding the testing Spectrum conducted pre-litigation raise similar issues currently pending before the Central District of California—the California court's decision on which will alter the scope of Aim High's requests—the Court denies Aim High's motion to compel as premature. (ECF No. 45). Because certain of Aim High's responses to Spectrum's discovery requests are sufficient, while others require supplementation, the Court grants in part and denies in part Spectrum's motions to compel. (ECF Nos. 53 and 65). Because Spectrum has demonstrated that its request for the *XStream* ingredients is relevant and proportional and because Aim High has not demonstrated that the request is unduly burdensome, the Court grants Spectrum's motion to compel production of these ingredients. (ECF No. 80).

## I. **Legal standard.**

If a party resists discovery, the requesting party may file a motion to compel. *See* Fed. R. Civ. P. 37(a)(1), (a)(3)(B)(iii)-(iv) ("A party seeking discovery may move for an order compelling an answer, [or] production ... if ... (iii) a party fails to answer an interrogatory submitted under Rule 33; or (iv) a party fails to produce documents ... as requested under Rule 34."). The motion must include a threshold showing that the requested information falls within the scope of discovery under Rule 26. *See Sanhueza v. Lincoln Technical Institute, Inc.*, No. 2:13-cv-2251-JAD-VCF, 2014 WL 6485797, at *1 (D. Nev. Nov. 18, 2014) (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). To be discoverable under Federal Rule of Civil Procedure 26(b)(1), information must be: (1) relevant to any party's claim or defense; and (2) proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The party opposing discovery has the burden of showing that the discovery is, among other things, irrelevant, overly broad, or unduly burdensome. *See Fosbre v. Las Vegas Sands Corp.*, No. 2:10-cv-00765-APG-GWF, 2016 WL 54202, at *4 (D. Nev. Jan. 5, 2016) (citing *Graham v. Casey's General Stores*, 206 F.R.D. 251, 253-54 (S.D. Ind. 2000)). To meet this burden, the objecting party must specifically detail the reasons why each request is objectionable. *See Fosbre*, 2016 WL 54202, at *4.

Federal Rule of Civil Procedure 26(b)(2)(C) further limits discovery and allows the Court to restrict discovery where it is "outside the scope of Rule 26(b)(1)." Fed. R. Civ. P.

26(b)(2)(C)(iii). In deciding whether to restrict discovery under Federal Rule of Civil Procedure 26(b)(2)(C), the Court "should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." *Caballero v. Bodega Latina Corp.*, No. 2:17-cv-00236-JAD-VCF, 2017 WL 3174931, at *3 (D. Nev. July 25, 2017) (internal citations and quotations omitted). Fed. R. Civ. P. 26 gives the Court broad discretion to "tailor discovery narrowly and to dictate the sequence of discovery." *See id.* (internal citations and quotations omitted).

## II. Discussion.

### *A. The Court denies Aim High's motion to compel as premature (ECF No. 45).*

#### 1. The parties' arguments.

The parties' dispute began in 2020, when Spectrum sent a letter to Aim High asserting that Aim High's *XStream* product infringed on Spectrum's patents: U.S. Patent Nos. 7,192,776 (the '776 Patent) and 9,128,105 (the '105 patent). Aim High responded, asking Spectrum to produce lab testing demonstrating that *XStream* infringed. Spectrum obliged and provided Aim High with a redacted report from S&N Laboratories. The letter attaching that report stated that the test report was disclosed "without any waiver of privilege or work-product." (ECF No. 51-4). When Aim High challenged the authenticity of the S&N report and asked Spectrum to do additional testing, Spectrum obtained a report from a second lab—Element Laboratories—and provided that report to Aim High. The parties were ultimately unable to resolve their dispute through pre-litigation communications and Aim High filed suit seeking a declaration of noninfringement.

Aim High issued subpoenas to S&N and Element in May of 2022 seeking information regarding the testing that the labs performed, including testing the labs performed on third-party products. The labs objected, amongst other reasons, on the basis of work product and attorney-client privilege. Aim High moved to compel S&N and Element to respond to these subpoenas, but the Central District of California—the district where compliance was required—denied that motion. *See Aim High Investment Group, LLC v. Spectrum Laboratories, LLC*, No. 8:22-mc-

00011-DOC-ADS, at ECF No. 20 (C.D. Cal. Oct. 20, 2022). The California magistrate judge found that the third-party product testing was irrelevant at this time because Aim High only sought it to test the credibility of the labs testing. The magistrate judge also determined that Federal Rule of Civil Procedure 26(b)(4)(D)—prohibiting a party from discovering facts known or opinions held by a non-testifying expert retained in anticipation of litigation or preparation for trial—applied to protect Element and S&N from compliance with Aim High's subpoena. The magistrate judge further found that Spectrum did not waive that protection by providing the reports during the parties' settlement discussions.

