NICHOLAS J. SANTORO (NBN. 532)
JASON D. SMITH (NBN 9691)
HOLLEY DRIGGS
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Telephone:  (702) 791-0308
Facsimile:  (702) 791-1912
E-mail: nsantoro@nevadafirm.com;
jsmith@nevadafirm.com

DAVID B. CUPAR (Admitted *Pro Hac Vice*)
MATTHEW J. CAVANAGH (Admitted *Pro Hac Vice*)
MCDONALD HOPKINS LLC
600 Superior Avenue East, Suite 2100
Cleveland, OH 44114
Telephone:  (216)348-5730
Facsimile:  (216)348-5474
E-Mail: dcupar@mcdonaldhopkins.com,
mcavanagh@mcdonaldhopkins.com

Attorneys for Defendant and Counterclaimant
SPECTRUM LABORATORIES, LLC

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| Aim High Investment Group, LLC, | ) | Case No. 2:22-cv-00158-GMN-DJA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Spectrum's Opposition to** |
| | ) | **Aim High's Objection to Magistrate** |
| Spectrum Laboratories, LLC, | ) | **Judge's Discovery Order (ECF #91)** |
| | ) | |
| Defendant. | ) | |

## Introduction

The Magistrate Judge denied Aim High's motion to compel without prejudice as "premature" under the 9th Circuit's *R.R. Street* decision. That is the correct thing to do, and thus is well within the Magistrate Judge's discretion to decide discovery issues, and far from the clear error standard that Aim High would have to meet to obtain a reversal.

1

Although Aim High submits a lengthy 23-page objection, which requires Spectrum to respond in the pages that follow, the decision by the Magistrate Judge is simple and correct. The issue presently before the California District Court—that Aim High chose to raise there first—is the same issue raised by Aim High's motion to compel and its objection: whether Spectrum waived work-product for chemical testing done by two labs.

The California Magistrate Judge ruled there was no waiver, Aim High objected (in part), and the California District Judge is reviewing that objection and has not yet ruled. Thus, it is the correct decision—in accordance with controlling Ninth Circuit law—for the Magistrate Judge to wait for that decision to avoid duplication of work or the possibility of conflicting decisions.

Thus, Aim High failed to show clear error, and this Court should overrule Aim High's objections accordingly.

## **Background**

### I. **Pre-Suit Discussions between the Parties**

The dispute started, on August 7, 2020, when Spectrum wrote to Aim High alleging that Aim High's *XStream* product infringed two Spectrum patents. Spectrum's letter did not disclose or cite any lab testing. (*See* 8/7/20 letter, ECF (CA) No. 6-1, Ex. A.) Aim High responded with three separate communications demanding that Spectrum produce lab testing or other evidence of infringement. (8/20/20 email, ECF No. 51-1; 8/14/20 email, ECF No. 51-2, 8/28/20 letter, ECF No.51-3.) Aim High's letter accused Spectrum of asserting "baseless" and "bad faith" claims of infringement and threatened to sue Spectrum. (8/28/2020 letter at p. 2, ECF No. 51-3.)

Spectrum complied with Aim High's demand for lab testing evidence and provided a one-page redacted report from S&N Labs, which showed that *XStream* contained two of the biocides claimed by the patent. Spectrum's letter was marked "CONFIDENTIAL AND SUBJECT TO FRE

408" and stated explicitly that the S&N test report was disclosed "without any waiver of privilege or work-product." (1/8/21 letter at p. 2, ECF (CA) No. 1-2, Ex. B.)[1] Aim High disputed the validity of S&N's test results, and urged Spectrum Labs to conduct additional testing.

On October 11, 2021, in response to Aim High's demand, Spectrum provided test results from a second lab, Element, that confirmed the presence of the same "methylisothiazolinone" biocide that S&N Labs had detected in *XStream* and which is claimed by the Spectrum patents. (10/11/21 letter with Element Lab Reports enclosed at p. 2, ECF No. 45-3.)

## II.     Aim High Sues Spectrum

Aim High sued Spectrum on January 28, 2022, and sought declaratory judgment of non-infringement and patent invalidity. (Compl., ECF No. 1.) Because patent infringement is a compulsory counterclaim under Fed. Civ. R. 13(a), Spectrum counterclaimed for patent infringement. (Spectrum's Answer and Counterclaim, ECF No. 24-2.)

## III.    Aim High Moves to Compel Subpoenas

Aim High issued subpoenas to S&N Labs and Element, both in California. Both subpoenas sought all undisclosed documents and communications relating to any chemical testing of *XStream* and any chemical testing of third-party products unrelated to this litigation. (Subpoena to Element at p. 9, ECF No. 51-9; Subpoena to S&N at p. 9, ECF No. 51-10) Both third-parties objected based on work-product grounds (as to *XStream*) and irrelevance and work-product (as to third-party products). (Spectrums Opposition to CA Motion to Compel at p. 4–5, ECF No. 45-11; 5/27/22 letter at p. 3–4, ECF No. 51-11; 5/31/22 letter at p. 3–4, ECF No. 51-12.)

Aim High moved to compel in the U.S. District Court for the Central District of California. Aim High's motion rested almost entirely on its argument that the pre-litigation disclosures during

---

[1] Plaintiff supplies the one page report—with the cover letter removed—at ECF No. 45-17.

settlement talks constituted waiver. (*See* Aim High's CA Motion to Compel, ECF No. 45-10.) While Aim High mentioned that Spectrum's initial disclosures cited the Element test, it never developed any arguments around that fact (*see id.* at 8.) and did not even mention the initial disclosures at oral argument. (*see* Tr. of 10/12/22 Hr'g, ECF No. 45-18.)

Spectrum and the third-parties opposed the motions. (Spectrum's Opp. to CA Motion to Compel at p. 4–5, ECF No. 45-11.) Spectrum explained that: (i) as a matter of law, an expert does not waive work-product for undisclosed documents unless and until he or she is designated as the testifying expert and produces a report, and (ii) testing of third-party products is irrelevant. (*Id.* at p. 1–2.) The Magistrate ruled in Spectrum's favor on October 20, 2022. (Order Denying Aim High's CA Motion to Compel, ECF No. 45-13.)

Aim High objected to the California District Judge. Importantly, Aim High's objection stated explicitly that it was not objecting to the portion of the Magistrate Judge's order addressing (i) S&N Labs, or (ii) third-party testing by S&N Labs or Element. Aim High was clear that it "is only objecting to that portion of the Magistrate's Order that denies . . . compelled responses . . . relating to Element's testing of XStream." (CA Objection at p. 2 n.1, ECF No. 45-14.) Thus, the Magistrate Judge's Order that work-product protection applies to S&N Labs' testing records and that third-party testing is irrelevant are final, un-appealable, and thus res judicata and collateral estoppel attach to those findings.

Aim High's objections no longer contended that the pre-litigation disclosures were waiver. (CA Objection at p. 9, ECF No. 45-14.) Instead, for the very first time, Aim High argued that Spectrum citing the Element test in its counterclaim was a waiver. *(Id.)* The counterclaim was filed months before Aim High moved to compel before the Magistrate Judge, so it was not new evidence. Aim High falsely accused the Magistrate Judge of "clearly overlook[ing]" the initial

4

disclosures and the counterclaim's citations to Element's test, despite Aim High not citing the counterclaim to the Magistrate Judge and having previously focused on the pre-litigation disclosures as the waiver event. (*Id.*) In short, Aim High lost on one argument to the Magistrate Judge, and tried a new argument to the District Judge hoping for better results.

### IV. Aim High Re-Argues Waiver of Work-Product to This Court, Hoping for a Different Outcome.

After failing to prove a work-product waiver in California, Aim High argued for a waiver of the same work-product privilege here. Aim High did so by moving to compel Spectrum to produce undisclosed work-product relating to Element's and S&N Lab's testing of *XStream*. (Aim High's NV Motion, ECF No. 45.) Having already lost on arguing the pre-litigation disclosures waived work-product, Aim High's motion to compel here focuses its waiver argument on Spectrum's counterclaim citation to the Element test—evidence that Aim High failed to raise until its objection in the California action, which is currently before the California District Judge for decision. (CA Objection, ECF No. 45-14.)

The Magistrate Judge here denied Aim High's motion without prejudice as "premature" based on Aim High's pending objections on the waiver decision currently before the California District Court. The Magistrate Judge here cited *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966 (9th Cir. 2011), which held that courts should avoid duplicative litigation when "different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." (NV Order at p. 7, ECF No. 86 (quoting *R.R. Street*, 656 F.3d at 979).) Aim High objects.

### Law and Argument

### I. Legal Standard

A Magistrate Judge's discovery order cannot be overruled unless it is "clearly erroneous or is contrary to law." Fed. Civ. R. 72(a).

32469906.2

"The 'clearly erroneous' standard applies to the magistrate judge's factual determinations and discretionary orders and will be overturned 'only if the district court is left with the definite and firm conviction that a mistake has been made.'" *Slagowski v. Central Washington Asphalt, Inc.*, No. 2:11–cv–00142, 2014 WL 643038, at *2 (D. Nev. Feb. 18, 2014) (quoting *Ctr. for Biological Diversity v. Fed. Highway Admin.*, 290 F. Supp. 2d 1175, 1199-1200 (S.D. Cal. 2003)).

The clearly erroneous or contrary to law standard is "significantly deferential." *Perez v. City of Fresno*, 519 F. Supp. 3d 718, 722 (E.D. Cal. 2021). The burden to overcome a Magistrate Judge's non-dispositive ruling is an "astronomically high burden." *Blankenship v. Fox News Network, LLC*, No. 2:19-cv-00236, 2021 WL 3706683, at *5 (S.D.W.V. Aug. 20, 2021) (quoting *Certain Underwriters at Loyds London Subscribing to Policy No. BO 823PP13084600 v. Andvanfort Co.*, No. 1:18-cv-1421, 2019 WL 7816852, at *2 n.4 (E.D. Va. Nov. 13, 2019)).

Because the Magistrate Judge's Order addressed work-product waiver, it is a discretionary ruling and the "clearly erroneous" standard applies. *See Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 699 (D. Nev. 1994). Similarly, a decision to stay or defer a final ruling on an issue until a different federal court rules on the same or overlapping issue is a discretionary. *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997) ("[W]hen cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy."); *see also Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015).  Thus, Aim High must show clear error in the Magistrate Judge's decision to wait until to the California court rules on the waiver issue that Aim High first brought to that court.

6

**II.      The Magistrate Judge's Decision was not contrary to law.**

Aim High argues that the Nevada Magistrate's "reliance on the R.R. Street case . . . is erroneous as the R.R. Street case concerned two different complaints, whereas here, the California court proceeding stems from the single Complaint filed in this Court." (NV Objection at p. 19, ECF No. 91.) This would appear to be a fact in favor of the Court's finding that the two proceedings cover significantly overlapping issues. Aim High does not clarify why it believes the opposite.

Aim High then argues that the issues do not overlap "[b]ecause the California court order ruled on *a subpoenas duces tecum* served upon third parties, and this Order ruled on a motion to compel discovery to a party to the action." (*Id.*) This is a distinction without a difference. The central issue at question in both proceedings is an alleged waiver of work product privilege. The analysis is the same whether Aim High is seeking those undisclosed work-product records from the labs or the client.

The Court correctly applied the controlling Ninth Circuit law in *R.R. Street* and used its discretion to deny Aim High's motion to compel—without prejudice—pending the outcome of Aim High's pending motion in California. (NV Order at p. 7, ECF No. 86.) Aim High's Objection could be overruled on this basis alone. Aim High has neither demonstrated that the Magistrate Judge's ruling was contrary to law nor refuted the basis for the Court's determination that Aim High's Motion to Compel was premature. However, because Aim High has put forward various theories to dispute the Court's ruling on the basis of alleged factual errors, Spectrum will now wade into those arguments.

32469906.2

**III.     Aim High's objections over documents relating to S&N Labs' testing were decided with finality by the Magistrate Judge in the California Action, and Aim High expressly did not object to that portion of the California Magistrate Judge's Order.**

Aim High argues that it was clearly erroneous for the Magistrate Judge to deny as premature Aim High's motion to compel documents relating to Element testing **and** S&N's testing. (NV Objection at p. 1–2, ECF No. 91.) Spectrum addresses the S&N testing in this section, and it addresses the Element testing thereafter.

Aim High's objection as to S&N contradicts Aim High's express and binding position before the California District Court. The California Magistrate Judge ruled that records relating to S&N's and Element's testing were work-product and not waived by Spectrum. (CA Order at p. 9, ECF No. 45-13) Aim High only objected as to *Element*, not as to S&N. (CA Objection at p. 2, ECF No. 45-14.) Aim High conceded to the California District Judge that no waiver occurred with respect to the S&N Labs' testing records,[2] expressly did not object to that portion of the Magistrate's ruling, and only objected to the waiver ruling with respect to Element Labs. (*Id.*) Thus, that Magistrate Judge ruling is final and cannot be appealed. *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985) ("[P]recluding appellate review of any issue not contained in objections, prevents a litigant from 'sandbagging' the district judge by failing to object and then appealing."); *United States v. Midgette,* 478 F.3d 616, 621 (4th Cir. 2007) ("[A] party . . . waives a right to appellate review of particular issues by failing to file timely objections specifically directed to those issues.").

---

[2] In its objections to the California Magistrate Judge's Order, Aim High changed its waiver theory, no longer contended that the pre-litigation disclosures were waivers, and only went after the Element Lab documents. (NV Order at p. 9, ECF No. 45-13) ("Spectrum Labs did ***not*** waive its privilege over the Element report during pre-litigation discussions; rather, it clearly waived the privilege when it ... cited the Element report ... in Spectrum Labs' Counterclaim ... [and] initial disclosures.").

32469906.2

Indeed, Aim High's arguments to this Court that lump together the "Element Labs" and "S&N Labs" records is incorrect according to Aim High's own waiver theory because Spectrum has not cited or disclosed the S&N Labs' report in this litigation, and only cited the Element Labs' report in its counterclaim, initial disclosures, and amended infringement contentions. Spectrum explains below and in its opposition to the motion to compel why those citations are not a waiver as to the Element Labs report.

Because Aim High did not object to the California Magistrate Judge's ruling that undisclosed records relating to S&N Labs' testing are work-product and not waived, the waiver issue as to S&N is decided with finality. It, therefore, was not clearly erroneous for the Magistrate Judge here to deny Aim High's improper attempt to have this Court overrule the California decision and find a waiver, especially when Aim High conceded there was no waiver as to S&N Labs by not objecting, and that issue is now waived.

**IV.     Aim High's objections over documents relating to testing of third-party products was decided with finality by the California Magistrate Judge, and Aim High expressly did <u>not</u> object to that portion of the Order.**

Aim High argues that it was clearly erroneous for the Magistrate Judge to deny as premature Aim High's motion to compel documents relating to lab testing of third-party products that are not at issue in this ligation. Aim High raised this issue with the California court when it sought S&N and Element's testing of third-party products, *i.e.*, products other than the *XStream* product at issue in this case. (Subpoena to Element at p. 9, ECF No. 51-9; Subpoena to S&N at p. 9, ECF No. 51-10.) The California Magistrate Judge ruled that testing of third-party products was irrelevant. (CA Order at p. 3–4, ECF 45-13.) Aim High expressly did not object to that ruling. (*See* CA Obj at p. 2 n.1 ("Aim High's objection ... does not extend to Aim High's subpoena ... relating to testing of third-party urine products."), ECF (CA) 24.) Thus, that issue was decided with finality

and is not appealable. *Thomas*, 474 U.S. at 147-48. Consequently, it was not clearly erroneous for the Magistrate Judge to deny Aim High's attempt to obtain results of testing of third-party products, as sought in Interrogatories 5–6.

V. **Aim High's claim that Spectrum's counsel "littered" the record with "misrepresentations" is spurious and ironically supports the Magistrate Judge's order to wait for the California Court to decide Aim High's objections.**

   A. **Aim High's allegations about what happened in California support waiting for the California Court to rule on Aim High's objections.**

Aim High repeats a heavy allegation that Spectrum's attorney *lied* to the California Magistrate Judge when he stated that Spectrum was not "at this time" relying on the Element Lab tests "offensively." (NV Objection at p. 9–10, ECF No. 91.) While this is patently false, the argument ironically supports the Magistrate Judge's decision here to wait until the California District Judge decides Aim High's objections. The reason: Aim High says this was false because Spectrum cited the Element Lab test in its counterclaim. Yet Aim High's objections to the California District Judge argue the counterclaim citation as constituting a waiver. So the California District Judge will decide whether the counterclaim citation justifies overruling the Magistrate Judge's "no waiver" ruling, and whether Spectrum's hearing statements were correct.

Again, the Magistrate Judge here in Nevada was correct to wait to see how the California District Judge interprets (a) Spectrum's arguments made to him and the Magistrate Judge, and (b) Aim High's argument that the counterclaim citation to the Element Lab test is a waiver. Thus, Aim High's bogus allegations of misrepresentations in California support the Magistrate Judge's decision to wait for the California District Judge's ruling, rather than showing clear error.

   B. **Spectrum made no false statements at the October 12, 2022 hearing.**

Although this Court need not decide the merits of Aim High's "liar" accusations, this is an attack on the credibility of Spectrum's attorney, and thus Spectrum is compelled to respond.

10

Because Aim High plucked counsel's hearing statement out of context, Spectrum provides the full statement made by Spectrum's counsel at hearing below:

> And I think it's important to note, the whole idea about we need this to test the veracity of those test results is we're not relying on those test results at this time offensively. We were relying on them during settlement talks; and in some respects, defensively, because we were being threatened with a lawsuit and being accused of making objectively baseless patent allegations. We were trying to avoid a lawsuit and we ultimately did get sued. **But at this stage in that litigation, we've not designated either of these two labs as expert witnesses.**

(Tr. of 10/12/22 Hr'g at p. 9:22–10:6, ECF No. 45-18 (emphasis added).)

The transcript shows that Spectrum's counsel viewed the expert witness disclsoure deadline as the milestone when a party decides what expert evidence it will use to prove infringement *offensively* at summary judgment and trial. Spectrum was explaining that it had not yet designed a testifying expert witnesses, nor produced expert reports, and therefore had not yet chosen "at this stage of that litigation" what chemical testing, if any, it would use offensively to prove infringement.

This matches Spectrum's truthful briefing to the California Court, where it explained that citing the Element testing in its initial disclosures was not use of that test to prove infringement. Rather, Spectrum explained, it "merely means that Spectrum 'may' rely upon that test to prove infringement," and is "merely reserving its right to select Element as its testifying expert later by the March 2023 [expert disclosure] deadline." (Spectrum's CA Opp. at pp. 12-13, ECF No. 45-11.) Spectrum then cited case law that established that (a) an expert is "non-testifying" until he or she is designated <u>and</u> produces a report, and (b) a *non-testifying* experts undisclosed work product remains protected, regardless if there was a partial disclosure of work product by that expert. (*Id.*)

Although Spectrum had filed its counterclaim citing the Element test months before that hearing, Aim High had not even raised the counterclaim citation, let alone argued it to the

11

Magistrate Judge. So it is wrong for Aim High to argue Spectrum was misconstruing evidence that Aim High had not raised (although it was available to it) and that was not even at issue at hearing. In the end, the parties simply dispute what is an "offensive" use of work product that would constitute waiver, and the California Magistrate Judge agreed with Spectrum that the evidence cited by Aim High was not offensive and did not show waiver. And the California District Judge will decide whether Aim High's belatedly raised counterclaim argument shows clear error. There was no dishonesty by Spectrum.

## VI. Aim High's "sword and shield" argument misses the mark.

Aim High argues that Spectrum is using the S&N Labs and Element Labs test reports "offensively," and that the Magistrate Judge committed clear error by postpoining that question until the California Court rules. There are several problems with this argument.

First, Aim High already raised this "offensive use" argument with the California Court by arguing Spectrum's counterclaim's and initial disclosures' citations to the Element Labs' test constituted waiver.[3] (CA Objection at p. 11, ECF No. 45-14). Thus, the Magistrate Judge was correct to wait until after the California District Judge decides the waiver issue in light of that same evidence now before the California District Court. Far from clear error, this was the correct decision to avoid potentially conflicting with the California Court's forthcoming waiver ruling in accordance with *R.R. Street*. (NV Order at p. 7, ECF No. 86 (citing *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 970 (9th Cir. 2011).)

---

[3] Although Aim High did not cite the counterclaim evidence to the California Magistrate Judge, it did cite it in its objections to the California District Judge. Moreover, Spectrum's counterclaim was filed months before Aim High filed its motion to compel before the California Magistrate Judge. So it was evidence that Aim High could have cited to the California Magistrate Judge. But Aim High apparently did not think much of it until after the Magistrate denied its motion based primarily on the pre-litigation disclosures.

32469906.2

Second, Aim Contends that the Magistrate Judge here confirmed that references to Element Lab Report in this action were offensive use in his June 30, 2023 Order on Motion to Strike. (NV Objection at p. 6, ECF No. 91.) In support, Aim High quotes the Court's ruling that "Spectrum has complied with Local Patent Rule 1-7(b) because it has already produced the S&N and Element reports on which it relies ... And Spectrum has provided the information it has and on which it relies for its assertions in the form of the Element and S&N reports ... This is sufficient to provide enough information for Aim High to understand Spectrum's theory of infringement." (NV Objection at p. 6, ECF No. 91 (quoting NV Order on Motion to Strike at p. 6, ECF No. 83).) Aim High argues that "[t]he Magistrate Judge thus resolved any doubt about whether or not Spectrum relied on the Element and S&N reports to support the biocide allegations in its Infringement Contentions." (NV Objection at p. 6, ECF No. 91)

Aim High then correctly points out that the Magistrate Judge ordered Spectrum to amend its contentions in order to provide similar support for its third contention, that "XStream has at least one dissociated ionic compound in the form of chloride and a specific gravity between 1.005 g/cm$^3$ and 1.025 g/cm$^3$." (Order on Motion to Strike at p. 7, ECF No. 83.) This resulted in Spectrum's Second Amended Disclosure of Asserted Claims and Infringment Contentions. Although Spectrum referenced the Element Lab Report showing the presence of this ionic compound, Spectrum's contentions explained that it provided the information to "comply with the Court's June 30, 2023 Order to allow Aim High to understand Spectrum's theory of infringement, and not to actually prove infringement." (Spectrum's 2d Am. Infringement Contentions, ECF No. 91-3.) Spectrum's contentions explained that it was not waiving work-product for undisclosed materials, stated that it "has not yet decided what evidence it will rely upon to prove infringement

13

and the summary judgment and trial stages," and will make that decision by the Court's expert designation deadline. (*Id.*)

Thus, the problem with Aim High's argument is that this is not the "offensive use" it needs it to justify a wholesale subject matter waiver of work product privilege. As the Magistrate Judge rightly set forth in its Order on the Motion to Strike, Local Patent Rules 1-6 and 1-7 "'do not, as is sometimes misunderstood, 'require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case.' ' " (NV Order on Motion to Strike at p. 5, ECF No. 83 (quoting *Creagri, Inc. v. Pinnaclife Inc.*, LLC, No. 11-cv-6635-LHK-PSG, 2012 WL 5389775, at *2 (N.D. Cal. Nov. 2, 2012).) The Court held that "Spectrum's infringement contentions provide sufficient notice of Spectrum's infringement theories." (*Id.* at 6.)

Spectrum has already produced the S&N and Element results that is utilized to put Aim High on notice of its theories of infringement, but at this time the "sword" is still in its sheath. It will be until Spectrum discloses its testifying expert witnesses on December 15, 2023, the date required by this Court. (Extension of Discover Deadlines at p. 5, ECF No. 85.) The Magistrate Judge was correct in his Order on the Motion to Strike when he identified that Aim High had read the local patent rules too broadly. As the Court wrote then: "Spectrum is not required, at least at this stage, to produce specific evidence or prove its infringement case." (NV Order on Motion to Strike at p. 6, ECF No. 83.) The stage where proof is required will come at the designation of testifying expert witnesses. That is when the sword is unsheathed, and that is when Spectrum will make broad disclosures of the evidence and methods behind its expert witness analyses and reports. As this Court has noted, Spectrum has already made sufficient disclosure to put Aim High on notice of its theory of infringement. This is true as to both the Court's Order on the Motion to

14

Strike and the Second Amended Disclosure of Asserted Claims and Infringement Contentions that resulted from it.

The Court did not misunderstand its own ruling when it issued the more recent ruling on Aim High's Motion to Compel. In fact, it was aware that the same central logic applied: Spectrum has made sufficient disclosures to put Aim High on notice of the theories behind its contentions of infringement, and further disclosures are neither necessary, fair, nor allowed by work-product protection at this time. Aim High must simply be patient.

Third, Aim High's fairness argument is false and fails to show clear error. Aim High will get all of the expert discovery that it's entitled to after Spectrum designates its chemical testing expert <u>and</u> discloses a report. Until then, there is no "offensive" use of testing because Spectrum is not proving infringement with it. It is not until the expert disclosure deadline that a party chooses what technical expert, if any, it will use to prove infringement at summary judgment and trial. Indeed, this is why there is no waiver of undisclosed work product by an expert until after he/she is designated and discloses a report. Rule 26(b)(4)(D); *Walnut Creek Manor, LLC v. Mayhew Ctr.*, LLC, No. CV 08-6877-AHM(CTx), 2008 WL 11338242, at *2 (C.D. Cal. Nov. 14, 2008) (quoting *Hollinger Int'l Inc. v. Hollinger Inc.*, 230 F.R.D. 508, 519 (N.D. Ill. 2005)); *see also* Fed. R. Civ. P. 26(b)(4)(B) advisory committee's note to 1970 amendment.

In all likelihood, Spectrum will designate its expert—which almost certainly will not be S&N Labs and likely will not be Element—and produce his report before the California Court issues its ruling on Aim High's objections. Thus, all these issues will be moot, at that point, because Aim High then will obtain of the undisclosed work product for the designated *testifying* expert that Rule 26 allows. The upshot is what Spectrum has said all along: it has not yet decided what testing

15

it will use "offensively" to prove infringement at summary judgment and trial. Thus, Aim High's motion is premature for that additional reason.

**VII.     It was not clear error for the Magistrate Judge to find the issues similar enough between the two courts to justify waiting for the California judge to rule.**

The issues before this Court and the California Court are the same, or at least similar enough, that there could be conflict and duplication of work.

The California Court decided or is deciding whether Spectrum waived work-product protection with respect to Element and S&N Lab testing. That's the exact same issue that it raised in its motion to compel, which asserted waiver of work-product with respect to those labs' testing. Whether Aim High seeks a waiver ruling by pursuing the non-testifying experts by subpoena or by Rule 34 request to the party for whom the non-testifying experts are performing work-product is immaterial. The issue is the same: was there a waiver of work-product. In the same way, privilege applies the same whether a party seeks a privileged communication from the attorney or from the client.

Aim High selected the California forum to first raise the work-product waiver issue as to Element and S&N Labs. Having lost there, its attempt to re-litigate that same issue here smacks of forum shopping, and further supports the Magistrate Judge's decision to wait for the first forum to rule with finality on these same issues.

**VIII.    Aim High's "piecemeal litigation" concern is unfounded.**

Aim High argues that the California Court has "made no indication that it will rule on Aim High's Objection in the near future" and claims a risk of piecemeal litigation. (NV Objection at p. 20, ECF No. 91.) There are several problems with this argument.

First, any perceived inefficiencies are due to Aim High's own litigation choices to proceed with this issue in California first, and thus do not form a basis to assert clear error by the Magistrate Judge, who played no role in Aim High's strategic decisions.

Second, this delay concern is unjustified because, again, the entire issue is likely to be mooted by December 15, 2023, when Spectrum must choose what chemical expert witness, if any, it will use "offensively" to prove infringement in this case. (Order at p. 5, ECF No. 85.) At that point, if—as Spectrum anticipates—it designates an expert other than S&N and Element, then even Aim High would have to concede it has no right to their undisclosed work product. In the unlikely event that Spectrum chooses to rely on either labs' testing to prove infringement, then Aim High will get all of the undisclosed work-product for that particular lab that Rule 26 entitles it to. And it will have the full expert discovery period to review those materials and take expert depositions, as will Spectrum. There will be no delay. Again, Aim High is trying to fast-forward this Court's case schedule, to which Aim High stipulated, and force Spectrum to choose its testifying expert ahead of schedule and before Aim High does so.

The Magistrate Judge was correct; he was not clearly erroneous.

## Conclusion

The Court should reject and overruled Aim High's objections.

Dated: September 1, 2023

Respectfully submitted,

/s/ Matthew J. Cavanagh
David B. Cupar (admitted *pro hac vice*)
Matthew J. Cavanagh (admitted *pro hac vice*)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216-348-5400 │ f 216-348-5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com
*Attorneys for Spectrum Laboratories, LLC*

17

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2023, the foregoing was filed electronically on the Court's ECF system and automatically will be served upon counsel for all parties via the ECF system.

 s/ Matthew J. Cavanagh<br>
Counsel for Spectrum

32469906.2