UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| AIM HIGH INVESTMENT GROUP, LLC,<br><br>              Plaintiff,<br>     vs.<br><br>SPECTRUM LABORATORIES, LLC,<br><br>              Defendant.<br>_____<br>SPECTRUM LABORATORIES, LLC,<br><br>              Counter-Claimant,<br>     vs.<br>AIM HIGH INVESTMENT GROUP, LLC,<br><br>              Counter-Defendant. | Case No.: 2:22-cv-00158-GMN-DJA<br><br>**ORDER DENYING**<br>**AIM HIGH'S OBJECTION** |

Pending before the Court is Plaintiff and Counter-Defendant Aim High Investment Group's ("Aim High's") Objection/Appeal, (ECF No. 93), to the Magistrate Judge's Order, (ECF No. 90), denying Aim High's Motion to Supplement its noninfringement and invalidity contentions, (ECF No. 58). Defendant and Counter-Claimant Spectrum Laboratories ("Spectrum") filed a Response, (ECF No. 94), to the Objection.

Also pending before the Court is Spectrum's Unopposed Motion for Extension of Time to respond to Aim High's Objection. (ECF No. 95).[1]

---

[1] Aim High did not file a response to Spectrum's Motion, and the deadline to do so has passed. "The failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion." LR 7-2(d). Accordingly, the Court **GRANTS** the Motion as unopposed *nunc pro tunc*.

1  The Court **DENIES** Aim High's Objection because Aim High fails to establish that the
2  Magistrate Judge's Order was clearly erroneous or contrary to law.

3  **I.     BACKGROUND**

4  This action arises from a patent infringement dispute based on Spectrum's patented
5  synthetic urine formulas. (*See generally* Compl., ECF No. 1).  The patents involve a formula
6  containing biocides added to minimize bacteria growth in the mixture, thus preserving the shelf
7  life of the synthetic urine. (*Id.* ¶ 2).  Before litigation began, Spectrum sent a letter to Aim High
8  alleging that the XStream product infringed two of its Patents. (*Id.* ¶ 11).  In response, Aim
9  High denied the allegation and requested lab tests demonstrating infringement.
10 (Correspondence, Exs. A–C to Resp. to Mot. Compel, ECF Nos. 51-1, 51-2, 51-3).  Spectrum
11 provided a redacted report from S&N Laboratories, stating that the report was disclosed
12 "without any waiver of privilege or work-product." (Confidential Letter, Ex. D to Resp. Mot.
13 Compel, ECF No. 51-4).  Aim High challenged the authenticity of the report, so Spectrum sent
14 Aim High a report from a second lab, Element Laboratories. (Letter and Element Report, Ex. 2
15 to Mot Compel, ECF No. 45-3).  Aim High reviewed the correspondence and lab reports, and
16 then brought a claim for declaratory judgment that its XStream product does not infringe on
17 Spectrum's patents. (Compl. ¶ 1).  Spectrum counter-claimed for injunctive relief and damages,
18 alleging that Aim High's XStream product infringed on its Patents. (Counterclaim, ECF No. 7).
19 On May 13, 2022, Aim High served written discovery requests on Spectrum, and issued
20 subpoenas to the California labs. (Mot. Leave 3:24–28, ECF No. 58); (Subpoenas, Exs. 9–10 to
21 Resp. to Mot. Compel, ECF Nos. 51-9, 51-10).  Spectrum and the labs objected on work-
22 product grounds, so Aim High moved to compel. (Opp. to CA Mot. Compel, Ex. 10 to Mot.
23 Compel, ECF No. 45-11); (CA Mot. Compel, Ex. 9 to Mot. Compel, ECF No. 45-10).  On
24 October 20, 2022, the California Magistrate Judge denied Aim High's Motion to Compel the
25

labs to produce their testing reports. (*See generally* Order, Ex. 12 to Mot. Compel, ECF No. 45-13). Aim High filed an objection. (CA Obj. at 2, Ex. 13 to Mot. Compel, ECF No 45-14).

### A. Claim Construction Briefing

During the same time period, the parties began claim construction briefing. Spectrum filed its opening brief on August 24, 2022, Aim High filed its brief a couple weeks later, and Spectrum filed its Reply on September 21. (Spectrum Opening Brief, ECF No. 32); (Aim High Brief, ECF No. 33); (Spectrum Reply Brief, ECF No. 43). Following the conclusion of claim construction briefing and after the California Magistrate Judge's denial of Aim High's Motion to Compel the lab reports, Aim High hired new patent counsel who commissioned a prior art search on November 9, 2022. (Smith Decl. ¶¶ 3–4, Ex. 1 to Mot. Leave, ECF No. 58-2). Aim High received the search results on November 23, 2022. (*Id.* ¶ 5). After reviewing the prior art found in the search, Aim High emailed Spectrum a month later to inform Spectrum of its intent to move for leave to supplement its invalidity contentions. (Intent Email, Ex. 8 to Mot. Leave, ECF No. 58-9). Aim High created claim charts explaining its new invalidity contentions based on the prior art and emailed the charts to Spectrum on January 24, 2023. (Chart Email, Ex. 11 to Mot. Compel, ECF No. 58-12). When Spectrum did not stipulate, Aim High filed its Motion for Leave to Amend on February 17, 2023.

Aim High's Motion for Leave seeks to supplement its non-infringement and invalidity contentions to include additional invalidity claims based on the prior art that its new counsel discovered. (Mot. Leave 7:7–8:17); (Obj. to MJ Order 5:26–6:9, ECF No. 93). Aim High also sought to add additional details to defenses based on Spectrum's claim construction briefs. (Obj. to MJ Order 6:5–9). At the time Aim High filed its Motion for Leave, the Court had not yet scheduled a claim construction hearing and discovery was set to close in three months.

///

///

### B.      Underlying Magistrate Judge Order

Magistrate Judge Albregts denied Aim High's Motion for Leave on the grounds that Aim High did not demonstrate good cause and that amendment would cause Spectrum to be unduly prejudiced. (MJ Order, ECF No. 90).  A party who wishes to amend its disclosures under LPR 1-12, such as Aim High, must: (1) first obtain the Court's leave; (2) show good cause for the requested amendment; (3) demonstrate it acted diligently; and (4) show the other party would not be "unfairly prejudiced by 'eleventh hour alterations.'" *See* LPR 1-12; *see Silver State Intellectual Techs., Inc. v. Garmin Int'l, Inc.*, 32 F. Supp. 3d 1155, 1162 (D. Nev. 2014).

Beginning with the good cause analysis, the Magistrate Judge acknowledged that it was a close call, but focused on the timeline and substance of the amendment to reach his conclusion that Aim High was not diligent and lacked good cause to amend. (MJ Order 4:20–22).  Though Aim High asserted that Spectrum's refusal to allow discovery of the lab reports contributed to its decision to conduct a second prior art search, Spectrum's objection was filed in June of 2022, and the second prior art search was not until November. (*Id.* 4:24–5:2).  He found that while the delay could be explained by the California Magistrate Judge's denial of Aim High's Motion to Compel on October 20, 2022, Aim High did not sufficiently make that argument. (*Id.* 5:3–10).  The Magistrate Judge further stated that Aim High had not explained why the denial of lab report discovery necessitated another prior art search. (*Id.* 5:10–13).

Magistrate Judge Albregts came to a similar conclusion on Aim High's argument that Spectrum's claim construction position on the term "biocide" further necessitated a second prior art search. (*Id.* 5:14–26).  Spectrum filed its opening claim construction brief on August 24, 2022, two and a half months before the commission of Aim High's prior art search, and four and a half months before Aim High informed Spectrum of its intent to amend. (*Id.*).  The Magistrate Judge cited two cases in which courts had found that parties were not diligent when

they waited three months after learning new information that prompted a second search before disclosing amended contentions. (*Id.* 5:21–26).

Lastly, the Magistrate Judge found that Spectrum would be prejudiced by Aim High's amendment because allowing Aim High's "extensive changes before the claim construction hearing, which Spectrum asserts would in turn prompt it to amend its claim construction position, would create exactly the kind of 'shifting sands' that the Local Patent Rules are designed to avoid." (*Id.* 6:14–18). He noted that Spectrum had already filed a substantive brief that would be impacted by the amendment, and that depending on the Court's ultimate claim construction order, Aim High could later seek to amend its contentions. (*Id.* 7:3–12). Aim High now appeals this Order. (Obj., ECF No. 93).

## II.     LEGAL STANDARD

When reviewing the order of a magistrate judge, the order should be set aside only if the order is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); LR IB 3-1(a); 28 U.S.C. § 636(b)(1)(A); *Laxalt v. McClatchy*, 602 F. Supp. 214, 216 (D. Nev. 1985). A magistrate judge's order is "clearly erroneous" if the court has "a definite and firm conviction that a mistake has been committed." *See United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *UnitedHealth Grp., Inc. v. United Healthcare, Inc.*, No. 2:14-cv-00224-RCJ, 2014 WL 4635882, at *1 (D. Nev. Sept. 16, 2014) (citation omitted). When reviewing the order, however, the magistrate judge "is afforded broad discretion, which will be overruled only if abused." *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007) (citation omitted). The district judge "may not simply substitute its judgment" for that of the magistrate judge. *Grimes v. City and Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).

### III. DISCUSSION

The Court begins its analysis with Aim High's argument that the Magistrate Judge's finding that Aim High was not diligent and lacked good cause to amend was clearly erroneous. "The District of Nevada's Local Patent Rules, like the local patent rules for the Northern District of California, are designed to require the parties to provide 'early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery.'" *Silver State*, 32 F. Supp. 3d 1155, 1161–62 (D. Nev. 2014) (quoting *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365–66 (Fed. Cir. 2006)). In contrast to the liberal policy for amending pleadings under Rule 15, "the philosophy behind amending claim charts [under the Local Patent Rules] is decidedly conservative and designed to prevent the 'shifting sands' approach to claim construction." *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002) (quotation omitted) (discussing local rules for the Northern District of California).[2]

Parties may amend their disclosures without seeking leave of court within 30 days of a court's claim construction order, which has not yet been issued in this case. *See* LPR 1-18a. Otherwise, "no other amendments to disclosures may be made . . . absent a showing of good cause." LPR 1-12. "Non-exhaustive examples of circumstances that may, absent undue prejudice to the nonmoving party, support a finding of good cause include: (a) material changes to the other party's contentions; (b) recent discovery of material prior art despite earlier diligent search; and (c) recent discovery of nonpublic information about the Accused Instrumentality despite earlier diligent search." *Id.* "The duty to supplement discovery responses does not excuse the need to obtain leave of court to amend contentions." *Id.*

---

[2] The Federal Circuit governs interpretation and applicability of local patent rules. *O2 Micro Int'l Ltd.*, 467 F.3d at 1364.

       The moving party has the burden to demonstrate good cause and must first establish that it was diligent. *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 236 F. Supp. 3d 1110, 1113 (N.D. Cal. 2017); *O2 Micro*, 467 F.3d at 1355.[3]  Diligence must be shown in two ways: "(1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered." *Id.*  "In considering the party's diligence, the critical question is whether the party could have discovered the new information earlier had it acted with the requisite diligence." *Id.*

       The crux of Aim High's Motion for Leave to Amend is that the Magistrate Judge erred by ignoring LPR 1-12(a), which lists "material changes to the other party's contentions" as an example of good cause. (Mot. Leave 18:11–19:1).  Aim High contends that it discovered its basis for amendment (1) when Spectrum adopted a new position regarding how much biocide is required for infringement, and (2) when Spectrum and the labs refused to produce the tests. (*Id.* 18:16–25).  The Magistrate Judge found that Aim High did not adequately explain why these two events constitute a sufficient basis for amendment. (Order 5:18–19).  And even if Aim High was diligent in discovering the basis for amendment, the Magistrate Judge found that the three-month gap between discovery and amendment did not demonstrate diligence in seeking amendment. (*Id.* 5:20–26).

       The first event that Aim High points to as justification to amend is the California Magistrate Judge's ruling in October 2022, which denied Aim High's Motion to Compel Spectrum and the labs to produce the test results. (Mot. Leave 9:24–10:3).  According to Aim High, it sought to discover the lab report because it intended to demonstrate that the testing was

---

[3] The Local Patent Rules for the District of Nevada are similar to the local patent rules adopted by the Northern District of California and the Eastern District of Texas.  Accordingly, the Court considers opinions by courts of these districts concerning its local patent rules as persuasive. *See Silver State, Inc.*, 32 F. Supp. 3d at 1162–63 (D. Nev. 2014) (recognizing similarity between District of Nevada and Northern District of California local patent rules); *Finisar Corp. v. DirecTV Group, Inc.*, 424 F. Supp. 2d 896, 897 n.1 (E.D. Tex. 2006) ("The local patent rules for the Eastern District of Texas were modeled after the local patent rules adopted by the Northern District of California.").

"flawed." (*Id.* 10:3–12).   However, Aim High argues, its efforts were blocked when Spectrum objected on privilege grounds after it initially stated it would be relying on the reports as "proof." (*Id.*).  Spectrum replied to this contention in its Response to Aim High's first objection, (ECF No. 91).  Spectrum stated that the reports were privileged work product and that it had not yet chosen, at that stage of litigation, which expert reports and lab tests that it would be relying on to prove infringement. (Resp. to First Obj. at 10–11, ECF No. 94). Spectrum further claims that there is no correlation between its claimed work-product privilege and a new prior art search; and even if there was, Aim High should have performed that search in June 2022 when Spectrum made the objection. (Resp. 9:19–24, ECF No. 98).

        The Magistrate Judge did not clearly err in finding that Aim High lacked diligence. Spectrum objected on privilege grounds in June of 2022, so Aim High could have discovered this "new information" earlier if it had acted with the requisite diligence.  Even if Spectrum's privilege objection was a material change in position, and the Court is not convinced that it is, the Court agrees with the Magistrate Judge that Aim High does not explain why its lack of access to these particular lab reports would prompt a second prior art search.  If Aim High's strategy was to demonstrate that these lab tests were flawed, Aim High could conduct its own lab testing.  But to the extent that Aim High simply wanted to conduct an additional prior art search because it felt it had to adjust its litigation strategy after the California Magistrate Judge agreed with Spectrum in October, the Court does not find this reasoning to constitute good cause.

        Moving to Aim High's second justification, the Court finds that Aim High could have discovered Spectrum's interpretation of the term "biocide" before the Reply brief was filed. Aim High contends that it did not know Spectrum construed the term "biocide" to "not require any minimum concentration sufficient to control microorganisms or minimize sepsis and that any amount of biocide, no matter how miniscule or inconsequential, was sufficient," until

1  Spectrum's September 2022 Claim Construction Reply Brief. (Obj. 10:19–24).  Aim High
2  argues that this construction was a material change to Spectrum's position, and that the
3  Magistrate Judge clearly erred in citing Spectrum's Opening Claim Construction Brief instead
4  of its Reply. (*Id.* 10:24–28).

5  Spectrum, however, points to multiple instances in which Aim High demonstrated that it
6  knew Spectrum's position as early as the moment it filed its Complaint.  Aim High's Complaint
7  states, "the biocide that Defendant allegedly found present in the Accused Product was . . . in
8  an amount less than one part per billion (1 ppb)." (Compl. ¶ 13).  It further claims that
9  Spectrum allegedly found the "presence of MIT in a trace amount (less than 1ppb)," and stated
10 that Spectrum's "broad construction of its patent claims . . . include even *barely detectable*
11 *amounts of a biocide which are the chemical equivalent of no biocide being present at all*
12 where the purpose of the claimed biocide is to control the presence of bacteria and prevent
13 sepsis." (*Id.* ¶¶ 29, 33) (emphasis added).  Thus, Aim High's own Complaint demonstrates that
14 Spectrum has asserted from the beginning that "any amount of biocide, no matter how
15 miniscule or inconsequential, was sufficient."

16 Because Aim High did not demonstrate that Spectrum materially changed its position,
17 and Aim High could have discovered the new information earlier, the Magistrate Judge's
18 finding was not clearly erroneous.  Even though the Court agrees with Aim High that a three-
19 month delay in seeking to amend does not mean Aim High lacked diligence *per se*, Aim High
20 seemingly lacked diligence and good cause to perform the search in the first place.  Because
21 this Court finds that Aim High lacked good cause to amend its infringement contentions, there
22 is "no need to consider the question of prejudice." *O2 Micro*, 467 F.3d at 1368.

23 The Court does not have a definite and firm conviction that Magistrate Judge Albregts
24 committed a mistake by denying Aim High's Motion for Leave to Amend.  Magistrate Judge
25 Albregts is afforded broad discretion and Aim High's disagreement with his Order does not

mean that this Court can, or should, substitute its own judgment.  Accordingly, the Court DENIES Aim High's Objection.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that Aim High's Objection/Appeal, (ECF No. 93), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Extension of Time, (ECF No. 95), is **GRANTED** as unopposed *nunc pro tunc*.

**DATED** this   12   day of March, 2024.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT