NICHOLAS J. SANTORO (NBN. 532)
JASON D. SMITH (NBN 9691)
HOLLEY DRIGGS
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Telephone:   (702) 791-0308
Facsimile:   (702) 791-1912
E-mail: nsantoro@nevadafirm.com; jsmith@nevadafirm.com

DAVID B. CUPAR (Admitted *Pro Hac Vice*)
MATTHEW J. CAVANAGH (Admitted *Pro Hac Vice*)
MCDONALD HOPKINS LLC
600 Superior Avenue East, Suite 2100
Cleveland, OH 44114
Telephone:    (216)348-5730
Facsimile:    (216)348-5474
E-Mail: dcupar@mcdonaldhopkins.com, mcavanagh@mcdonaldhopkins.com

Attorneys for Defendant and Counterclaimant
SPECTRUM LABORATORIES, LLC

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| AIM HIGH INVESTMENT GROUP, LLC, | Case No.: 2:22-cv-00158-GMN-DJA |
| Plaintiff/Counter-Defendant, | |
| v. | **Spectrum's Response to Michael Salame's April 19, 2024 Letter to the Court (ECF #125)** |
| SPECTRUM LABORATORIES, LLC | |
| Defendant/Counterclaimant. | |

Defendant Spectrum Laboratories, LLC hereby responds to the April 19, 2024 filing by the owner of plaintiff Aim High Investment Group, LLC, Michael Salame (ECF No. 125) in response to the show cause Order by this Court (ECF No.124).

Aim High's filing does not provide just cause for why Aim High—a registered company with 10 employees and a manager, who is not Mr. Salame—has not retained counsel since its attorneys withdrew in December 2023 due to months of non-payment.

1

33517568.2

Nor has Aim High shown cause for why it has disobeyed this Court's repeated orders to engage counsel in this case—a case that Aim High chose to initiate and expensively litigate for two years. The Court and Spectrum have been more than patient with Aim High. Aim High now has no desire to litigate this case anymore or to pay for litigation—despite having the resources, money, and desire to continue running its business selling accused infringing products in competition with Spectrum. Thus, it is time to enter judgment against Aim High and begin the process of closing out this case.

Spectrum respectfully urges this Court to exercise its inherent authority, and its authority under Fed. Civ. R. 41(b), to dismiss Aim High's claims with prejudice, grant default judgment in Spectrum's favor on its patent infringement counterclaims, and set the case for a hearing on Spectrum's damages. Alternatively, if the Court denies that relief, Spectrum respectfully requests that the Court (a) order Aim High to reimburse Spectrum for the legal fees that it has incurred due to Aim High's violations of the Court's orders, including the costs of this brief; and (b) order that dismissal and default judgment sanctions will occur if Aim High does not engage counsel to prosecute the case by a date certain.

**Factual and Procedural Background**

Aim High has no one but itself to blame for losing its counsel and claiming to have no money to pay lawyers to continue its lawsuit. There was never any need for Aim High to sue Spectrum, let alone to run up expensive legal bills to three different law firms by over-litigating this case.

First, Aim High sued Spectrum without any need for doing so. When Spectrum's chemical testing showed Aim High's *X-Stream* product infringed Spectrum's patents, after many months of exchanging correspondence, Spectrum had merely requested additional information, further testing, and affidavits attesting to certain facts. (Letter from M. Cavanagh to R. Gile, 11/4/21, ECF No. 25-10.) Aim High overreacted by suing Spectrum without warning, despite the fact that Spectrum had no intent to sue Aim High. Moreover, the patent venue statute, 28 U.S.C. § 1400(b), would have required Spectrum to sue Aim

33517568.2

1  High in Nevada because Aim High resides and is incorporated here. So there was no need

2  for Aim High to sue first to grab home court advantage.

3      Aim High then hired ***three different law firms***: the Gile Law Group,

4  FisherBroyles,[1] and Dickinson Wright. The latter two are large firms, touting over 250 and

5  500 attorneys, respectively. Aim High issued meritless subpoenas seeking work-product

6  from two of Spectrum's <u>non-testifying experts</u>, filing a miscellaneous action in California

7  federal court on those subpoenas, moving to compel, and objecting after losing its motion

8  in California. (*See generally* Spectrum's Opp. to Mot. to Compel, ECF No.51.) Aim High

9  then filed a futile motion to compel in this Court, seeking the same work-product that the

10 California court ruled was privileged, which the Magistrate Judge correctly denied (ECF

11 No. 89). Rather than accept that correct ruling, Aim High filed a lengthy objection to that

12 ruling (ECF No. 91), which the District Court overruled (ECF No. 122).

13     When Aim High hired Dickinson Wright in November 2021, it cited that hiring to

14 Spectrum's counsel as evidence that it would be spending a lot of money to aggressively

15 litigate the case, hoping to scare Spectrum into dropping its patent infringement

16 counterclaims. Aim High's counsel stated:

17     [A]s evidenced by Dickinson Wright's engagement in this matter following

18     Spectrum's absurd [settlement] demand, Aim High is more motivated now

19     than ever to litigate this case, <u>at whatever cost</u>, in order to defeat Spectrum's

20     frivolous claims of patent infringement ...

21

22

23

24 [1] Rob Phillips of FisherBroyles entered an appearance on behalf of Aim High by signing and filing
   its answer to Spectrum's counterclaim (ECF No. 14), and he appears on ECF as counsel for Aim
25 High in this case. Mr. Phillips also was lead counsel for Aim High in the California miscellaneous
   action in Aim High's failed attempt to enforce its subpoenas against Spectrum's two non-testifying
26 experts. (*See, e.g.*,, ECF No. 51-14 (California filing identifying Mr. Phillips as lead counsel).)
   Although Mr. Phillips has not moved to withdraw from this case, he evidently is no longer counsel
27 for Aim High because he has not stepped forward on behalf of Aim High, nor has Aim High
   identified him as active counsel for the company.

28

(Email from R. Gile to D. Cupar, 11/21/22, att'd as Ex. A to Cupar Declaration (emphasis added).)

Aim High then attempted to belatedly amend its previously-served patent invalidity contentions, long after the deadline for doing so, and added dozens of pages to its invalidity contentions, added seven new invalidity theories, and 13 new prior art references. (*See* Spectrum's Opp. to Mot. to Suppl. Invalidity Contentions, ECF No. 71.) All of that expensive work was pointless because the Magistrate Judge correctly denied Aim High's motion to replace its invalidity theory with these new extensive contentions as tardy (ECF No. 90),and the Court overruled Aim High's objections to that ruling (ECF No. 123).

Thus, Aim High purposely incurred high legal bills from expensive law firms as part of an aggressive litigation strategy against Spectrum. When the strategy failed and Spectrum did not buckle, Aim High stopped paying its lawyers sometime around June 2023. (*See* J. Cleland Decl. ¶ 5, 12/14/23, ECF No. 112-1 ("Aim High has not paid Dickinson Wright PLLC for its services for at least six (6) months.").)

On December 8, 2023, Ryan Gile moved to withdraw as counsel for Aim High, and the Dickinson Wright attorneys followed six days later. (ECF Nos. 110, 112.) The Court granted those motions and ordered Aim High to provide a status report on its efforts to hire new counsel by January 19, 2024. (ECF No.114). When Aim High ignored that deadline, the Court set a show cause hearing for February 5, 2024. (ECF #116.) Aim High's owner Michael Salame appeared at that hearing on behalf of Aim High without counsel. (ECF No. 120.) The Court ordered Mr. Salame to obtain new counsel by March 21, 2024. (ECF No. 120.) The Court ordered Mr. Salame to "notify the court/opposing counsel as to the status of his efforts to retain an attorney" if he cannot meet that deadline. (ECF No. 120.)

Aim High ignored the March 21 deadline. It did not engage new counsel, and it did not identify any efforts to the Court or Spectrum of efforts to retain an attorney, as ordered by the Court.

33517568.2

On April 1, 2024, after Aim High violated two separate orders, the Court ordered Aim High to file a response by April 22 explaining why sanctions should not issue against Aim High. (ECF No. 124.)

On April 19, 2024, Mr. Salame filed a letter. (ECF No. 125.) His letter did not identify a single effort to retain an attorney by Aim High. Instead, he claimed he lacks "financial resources," cited the passing of his sister, and cited an April 3 phone call with Spectrum as reasons for why he has not yet engaged counsel. Spectrum explains *infra* why Mr. Salame's letter does not show cause why judgment sanctions should not issue.

**<u>Law and Argument</u>**

**I.    The Court has broad discretion to issue**

**judgment sanctions in situations like the present.**

This Court has broad discretion and authority under Fed. Civ. R. 41(b) and its inherent powers to enter default or dismissal against a party that has repeatedly disobeyed court orders and failed to diligently prosecute its case, and it may do so *sua sponte*. *Piccolotto v. One of Kind Investment USA Holdings, LLC*, No. 2:21-cv-01645-RFB-EJY, 2023 WL 6216950, at *2 (D. Nev. Sept. 25, 2023); *Link v. Wabash R. Co.*, 370 U.S. 626, 629 (1962) ("The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted."); *Zanon v. Beauty by Design*, No. 2:20-cv-02080-JCM-EJY, 2022 WL 18863845, at *1 (D. Nev. July 6, 2022) ("The Court's inherent authority extends to dismissing actions or entering default judgments for failure to prosecute, contempt of court, or abusive litigation practices.").

"To determine whether to dismiss an action for failure to prosecute and failure to obey a Court order, the Court must consider several factors, including: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the publicly policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Piccolotto*, 2023 WL 6216950, at *2.

**II.     Aim High's willful disobedience and failure to even attempt
to engage counsel warrant judgment sanctions in Spectrum's favor.**

Here, consideration of the relevant factors weighs heavily in favor of dismissal and default judgment in Spectrum's favor. First, "the public's interest in expeditious resolution always favors dismissal." *Id.* Aim High has not done any active litigation work on its case since October 2023, almost six full months.[2] Courts have found four months of no prosecution long enough to justify dismissal. *See id.* (citing *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999)).

Second, the Court's need to manage its docket and move the case along favors judgment against Aim High. Aim High has not engaged counsel, despite his attorneys withdrawing almost five months ago, and the Court's repeated orders that Aim High obtain counsel. Aim High's conduct and only be described as willful in light of the Court's repeated orders, and Aim High's failure to identify a single effort it has made to engage counsel. This factor favors Spectrum.

Third, allowing Aim High to delay this case indefinitely prejudices Spectrum, who has incurred significant legal fees. Spectrum was prepared to depose Aim High's employees during the week of January 22, and to attend the Claim Construction Tutorial and *Markman* hearing on January 3 and 11, respectively. Meanwhile, while Aim High's owner claims he cannot function right now, the Aim High business continues to function and sell the infringing *X-Stream* product. (Cupar Decl. ¶ 7 and Ex. B, attached thereto.) Aim High's ongoing sales of accused infringing product are causing Spectrum lost sales in the marketplace, while Aim High should be in court focused on the lawsuit that it chose to

---

[2] Since October 2023, Aim High has done only these two simple tasks: (i) sending an email on November 1, 2023, rejecting a Spectrum settlement offer; and (ii) agreeing on December 5, 2023, to the week of January 22, 2024, for Spectrum to depose Aim High's employees, which never happened due to counsel moving to withdraw three days later because of non-payment by Aim High. (Cupar Decl. ¶ 6.)

file against Spectrum. Aim High's delays and non-compliance are therefore causing real prejudice to Spectrum in this litigation and in the marketplace.

While the fourth factor, *i.e.*, obtaining a decision on the merits, usually weighs against dismissal, the factor has little impact when, as here, plaintiff has no desire to move *its own case* forward to obtain a decision on the merits. *See Piccolotto*, 2023 WL 6216950, at *4.

Fifth, the availability of lesser sanctions does not weigh against dismissal. This is because the Court has already warned Aim High twice that sanctions could be entered if it continues to disobey orders and not obtain new counsel. (*See* ECF No. 116 (ordering Aim High to "show cause ... why the Court should not recommend sanctions" after first violation); ECF No. 124 (ordering that "failure to comply with this order may result in a recommendation of sanctions to the district judge").) Yet Aim High still has not complied, and has not identified any specific efforts to obtain new counsel. Thus, the time for more severe sanctions has arrived.

## III.   Mr. Salame's April 19 letter does not show cause why sanctions should not issue.

Mr. Salame's April 19, 2024 letter should not avoid sanctions for Aim High.

First, Mr. Salame is not a party to this action. So, despite his personal hardships, Aim High has 10 employees and a "manager" with 10 years of experience working at Aim High. (M. Cimental Dep. 6:1-20, 7:14-23, 25:13-26:23, att'd as Ex. C to Cupar Decl.) That manager certainly could have done internet research to find attorneys, contact them, and obtain proposals for engagement for Mr. Salame to review or approve. It appears that none of that work was done. As the Chinese ancient philosopher Lao Tzu is quoted, "The journey of a thousand miles begins with a single step." Despite over four months passing since its attorneys withdrew, it does not appear that Aim High has taken a single step towards engaging new counsel. Indeed, despite Mr. Salame urging that everything should remain at a standstill indefinitely, his Aim High business continues to operate in the marketplace

33517568.2

and take sales from Spectrum, as evidenced Aim High's *X-Stream* product being offered for sale through many online retailers. (*See* Cupar Decl. ¶ 7.)

Second, Spectrum is of course sympathetic to Mr. Salame about the passing of his sister, as raised in his letter. But it cannot be overstated that Mr. Salame is <u>not</u> a party in this matter. Rather, the plaintiff is a company with 10 employees and a manager, and Mr. Salame never explains why the company's manager could not have looked for and contacted attorneys about representing Aim High at any time over the past four to five months. Respectfully, Aim High's issues are the business's unwillingness to pay lawyers to litigate a case that Aim High itself initiated, which Aim High itself made expensive as part of its aggressive litigation strategy against Spectrum. The nonpayment issue has persisted for at least the past 10 months, and long before Mr. Salame experienced his recent family tragedy.

Third, Mr. Salame's attempt to use a "settlement" phone call with Spectrum on April 3 to excuse Aim High's disobedience and failure to retain counsel is meritless. (ECF No.125.) That single phone call lasted just five minutes. (Cupar Decl. ¶ 9.) Spectrum made a settlement proposal to Aim High during that call, and Mr. Salame rejected that proposal out of hand on the call and made no counter-offer. (*Id.*) The settlement talks started and ended on that single phone call, and Mr. Salame made clear that he had no interest whatsoever in Spectrum's proposal. (*Id.*) That single five-minute call did not prevent Aim High from obeying the Court's orders or from retaining counsel.

<u>Conclusion</u>

For these reasons, the Court should dismiss Aim High's affirmative claims with prejudice, grant default judgment in Spectrum's favor, and set the case for a hearing on damages. Alternatively, if the Court denies that relief, Spectrum respectfully requests that the Court (a) order Aim High to reimburse Spectrum for the legal fees that it has incurred due to Aim High's violations of the Court's orders; and (b) order that dismissal and default

33517568.2

judgment sanctions will occur if Aim High does not engage counsel to prosecute the case by a date certain.

Dated: April 29, 2024                    Respectfully submitted,

                                          s/ Matthew J. Cavanagh
                                         David B. Cupar
                                            (admitted *pro hac vice*)
                                         Matthew J. Cavanagh
                                            (admitted *pro hac vice*)
                                         MCDONALD HOPKINS LLC
                                         600 Superior Avenue, East, Ste. 2100
                                         Cleveland, Ohio 44114
                                         t 216-348-5400 │ f 216-348-5474
                                         dcupar@mcdonaldhopkins.com
                                         mcavanagh@mcdonaldhopkins.com
                                         *Attorneys for Spectrum Laboratories, LLC*

33517568.2

**Certificate of Service**

I hereby certify that a copy of the foregoing was sent by regular U.S. mail to plaintiff Aim High Investment Group, LLC, Attn: Michael Salame, 4980 Statz. St., Unit 120, North Las Vegas, NV 89081. Additionally, the Court's ECF system will automatically serve any parties that are registered users of ECF, and the filing is publicly available on ECF.

    _s/ Matthew J. Cavanagh_____
One of the attorneys for
Defendant Spectrum Laboratories, LLC

33517568.2