NICHOLAS J. SANTORO (NBN 532)
JASON D. SMITH (NBN 9691)
SPENCER FANE LLP
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Telephone:   (708) 402-3400
Facsimile:   (702) 851-6516
E-mail: nsantoro@spencerfane.com; jdsmith@spencerfane.com

DAVID B. CUPAR (Admitted *Pro Hac Vice*)
MATTHEW J. CAVANAGH (Admitted *Pro Hac Vice*)
MCDONALD HOPKINS LLC
600 Superior Avenue East, Suite 2100
Cleveland, OH 44114
Telephone:   (216)348-5730
Facsimile:   (216)348-5474
E-Mail: dcupar@mcdonaldhopkins.com, mcavanagh@mcdonaldhopkins.com

Attorneys for Defendant and Counterclaimant
SPECTRUM LABORATORIES, LLC

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| AIM HIGH INVESTMENT GROUP, LLC, | ) ) ) |
| Plaintiff/Counter-Defendant, | ) ) **Case No.: 2:22-cv-00158-GMN-DJA** |
| v. | ) ) **Spectrum's Motion for Default** |
| SPECTRUM LABORATORIES, LLC | ) **Judgment with Monetary Relief** ) ) |
| Defendant/Counterclaimant. | ) **REDACTED VERSION** ) |

In accordance with Fed. Civ. R. 55 and the Court's September 20, 2024 Minute Order (ECF 131), defendant/counterclaimant Spectrum Laboratories, LLC moves for default judgment with monetary relief against plaintiff/counter-defendant Aim High Investment Group, LLC. More specifically, Spectrum requests that the Court enter default judgment awarding Spectrum reasonable royalty damages of $8,947,655, doubling that

i

34311686.3

award to $17,895,310 as enhanced damages under 35 U.S.C. § 284, and $405,700 in reasonable attorneys' fees for a total monetary judgment of $18,301,010.

                                                    Respectfully submitted,

Dated:   October 24, 2024                /s/ Matthew J. Cavanagh
                                                    David B. Cupar (admitted *pro hac vice*)
                                                    Matthew J. Cavanagh (admitted *pro hac vice*)
                                                    MCDONALD HOPKINS LLC
                                                    600 Superior Avenue, East, Ste. 2100
                                                    Cleveland, Ohio 44114
                                                    t 216-348-5400 │ f 216-348-5474
                                                    dcupar@mcdonaldhopkins.com
                                                    mcavanagh@mcdonaldhopkins.com

                                                    *Attorneys for Spectrum Laboratories, LLC*

34311686.3

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  **Introduction**

This Court entered default against plaintiff/counter-defendant Aim High Investment Group, LLC on September 20, 2024. (ECF 130, 132.) The Court did so because, after Aim High's trial attorneys withdrew due to lack of payment in December 2023 (ECF 110, 112, 114), Aim High violated multiple Court orders over the past eight months that explicitly required Aim High to engage counsel to represent it in this litigation—litigation that Aim High initiated as plaintiff. (*See* ECF 114, 115, 116, 120, 124, 126, 128, 129, 130.)

In a Minute Order entered on September 20, 2024, the Court allowed Spectrum until November 18, 2024 to "file a motion addressing damages and inform the court of any further relief requested." (ECF 131.) Spectrum now files this motion to specify the monetary relief that Spectrum seeks and to provide the legal and factual basis supporting such an award. Spectrum does not seek injunctive relief because its asserted patents are now expired, and thus no prospective injunctive relief is available.

II.  **Factual and Procedural Background**

Aim High never should have brought this action, which it has now abandoned after forcing Spectrum to incur over $442,800 in legal fees.[1]

Spectrum invented a unique synthetic urine product, which Spectrum sells under the QUICK FIX trademark. (Countercl. ¶¶ 5-6, ECF 7.) Spectrum obtained two patents covering its invention: U.S. Patent Nos. 7,192,776 (the "'776 patent") and 9,128,105 (the "'105 patent"). (*Id.* ¶ 5-6.)

The dispute began when Spectrum notified Aim High that its synthetic urine product called *XStream* infringed Spectrum's '776 and '105 patents. (*See* 8/7/20 letter, ECF 1-2.) The parties exchanged pre-suit correspondence and, at Aim High's request, Spectrum

---

[1] As stated in the Declaration of Matthew J. Cavanagh, att'd hereto, Spectrum's tabulation of $442,800 in legal fees did not include all of Spectrum's legal fees because it only counted the three main attorneys working on the case. So the total fees incurred by Spectrum are actually higher.

1

34311686.3

provided two separate reports from different chemical testing labs that showed *XStream* infringed Spectrum's patents. Spectrum provides more details about those pre-suit communications in its opposition to an Aim High motion to compel at ECF 51 and, for efficiency, will not repeat those details here. Ultimately, Spectrum simply asked Aim High to sign an affidavit certifying that it did not knowingly infringe Spectrum's patent. (*See* 11/4/21 letter, ECF 48-1.) Aim High ignored that simple request and chose the aggressive tack of suing Spectrum here in Nevada.

      Aim High's lawsuit forced Spectrum to counterclaim for infringement of the '776 and '105 patents because it is a compulsory counterclaim. (*See* ECF 7.)

      In litigation, Aim High tried to bully Spectrum into submission. It did so by hiring three separate law firms and aggressively litigating the case, including filing a meritless related action in California federal court to enforce a subpoena, losing, objecting to the District Judge in California, and then rearguing the same losing arguments here in a motion to compel. (*See* Spectrum Opp. to Motion to Compel at 4-7, ECF 51; *see also* ECF 51-15 (Order by California court denying motion to compel).) Indeed, Aim High told Spectrum that expensive litigation was its defense strategy when it touted that it had hired high-powered law firm Dickinson Wright as evidence that "Aim High is more motivated now than ever to litigate this case, <u>at whatever cost</u>." (11/21/22 letter, ECF 126-1 (emphasis added).) When Spectrum did not buckle during the expensive litigation storm conjured by Aim High, Aim High stopped paying its lawyers and abandoned the case. (*See* Motions to Withdraw, ECF 110, 112.)

      This Court repeatedly ordered Aim High to engage new counsel because a limited liability company must be represented by counsel and cannot represent itself *pro se*. (ECF 114, 116, 120, 124, 127, 129.) After giving Aim High repeated chances, warnings, and more than enough time, the Court correctly dismissed Aim High's complaint and entered default judgment in Spectrum's favor on its patent infringement counterclaims. (ECF 129-132.)

34311686.3

In a September 20, 2024 Minute Order, the Court granted Spectrum until November 18, 2024 to "file a motion addressing damages and inform the court of any further relief requested." (ECF 131.) Spectrum now does so.

**III.     Law and Argument**

    **A.     The factual allegations in Spectrum's counterclaim are deemed admitted.**

Because Aim High has abandoned the case and default has entered, the factual allegations in Spectrum's counterclaim are deemed admitted. *See Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002); *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008). This includes Spectrum's allegations that Aim High willfully infringed Spectrum's patents, (Countercl. ¶¶ 14, 15, 24, 35, ECF 7). *See Rio*, 284 F.3d at 1023 (affirming award of attorneys' fees because allegations of willful trademark infringement were deemed true due to entry of default); *Poof Apparel*, 528 F.3d at 702 (same).

    **B.     The Court should order compensatory damages of $8,947,655 against Aim High for patent infringement.**

Because Aim High has defaulted, Spectrum's allegations that Aim High infringed the '776 and '105 patents are deemed admitted and therefore established. *See Rio*, 284 F.3d at 1023 (trademark infringement established due to default by accused infringer); *Poof Apparel*, 528 F.3d at 702 (same).

As to damages, in a patent case, the Court must award damages "in no event less than a reasonable royalty." 35 U.S.C. § 284. It states:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

*Id.*

Here, the Court should apply a reasonable royalty ███████████████. This was the royalty figure that Spectrum's damages expert, David Haas, testified to in a

3

34311686.3

similar patent infringement case that Spectrum won against a competing synthetic urine product called *Agent X*, sold by Dr. Greens, Inc. (*See* Cavanagh Decl. ¶ 31 and Ex. C-2.) The jury in that case agreed with Mr. Haas's royalty number in awarding $865,173 in reasonable royalty damages to Spectrum. (*Id.* ¶¶ 30-32 and Ex. C-3.) That case is very similar to the present. Spectrum asserted its '776 patent—one of the two patents here. (*See* Ex. C-2 at 580:25-581:2 (Haas testifying that "a reasonable royalty for use of the '776 patent in this case ▅▅▅▅▅▅▅▅▅▅ And the defendant sold a competing synthetic urine product, in the same way Aim High sells a competing synthetic urine product here. If anything, that reasonable royalty number is low because the Dr. Greens case involved just one patent, whereas Spectrum has established infringement of two separate patents, and inflation has raised prices on virtually all goods since the jury's verdict in 2018.

As to the number of infringing units sold by Aim High, it produced sales records during discovery of this action before it defaulted. (Cavanagh Decl. ¶¶ 28-29.) Those sales records show that Aim High sold ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅. (*Id.* ¶ 29.) Thus, simple arithmetic calculates total reasonable royalty damages of = $8,947,655 ▅▅▅▅▅▅▅▅▅▅▅). (*Id.* ¶ 33.)

Thus, the Court should award $8,947,655 in compensatory damages against Aim High.

    **C.    The Court should enhance damages by doubling them to $17,895,310 for Aim High's willful patent infringement and litigation misconduct.**

Under the Patent Act, the Court may enhance damages up to three times compensatory damages. *See* 35 U.S.C. § 284; *see also SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021). When there is willful infringement, as has been established here by default, the Court has discretion to enhance damages up to three times compensatory damages. *See id.* at 1330. Here, the Court should exercise its discretion to at least double the damages because of Aim High's vexatious and bad faith litigation conduct, including suing Spectrum (rather than providing a simple affidavit denying that it

34311686.3

knowingly infringed) when there was no need to do so; aggressively litigating the case to run up Spectrum's legal fees, hoping Spectrum would give up; abandoning the case and its attorney bills when it realized Spectrum was not going to surrender and Aim High would face a patent infringement judgment; and ignoring and violating multiple Court orders requiring Aim High to engage counsel. (*See supra* pp. 1-2.)

Such litigation misconduct, paired with willful infringement, justifies an enhanced damage award of twice the compensatory award. *See SRI*, 14 F.4th at 1330; *see also Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 579 U.S. 93, 106 (2016) (enhanced damages "should generally be reserved for egregious cases typified by willful misconduct").

Although the Court could triple the compensatory damages, Spectrum seeks only to double the damages to be conservative in the relief it seeks. Such an award is more than appropriate under the circumstances in light of Aim High's willful infringement and litigation misconduct designed to avoid responsibility for its willful infringement.

**D.    The Court should award Spectrum its reasonable attorneys' fees under Section 285 of the Patent Act.**

**1.    The Court should award fees because the case is exceptional and Spectrum prevailed.**

Under the Patent Act, the Court may award attorneys' fees to the prevailing party in an "exceptional" case. 35 U.S.C. § 285; *see also Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). The U.S. Supreme Court has explained that an "'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) ***or*** the unreasonable manner in which the case was litigated." *Octane*, 572 U.S. at 554 (emphasis added). Courts must apply a "case-by-case exercise of their discretion, considering the totality of the circumstances" to decide whether a case is fee-worthy. *Id.* Willful infringement alone can make a case exceptional and fee-worthy. *See, e.g., Golden*

5

34311686.3

*Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1373 (Fed. Cir. 2006) (affirming attorney fee award based on willfulness finding).

Here, the Court should award fees because this case is exceptional. Again, Aim High is deemed a willful infringer by default and Aim High engaged in bad faith litigation. (*See supra* pp. 1-3.) Indeed, if Aim High were not a willful infringer, it simply would have signed the pre-suit affidavit requested by Spectrum and avoided litigation altogether. (*See supra* pp. 1-2.) The fact that Aim High chose the hyper-litigious choice of suing and trying to overwhelm Spectrum with legal work and legal fees, filing a separate action in California federal court and then re-litigating the very same issues here after losing, and then abandoned ship when it realized Spectrum would continue to litigate this case to judgment further proves willfulness and bad faith litigation. Both the willfulness and bad faith litigation factors justify fees here, whether considered individually or collectively. *See Octane*, 572 U.S. at 554 ("unreasonable manner in which the case was litigated" may justify fee award); *Serrano v. Telular Corp.*, 111 F.3d 1578, 1585 (Fed. Cir. 1997) (affirming attorney fee award where losing party "relitigated issues from a previous case").

### 2. The fees requested by Spectrum are less than what it incurred and are reasonable under governing law.

"Reasonable attorney's fees are based on the 'lodestar' calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)." *Alternative Petroleum Techs. Holdings Corp. v. Grimes*, No. 3:20-cv-00040-MMD-CLB, 2022 WL 3748863, at *7 (D. Nev. July 25, 2022). To perform that calculation, the "Court must first determine a reasonable fee by multiplying 'the number of hours reasonably expended on the litigation' by a 'reasonable hourly rate.'" *Id.*, *quoting Hensley*, 461 U.S. at 433. "Next, the Court decides whether to adjust the lodestar calculation based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation." *Id.* This Court's Local Rule 54-14 specifically enumerates the *Kerr* factors for the Court to consider in deciding a fee motion.

34311686.3

This Court has explained that *Kerr* factors "one through five are subsumed in the lodestar calculation," once "calculated, the 'lodestar' is presumptively reasonable," and "only in 'rare and exceptional cases' should a court adjust the lodestar figure." *Id.*, *quoting Van Gerwen v. Gurantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). Below, Spectrum addresses each of the *Kerr* factors in the sequence listed in L.R. 54-14. These factors are also addressed in the declaration of Matthew J. Cavanagh, attached hereto. Spectrum seeks a reasonable hourly rate as follows: David B. Cupar (24 years experience), $600 per hour; Matthew J. Cavanagh (19 years experience), $500 per hour; and Andrew Gordon-Seifert (9 years experience), $350 per hour.

<u>The results obtained and the amount involved</u>. Spectrum's counsel obtained very positive results for Spectrum. They defeated—both in the California action and before this Court—Aim High's multiple motions to compel, which sought to pierce work-product protection to obtain undisclosed communications and documents from Spectrum's consulting experts. Spectrum's counsel also performed well in discovery, creating and evaluating patent disclosures (*e.g.*, infringement and invalidity contentions), and developing claim construction theories and briefing same. Spectrum's counsel did so well that Aim High chose to abandon the case and admit defeat. As shown in the declaration evidence provided herewith, the number of sales of infringing product by Aim High equates to over $8 million in reasonable royalty damages. Thus, the $405,700 in legal fees is very reasonable in relation to the amount in controversy. (*See* Cavanagh Decl. ¶ 15.)

<u>The time and labor required</u>. Aim High filed this case in January 2022, and litigated it aggressively for almost two full years, until Aim High's attorneys withdrew in December 2023. Spectrum's attorneys were required to perform significant work developing and drafting infringement contentions, briefing claim construction, aka *Markman*, opposing Aim High's tardy attempt to introduce over 300 pages of new patent invalidity contentions (ECF 71), responding to Aim High's spinoff California action and responding to Aim High's objections to the Magistrate's ruling there, drafting discovery requests and

7

responses, gathering documents and making productions, reviewing Aim High's discovery responses and document productions, and working through discovery disputes and briefing motions to compel and Aim High's objections to the Magistrate's decisions. Thus, the time and labor required supports the fee amount sought by Spectrum. (*See* Cavanagh Decl. ¶ 16.)

The novelty and difficulty. As courts have repeatedly acknowledged, patent cases are naturally complex cases. *See Allen Medical Sys., Inc. v. Mizuho Orthopedic Sys., Inc.*, No. 21-1739-CFC, 2022 WL 1046258, at *3 (D. Del. Apr. 7, 2022) (patent cases are "especially complex and time-consuming to adjudicate"); *ClearPlay, Inc. v. Dish Network L.L.C.*, No. 2:14-cv-00191-DN-CMR, 2023 WL 3805596, at *16 (D. Utah June 2, 2023) ("patent cases are necessarily complex, dealing with patent claims and technology outside the experience of the average person"). This case was no different because it involved two patents to chemical formulations. (*See* Cavanagh Decl. ¶ 17.)

The skill requisite to perform the legal service properly. Because of the legal and factual complexity of patent cases, a party in a patent case typically must hire attorneys with a scientific background and experience litigating patent cases. Here, Spectrum's lead attorneys—Messrs. Cupar and Cavanagh—have decades of experience litigating patent cases, have scientific backgrounds, and both are registered patent attorneys with the U.S. Patent and Trademark Office. (*See* Cavanagh Decl. ¶ 18.)

The preclusion of other employment by the attorney due to acceptance of the case. Spectrum's attorneys are fully occupied with work, and have been since this case began. Thus, representing Spectrum in this matter precluded them performing other work for other clients in other litigation matters. (*See* Cavanagh Decl. ¶ 19.)

The customary fee. Spectrum seeks a billing rate that is customary and competitive for the Nevada market, those rates are less than the standard rate charged by each of Spectrum's attorneys and less than what Spectrum paid those attorneys in this action, and

thus this factor favors the fee award sought by Spectrum. (*See* Cavanagh Decl. ¶¶ 13, 20, 27.)

Whether the fee is fixed or contingent. Spectrum's attorneys billed on an hourly basis, and thus their fee was neither fixed nor contingent. (*See* Cavanagh Decl. ¶ 21.)

The time limitations imposed by the client or the circumstances. Spectrum and its attorneys are aware of no such limitations. (*See* Cavanagh Decl. ¶ 22.)

The experience, reputation, and ability of the attorneys. Spectrum's attorneys have decades of experience litigating patent and other intellectual property cases, their law firm is well regarded nationally, and they have demonstrates the ability to obtain positive results for clients during their careers. (*See* Cavanagh Decl. ¶ 23.)

The undesirability of the case, if any. The case is not undesirable. (*See* Cavanagh Decl. ¶ 24.)

The nature and length of the professional relationship with the client. Mr. Cupar has represented Spectrum continuously since at least 2004 (20 years) and Mr. Cavanagh has represented Spectrum since at least 2010 (14 years). Messrs. Cupar and Cavanagh have represented Spectrum in over a dozen federal lawsuits during that period, including patent, trademark, and business disputes. (*See* Cavanagh Decl. ¶ 25.)

Awards in similar cases. Messrs. Cupar and Cavanagh obtained a jury verdict of patent infringement in Spectrum's favor in a similar case against a competitor in the synthetic urine market involving one of the two Spectrum patents asserted here, namely the '776 patent. That case was entitled *Spectrum Laboratories, LLC v. Dr. Greens, Inc.*, S.D. California, Case No. 11cv0638-JAH (KSC). There, the district court awarded attorneys' fees to Spectrum in the amount of $890,614.38. (*See* Cavanagh Decl. ¶ 26.)

In a recent patent infringement case, this Court awarded billing rates similar to those sought here: $600 per hour for lead counsel with 23 years experience and $500 per hour for attorney with 15 years experience. *See WSOU Investments, LLC v. Salesforce, Inc.*, No. 3:23-cv-00023-RCJ-CSD, 2024 WL 307617, at *5 (D. Nev. Jan. 26, 2024). The

9

34311686.3

*WSOU* decision cited other similar cases awarding attorneys' fees at rates commensurate with those billing rates sought here by Spectrum. *See id.* at *4-5.

Thus, for these reasons, the Court should award attorneys' fees of $405,700 as detailed in the table below and in the Declaration of Matthew J. Cavanagh, attached hereto.

| *Attorney* | *Hours* | *Avg. Rate (Actual)* | *Total Billed (Actual)* | *Sought Rate* | *Adjusted Total* |
|---|---|---|---|---|---|
| Cupar | 269 | $645 | $173,505 | $600 | $161,400 |
| Cavanagh | 245 | $531 | $130,095 | $500 | $122,500 |
| Gordon-Seifert | 348 | $400 | $139,200 | $350 | $121,800 |
| **TOTALS** | **862** | **$513.69** | **$442,800** | **$470.65** | **$405,700** |

### IV.  Conclusion

The Court should enter default judgment with monetary relief of $18,301,010 in Spectrum's favor.

Respectfully submitted,

Dated:  October 24, 2024

   s/ Matthew J. Cavanagh
David B. Cupar (admitted *pro hac vice*)
Matthew J. Cavanagh (admitted *pro hac vice*)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216-348-5400 │ f 216-348-5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

*Attorneys for Spectrum Laboratories, LLC*

34311686.3

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent by regular U.S. mail to:

Aim High Investment Group LLC
Attn: Michael Salame, Manager
4980 Statz St., Unit 120
North Las Vegas, NV 89081

          s/ Matthew J. Cavanagh
*Attorney for Spectrum Laboratories, LLC*

11

34311686.3