> Given the circumstances giving rise to the partial disclosure of S&N and Element's testing, the Court finds fairness does not justify a waiver [of] protection under Rule 26(b)(4)(D). In its initial correspondence with Aim High, Spectrum Labs did not unilaterally disclose S&N or Element's test results to support its claim of infringement. It was not until Aim High demanded that Spectrum Labs produce evidence to support its infringement claims on three separate occasions did Spectrum Labs produce S&N's test results. The same is true regarding Element…It would belie fairness to allow Aim High to benefit from obtaining all records pertaining to S&N and Element's testing after Aim High induced Spectrum Labs into producing evidence to support its claim of infringement during pre-litigation discussions. Disclosure under these circumstances would violate the very purpose of Rule 26(b)(4)(D).

(ECF No. 45-13 at 7).

Aim High objected to the magistrate judge's ruling. *See Aim High*, No. 8:22-mc-00011-DOC-ADS, at ECF No. 24. As of the date of this order, the California court has not issued a decision on that objection.

Aim High now moves to compel Spectrum to respond to Aim High's Interrogatory Nos. 2-6[2] and Request for Production Nos. 2-6[3] which seek information like that which Aim High

---

[2] The text of the interrogatories are included below:

> **Interrogatory No. 2**: Identify every third-party that conducted any kind of study, testing, analysis, or investigation of the *XStream* Product on behalf of and/or at the direction of Defendant.
>
> **Interrogatory No. 3**: For each study, testing, analysis, or investigation identified in response to Interrogatory No. 2, identify the documents that were reviewed, considered, or relied upon by the person(s) who conducted or participated in the study, testing, analysis, or investigation.
>
> **Interrogatory No. 4**: For each study, testing, analysis, or investigation identified in response to Interrogatory No. 2, identify and describe the results of the study, testing, analysis, or investigation (including dates and person(s) who conducted or participated).
>
> **Interrogatory No. 5**: Identify the biocide(s) that is and/or has been used in any product that Defendant maintains practices the invention of the Patents-in-Dispute, including Defendant's Quick Fix, since 2007 to the present.
>
> **Interrogatory No. 6**: For each biocide listed in response to Interrogatory No. 5, identify the concentration level of that biocide (measured in ppb) used in any product that Defendant maintains practices the invention of the Patents-in-Dispute, including Defendant's product Quick Fix, since 2007 to the present.

[3] The text of the requests for production are included below:

> **Request for Production No. 2**: All Documents, Information, and Communications relating to any laboratory testing conducted on the *XStream* Product.
>
> **Request for Production No. 3**: All Documents, Information and Communications between Defendant and Element (or any predecessor-in-interest, including (without limitation) Avomeen Analytical Services) relating to any protocols for testing, instructions regarding testing, or test results relating to the *XStream* Product.
>
> **Request for Production No. 4**: Documents sufficient to show the date of acquisition by Defendant or any of its representatives of each sample of the *XStream* Product acquired by Defendant or any of its representatives prior to the filing of the complaint.
>
> **Request for Production No. 5**: Documents sufficient to show the chain of custody for each sample of the *XStream* Product acquired by Defendant or any of its representatives which was used for laboratory testing.
>
> **Request for Production No. 6**: All Documents, Information, and Communications relating to any laboratory testing conducted by Defendant on any other third-party synthetic urine products that Defendant maintains practices or infringes the Patents-in-Dispute.

sought from Element and S&N. (ECF No. 45). Aim High asserts that, even though the Central District of California has not yet decided Aim High's objections to the magistrate judge's order, this Court should nonetheless require Spectrum to respond to the interrogatories and requests for production because Spectrum provided false information to the California magistrate judge. Specifically, Aim High asserts that Spectrum told the California magistrate judge that Spectrum *only* used the reports for settlement discussions and did not use them to prove infringement in this case. But Spectrum's infringement contentions, 26(a)(1) initial disclosures, and website all reference the reports as proving that *XStream* infringes, to claim that Spectrum may rely upon the reports to prove its claims and defenses, and to warn customers that Spectrum believes *XStream* infringes, respectively. Because Spectrum relies on the reports in this manner, Aim High asserts that the Court should not await the California court's decision and should require Spectrum to respond to the discovery requests at issue.

Spectrum responds that Aim High's motion is a second attempt to obtain the information the Central District of California has already declined to allow. (ECF No. 51). Spectrum points out that Aim High only objected to the magistrate judge's ruling that Spectrum had not waived Rule 26(b)(4)(D) protection and not to the ruling that the third-party testing was irrelevant. The third-party testing ruling is thus final. Regarding Aim High's assertion that Spectrum misrepresented its position to the magistrate judge, Spectrum points out that Aim High, as the movant, had the opportunity to raise the issue, but did not. So, Spectrum was not required to raise the issue in opposition. Spectrum urges the Court to wait until the Central District of California decides the issue to avoid duplicative proceedings and possibly contradictory results.

Aim High replies that Spectrum has erroneously focused on the Central District of California action to excuse its failure to fully respond to Aim High's discovery. (ECF No. 55). Aim High asserts that the California action involves non-parties, but Spectrum, as a party, has greater obligations than a non-party to respond to discovery. Aim High also points out that Spectrum did not simply fail to raise the issue that it relied on the testing to prove infringement, it explicitly stated that it did not use the testing to prove infringement to the California magistrate judge.

        2. Analysis.

The Court denies Aim High's motion to compel as premature. In *R.R. Street & Co. Inc. v. Transport Ins. Co.*, the Ninth Circuit considered a district court's decision to decline to entertain an action that was similar to actions pending in federal and state court. *See R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 970 (9th Cir. 2011). In analyzing the issues, the Ninth Circuit referenced principles governing duplicative and piecemeal litigation. *See id.* at 974-75, 79. It noted that, "courts usually avoid duplicative litigation when similar cases are pending in two different federal courts…" *Id.* at 974-75 (emphasis removed). And "[p]iecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Id.* at 979 (internal citations and quotations omitted).

The Court notes that Aim High made the arguments underlying its instant motion to compel to the California court in its objection to the California magistrate judge's order. And if this Court were to find that Spectrum must respond to Aim High's discovery requests, but the California court were to find that S&N and Element need not provide that same information, it could create a problematic contradiction. Given the overlap between the issues before this Court and the issues before the California court—which has already issued a decision on the matter but has yet to rule on Aim High's objection—the Court finds that the principles outlined in *R.R. Street & Co. Inc.* caution against the Court deciding Aim High's motion to compel. The California court has not yet issued its decision on Aim High's objection, and the California court's decision could change the scope of Aim High's discovery requests to Spectrum. To avoid duplicating efforts, the Court declines to decide Aim High's motion at this time and denies it as premature.

***B. The Court grants in part and denies in part Spectrum's motions to compel (ECF No. 53 and 65).***

Spectrum moves to compel Aim High to respond to discovery requests seeking documents and information related to *XStream*'s formula, ingredient sources, sales, channels of distribution, and individuals with knowledge about these issues. (ECF No. 53).

1. <u>Requests regarding the accused *XStream* product.</u>

**<u>INTERROGATORY NO. 1</u>**: Describe each type of Synthetic that You have made, used, sold, offered for sale, or imported since January 28, 2016, by stating, for each such product, (a) its brand or trade name, (b) product number or SKU, (c) any other names, designations, numbers, codes, or descriptions used to describe or identify the product, (d) all formulations, and (e) the first and last Date on which You made, used, sold, offered for sale, or imported the product.

**<u>REQUEST FOR PRODUCTION NO. 1</u>**: All Documents and tangible things that concern, refer to, reflect, constitute, or evidence the formulas, compositions, or ingredients for any Synthetic that You directly or indirectly made, used, sold, offered for sale, or imported.

**<u>REQUEST FOR PRODUCTION NO. 3</u>**: For each particular substance that is contained within, or that is otherwise used to manufacture or to make commercial-ready, any Synthetic, a representative purchase order or invoice sufficient to show (a) a description of the substance; (b) the date of the order; (c) the quantity ordered; (d) the price paid; and (e) the name and address of the seller.

**<u>REQUEST FOR PRODUCTION NO. 7</u>**: All Documents or tangible things that concern, refer to, reflect, constitute, or evidence testing or chemical analysis of any Synthetic.

**<u>REQUEST FOR PRODUCTION NO. 8</u>**: All Documents and tangible things that support, refute, or otherwise concern your contentions that the ’776 patent or ’105 patent are not infringed as stated in Your First Cause of Action.

**<u>REQUEST FOR PRODUCTION NO. 12</u>**: All Documents evidencing any communications to or from You that concern the ingredients of any Synthetic.

**<u>REQUEST FOR PRODUCTION NO. 16</u>**: All Documents and tangible things that describe, refer to, concern, reflect, constitute, or evidence the experimentation, design, research, development, and engineering of any Synthetic, including (without limitation) notebooks, prototypes, testing, analyses, planning documents, developmental plans, engineering changes, management or engineering approvals, and reports.

Spectrum asserts that Aim High responded to these requests with a one-page litigation-created document—AIMHIGH00816—covered by a large watermark that outlined its formula. Spectrum argues that Aim High failed to state that its product has had the same formulation since 2016. Spectrum asserts that it is entitled to know all formulations that Aim High has used for its synthetic urine products and moves the Court to order Aim High to provide complete responses to these discovery requests and a native file of AIMHIGH00816 so that Spectrum can confirm that the document was created during litigation and not beforehand.

Aim High argues that its supplemental response to Interrogatory No. 1 expressly states that the ingredients reflected in AIMHIGH00816 have remained the same since 2013. It asserts that Spectrum's claim that AIMHIGH00816 was created during litigation is false and that the formula, as Aim High produced it, was maintained in the ordinary course of business. Aim High added the watermark—stating "HIGHLY CONFIDENTIAL TRADE SECRET INFORMATION"—as part of its confidentiality designation. Aim High asserts that "[i]f Spectrum wanted a native version of AIMHIGH00816, it should have clearly requested such."

Spectrum replies that Aim High's responses are insufficient and that Aim High still refuses to produce the native for AIMHIGH00816. Spectrum also points out that AIMHIGH00816 only identifies ingredients, not the formulation as requested by Interrogatory No. 1. Spectrum argues that the difference is that the formulation would include the amounts of the ingredients Aim High used.

The Court denies Spectrum's motion to compel a further response to these discovery requests but grants Spectrum's request that it compel Aim High to produce a native copy of AIMHIGH00816. As a preliminary matter, Spectrum did not advance any arguments regarding Request for Production Nos. 3, 7, 8, 12, or 16. The Court will thus not address these discovery requests.[4] The Court finds that Aim High has sufficiently responded to Interrogatory No. 1 and to Request for Production No. 1 through its supplements. Neither party addresses Aim High's

---

[4] Courts only address well developed arguments. *BASF Corporation v. Automall Auto Body, LLC*, No. 2:20-cv-01080-RFB-NJK, 2021 WL 2306264, at *1 (D. Nev. May 12, 2021).

production of AIMHIGH00817-818, AIMHIGH00820-874, or AIMHIGH00895-904, nor do they attach these documents. As a result, the Court cannot determine if these documents provide the "formulation" that Spectrum asserts is missing from AIMHIGH00816. Nonetheless, having reviewed AIMHIGH00816, the Court finds that it does provide the amount of the ingredients used, contrary to Spectrum's assertion. The Court will thus deny Spectrum's motion to compel a further response to these discovery requests in part and grant it in part. The Court grants Spectrum's motion in part only to require Aim High to produce a native copy of AIMHIGH00816. The Court denies Spectrum's motion regarding these requests in all other respects.

2. Requests regarding manufacturing process.

> **INTERROGATORY NO. 2**: For each Synthetic requested in Interrogatory No. 1, describe precisely how it was manufactured by stating the Persons that performed the manufacturing work, each and every step in the manufacturing process, identifying each ingredient as specifically as possible (by common name, trade name, chemical name, and formula name), as well as the quantity, timing, revision dates, and conditions of each ingredient's addition to the mixture.

> **REQUEST FOR PRODUCTION NO. 2**: All Documents and tangible things that concern, refer to, reflect, constitute, or evidence the steps, methods, procedures, recipes, or specifications used to manufacture any Synthetic.

Spectrum argues that Aim High's response to Interrogatory No. 2 simply states that "Aim High then blends the ingredients at Aim High's facilities," without any explanation of what ingredients are blended, how, or who blends them. Spectrum asserts that the manufacturing process is relevant to the method claims of Spectrum's patents. Spectrum adds that Aim High did not list the ingredients as specifically as possible and did not list every step in the manufacturing process including the quantity, timing, revision dates, and conditions of each ingredient's addition to the mixture. Instead, Aim High referred to a one-page document (but Spectrum does not attach or describe this document).

Aim High responds that it did not interpret Spectrum's requests as requiring which *natural* "Person" blended the ingredients, but rather, which facility. In any event, Aim High provided the

names of the individuals in its company with knowledge of the manufacturing process in response to Interrogatory No. 6. And Aim High is not in a position to know the individual employees of the third-party manufacturing plant to which the *XStream* product goes for final blending and packaging. Aim High adds that it referred to the list of ingredients in AIMHIGH00816 and that should be sufficient to list the ingredients as specifically as possible. Aim High asserts that it clearly identified the steps in its manufacturing process and need not provide a more detailed response. As it stands, Aim High asserts that its response provides enough detail for Spectrum to depose individuals who perform the manufacturing work of the *XStream* product.

Spectrum replies that its definition of "Person" in its discovery requests included "natural person" and thus, Aim High should have provided that initially. Spectrum asserts that Aim High should thus supplement its answer to include each and every person with knowledge of the formulation. Spectrum asserts that Aim High's response also fails to cite the document that includes its formulation. Instead, the response to Interrogatory No. 2 is evasive because it fails to detail the steps for adding each ingredient, the amount added, the machines used to blend, etc. Similarly, Aim High's reference to AIMHIGH000817-818 in the opposition (which Spectrum points out Aim High did not include in its response to the interrogatory) is also deficient because the documents do not provide the necessary detail. Instead, they simply state to take water and "add the blend" without explaining what the blend is.

The Court grants in part and denies in part Spectrum's motion to compel a more complete response to Interrogatory No. 2. As a preliminary matter, Spectrum does not advance any arguments specific to Request for Production No. 2. The Court will thus not address Request for Production No. 2.

Regarding Interrogatory No. 2, the Court cannot determine whether Aim High's reference to AIMHIGH00817-818 in its supplemental response is sufficient to describe the manufacturing process because neither party has attached or sufficiently described those documents. The Court finds Spectrum's request that Aim High identify every person involved in manufacturing the *XStream* product at the third-party manufacturing facility to be overbroad. However, Aim High must supplement its response to incorporate Aim High's response to Interrogatory No. 6 and to

list the individuals involved in the manufacture of the *XStream* product in the steps before Aim High sends it to the third-party manufacturer. Aim High need not identify the employees at the third-party manufacturer. Aim High's supplemental response to Interrogatory No. 2 is also too general in its description of the manufacturing process steps. Aim High must supplement its response to detail "each and every step" of the manufacturing process and to list the ingredients involved as specifically as possible. The Court thus grants in part and denies in part Spectrum's motion to compel regarding Interrogatory No. 2.

3. Requests regarding location of manufacturing facilities.

> **INTERROGATORY NO. 4**: For each Synthetic requested in Interrogatory No. 1, state where the Synthetic is or was physically produced (including manufacturing, mixing, and packaging processes) by identifying the address of the production facility and the Persons that own, control, manage, and operate the facility.

Spectrum argues that Aim High only responded to this interrogatory with current addresses for Aim High and Aim High's third-party manufacturer but did not state whether the products are manufactured at those addresses and if so, whether they have always been produced at those addresses. It adds that, while Aim High identified the persons that own the facilities, it did not identify those that control, manage, or operate the facilities. Aim High responds that its response to this interrogatory—identifying where *XStream* is or was produced and the person that controls the third-party manufacturing facility—was sufficient. Aim High asserts that there is nothing more for it to produce in response. Spectrum replies that Aim High's response to the interrogatory does not—as Aim High's response to Spectrum's motion does—state that the products are manufactured at the locations that Aim High identifies. Spectrum asserts that the Court should compel Aim High to supplement its interrogatory response to include this statement.

Here, the Court grants Spectrum's motion to compel in part and denies it in part. To the extent that the individuals who "control, manage, or operate" the facilities are different than the individuals Aim High has already identified, Aim High must supplement its response. Aim High must also supplement its response to include its statement that its *XStream* product is manufactured at the facilities it identified.

4. Requests regarding profits from sales of infringing product.

> **INTERROGATORY NO. 5**: Describe each sale of a Synthetic that You made or were involved in since January 28, 2016, by stating for each such sale: (a) a description of the good sold; (b) the date of sale; (c) the quantity sold; (d) the price paid by the buyer; (e) the name and address of the buyer; (f) the cost to produce the good, and (g) the net and gross profit on the sale.

> **REQUEST FOR PRODUCTION NO. 6**: For each sale of a Synthetic on or after January 28, 2016, Business Records (e.g., purchase orders, invoices, or reports from QuickBooks or other accounting software) sufficient to show: (a) a description of the type of Synthetic sold, (b) quantity/amount sold, (c) price charged, both per unit and total, and price paid (if different), (d) [d]ate of transaction, (e) buyer's name and address, (f) costs incurred in connection with the sale, including cost of goods sold, and (g) net and gross profit for the sale.

> **REQUEST FOR PRODUCTION NO. 22**: To the extent they were not produced in response to any of the above requests, all financial records for any Synthetic that existed or was made, used, offered for sale, sold, or imported on or after January 28, 2016, including (without limitation) profit-and-loss statements, revenue records, records of gross or net profits earned, financial statements, records of costs (fixed, variable, or incremental), accounting records, sales reports, management reports, and audit reports. If You do not maintain financial records at the product level, then produce all of the financial records for the level closest to the product level at which the particular financial figure is tracked.

Spectrum argues that Aim High's response cited to documents AIMHIGH00741-777 and AIMHIGH00894, which Spectrum asserts does not provide the net and gross profits. Aim High responds that it produced detailed financial documents, including the detailed sales records at AIMHIGH00741-777 and AIMHIGH00894. Aim High asserts that Spectrum can derive Aim High's gross profit margins from this information. Aim High adds that its responses to Interrogatory No. 5 and Request for Production No. 6 explain that Aim High's accounting system and financial records maintained in the ordinary course of business do not provide specific gross and net profit information for every sale of *XStream* and Aim High does not allocate overhead and other general and administrative costs to specific products. Aim High asserts that it is

confident the parties can work together to find an alternative way for it to derive profit information and that it will make its paid invoices for sales available for inspection for Spectrum. Spectrum replies that, despite Aim High's assurance in its response to Interrogatory No. 5 that it "will continue to work with its accounting function to assess how to best characterize the net profits on sales of Plaintiff's *XStream* product," Aim High has not provided this information.

The Court denies Spectrum's motion to compel regarding these discovery requests. Aim High has asserted that it has provided the financial information it has, that its accounting system doe not provide gross and net profit for each sale of *XStream* or allocate overhead and costs to specific products, and that it is otherwise willing to work with Spectrum to provide additional information so that Spectrum can derive these figures. The Court cannot compel Aim High to produce information it does not have. But Aim High has indicated a willingness to work with Spectrum to calculate the information Spectrum seeks. The Court will thus deny Spectrum's motion to compel regarding Interrogatory No. 5 and Request for Production Nos. 6 and 22 and will require the parties to meet and confer on the issue of deriving the figures Spectrum seeks through these discovery requests.

5. Request regarding knowledge of manufacturing process and ingredients.

> **INTERROGATORY NO. 6**: For each Synthetic requested in Interrogatory No. 1: (a) identify each Person, whether or not employed by You, who has or may have knowledge about the process used to create the Synthetic or its ingredients, and (b) describe the knowledge that the Person has or likely has about the process or ingredients.

Spectrum argues that Aim High listed individuals in response to this interrogatory, but did not describe the knowledge that each person has or likely has about the process or ingredients. Aim High argues that, when it listed individuals, it also wrote that those individuals "have knowledge of the ingredients in and the process for manufacturing Plaintiff's *XStream* product." Aim High asserts that nothing more is necessary to respond to this interrogatory. It adds that it is not in a position to provide information about what knowledge individuals "might" have. Spectrum replies that Aim High's response was not sufficient.

The Court grants Spectrum's motion to compel regarding Interrogatory No. 6. The interrogatory specifically asks Aim High to identify the knowledge the people it lists may have regarding the *XStream* product. But Aim High does not include any information specific to the people it lists, instead simply generally stating that they "have knowledge of the ingredients in and the process for manufacturing Plaintiff's *XStream* Product." But this is too general a response. Indeed, the fact that Aim High listed these individuals means that Aim High has at least some understanding of their involvement with its product sufficient to at least describe how these individuals are involved with *XStream* and the issues on which they might have knowledge. The Court grants Spectrum's motion to compel regarding Interrogatory No. 6 and Aim High must supplement its response to provide the knowledge that each of the people it lists may have regarding its *XStream* product.

6. Requests regarding method of slowing or preventing growth of bacteria.

> **INTERROGATORY NO. 12**: Describe all of the ways in which You have slowed or prevented growth of bacteria, molds, yeasts, microorganisms, or other organic life in any synthetic urine sold by You.

Spectrum argues that Aim High did not produce any documents to support its assertion that it uses irradiation to prevent the growth of bacteria. Spectrum adds that this is notable because Interrogatory No. 2 requested that Aim High provide the details of its manufacturing process and the documents that Aim High references in response do not list irradiation as part of the manufacturing process. Aim High responds that it did not provide documents because the interrogatory did not call for it to provide documents. It adds that its supplemental response explains precisely how Aim High prevents bacteria by explaining how it uses irradiation. Spectrum did not reply to this argument.

The Court denies Spectrum's motion to compel regarding this interrogatory. To the extent Spectrum seeks documents supporting Aim High's assertion that it uses irradiation, Spectrum may serve a request for production. But Aim High correctly points out that the interrogatory does not request that Aim High refer to or produce any documents.

***C. The Court grants Spectrum's motion to compel (ECF No. 80).***

1. <u>The parties' arguments.</u>

Spectrum moves to compel Aim High to provide samples of the ingredients used in its *XStream* product in response to Request for Production No. 29, seeking "[a] sample of each 'ingredient/chemical' identified in the second column from the left in AIMHIGH00816." (ECF No. 80). Spectrum argues that the main issue in the suit is whether Aim High's product contains a biocide that would infringe on Spectrum's patents. Spectrum thus asserts that it needs to test the fifteen individual ingredients that make up the product. Spectrum asserts that Aim High's objections based on relevance, burden, and breadth are without merit because the ingredients are directly relevant to the heart of the case, only total fifteen ingredients, and would cost Aim High less than $60 to produce.

Aim High responds that Spectrum's request is unnecessary because Aim High has already provided documents and information about its formula, ingredients, chemical analysis of the ingredients, manufacturing process, and ingredient suppliers. (ECF No. 81). Aim High asserts that the information it has already provided conclusively establishes that *XStream* does not contain a biocide and thus the request for its ingredients is unduly burdensome. Aim High adds that there is nothing stopping Spectrum from testing the *XStream* product again, as it has already done.

Spectrum replies that it is entitled to discovery regarding where the biocide that its testing registered is coming from and whether it can be isolated to a single ingredient. (ECF No. 82). It adds that it is not required to take Aim High's word that the *XStream* product does not contain a biocide. Spectrum points out that even if Aim High's ingredient list does not contain a biocide, Spectrum is entitled to test the ingredients to see if a biocide is getting into the product from an upstream supplier or "off the record."

2. <u>Analysis.</u>

The Court finds that Spectrum's request is relevant and proportional. It is relevant to Spectrum's theory of the case: that Aim High's *XStream* product infringes on Spectrum's patent by including a biocide. And it is proportional because it requires Aim High to expend little effort

and cost.  While Aim High asserts that Spectrum will not find what it is looking for when testing the ingredients, that is not a reason to impede otherwise relevant and proportional discovery.  And while Aim High asserts that the discovery is burdensome because it is duplicative of the information Aim High has already provided, Spectrum seeks different information through its request than that which Aim High has provided.  The requests are not so identical that it would render the instant request duplicative and burdensome.  The Court thus grants Spectrum's motion to compel.

**IT IS THEREFORE ORDERED** that Aim High's motion to compel (ECF No. 45) is **denied without prejudice as premature.**

**IT IS FURTHER ORDERED** that Spectrum's motions to compel (ECF Nos. 53 and 65) are **granted in part and denied in part** as outlined herein.  The parties are directed to meet and confer regarding Interrogatory No. 5 and Request for Production Nos. 6 and 22 and the issue of deriving the figures Spectrum seeks through these discovery requests.

**IT IS FURTHER ORDERED** that Spectrum's motion to compel (ECF No. 80) is **granted.**

DATED: July 28, 2023

DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE